Michael E. Malloy, Esq., Nev. Bar No. 617
Debra O. Waggoner, Esq., Nev. Bar No. 5808
MAUPIN, COX & LeGOY
P. O. Box 30,000
Reno, Nevada  89520
(775) 827-2000 - telephone
(775) 827-2185 - facsimile
mmalloy@mclrenolaw.com e-mail
dwaggoner@mclrenolaw.com e-mail
Attorneys for Defendants Washoe County
School District, KayAnn Pilling, Dina
Hunsberger, Heath Morrison, Lynn Rauh,
and the Roy Gomm Uniform Committee

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARY FRUDDEN and JON E. FRUDDEN, individually and as parents and guardians of their minor children JOHN and JANE DOE, | Case No. 3:11-cv-00474-RCJ-VPC |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| KAYANN PILLING, individually and in her official capacity as the Principal of Roy Gomm Elementary School; the ROY GOMM UNIFORM COMMITTEE; *et al.*, | |
| Defendants. | |

Defendants Washoe County School District, a political subdivision of the State of Nevada

(the "District" or "WCSD"), KayAnn Pilling, Dina Hunsberger, Heath Morrison, and Lynn Rauh in

their individual and official capacities, and the "Roy Gomm Uniform Committee" (collectively

"Defendants"), through counsel, present this Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC" or "Complaint"). This Motion is made and based on Fed.R.Civ.P. 12(b)(6), the memorandum of points and authorities below, the documents on file herein, and any other matters the Court deems pertinent to its consideration of this matter.

DATED:  November 8, 2011.

MAUPIN, COX & LeGOY

By _____
Michael E. Malloy, Esq.
Debra O. Waggoner, Esq.
Attorneys for Defendants


**MEMORANDUM OF POINTS AND AUTHORITIES**

A.    Introduction.

Plaintiffs' prolix First Amended Complaint ("FAC") contains sixteen (16) claims for relief spanning some 66 pages. The subject of Plaintiffs' unhappiness is an elementary school's adoption, after a majority vote of the parent families, of a written school uniform policy. The relief Plaintiffs are seeking would be contrary to the ruling in Jacobs v. Clark County School District, 526 F.3d 419, 422 (9th Cir. 2008), a recently decided case of first impression in this circuit about school uniforms. There, the Court "largely conclude[d] that public school mandatory dress policies survive constitutional scrutiny." Id. It is against the backdrop of Jacobs and other applicable law that Plaintiffs bring their multi-faceted FAC.

When there is a legal challenge to a school uniform or dress code policy, the threshold issue is whether the article of clothing or attribute involved does, in fact, qualify as expressive activity for

First Amendment purposes.  U.S. Supreme Court precedents recognize that the First Amendment protects not only verbal and written expression, but also symbols and conduct, such as the wearing of anti-war black armbands by students in <u>Tinker v. Des Moines Independent Community School Dist.</u>, 383 U.S. 503, 89 S.Ct. 733 (1969).  However, the activity in question must be one that (1) reflects an intent to convey a particularized message, and (2) is likely to be understood by people who see it.  Absent these communicative elements, a student's attire or feature of personal appearance falls outside the purview of First Amendment protection, and schools may regulate it without objection on that ground. The key is whether the uniform policy is viewpoint- and content-neutral, <u>see</u> <u>Jacobs</u>, 526 F.3d at 432-439, and Roy Gomm's policy satisfies those criteria.[1]

Plaintiffs take umbrage with the school logo on the Roy Gomm uniforms, and the "one team, one community" theme.  FAC at pp. 17-18 (description of uniforms) and ¶¶101-105 (theme). But Roy Gomm's uniform policy passes Constitutional muster because: it is grounded in legitimate regulatory goals, <u>Jacobs</u> at 433 and FAC at ¶¶51, 54, 61, 82; there is no indication that the Roy Gomm logo is an attempt to inundate the marketplace of ideas with pro-school messages or to starve that marketplace of contrary opinions, <u>Jacobs</u> at 433 and FAC at ¶¶50-55; although the uniform policy may limit students' abilities to express themselves through clothing, other communication methods are available throughout the day (conversations with other students, participation in school clubs or newspapers), and students are still permitted to wear clothing-of-choice after school, on weekends, and at non-school functions, <u>Jacobs</u> at 436-437 and FAC at ¶¶61, 89; and the uniforms

---

[1]   Whether the uniform policy was the result of the state statute or an on-site school policy is a distinction without a legally sufficient difference.  <u>See</u> FAC at ¶¶20, 26-35, 228-233. As will be shown below, and by the allegations in the FAC, this case does not rise to the level of an "expressive conduct" case.  Instead it is about Plaintiff Mary Frudden's quest to overturn a policy that <u>she</u> does not like – nothing more.

ᴴAUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

are not compelled speech, because wearing a uniform is passive rather than active and if it conveys a message at all, that message is imprecise rather than particularized, Jacobs at 437-438 and FAC at ¶¶89, 101-128, 130-131. As shown below, a Rule 12(b)(6) dismissal of this action is appropriate.

B.    Legal standards for motions to dismiss for failure to state a claim.

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Daubert v. City of Lindsay, 2011 WL 3917369, *1 (E.D. Cal. Sept. 6, 2011), citing Fed.R.Civ.P. 12(b)(6). A dismissal under Fed.R.Civ.P. 12(b)(6) may be based on the lack of a cognizable legal theory, or on the absence of sufficient facts alleged under a cognizable legal theory. Daubert at *1, citing Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008) (other citation omitted). In reviewing a complaint under Rule 12(b)(6), the court accepts the complaint's material allegations of fact as true, and the court construes these facts in the light most favorable to the non-moving party. Daubert at *1, citing Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008) (other citation omitted), cert. denied, 129 S.Ct. 2379 (2009).

The court must also assume that general allegations embrace the necessary, specific facts to support the claim. Daubert at *1 (citation omitted). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Daubert at *1, citing Gilead Sciences Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008) (other citation omitted; emphasis added), cert. denied, 129 S.Ct. 1993 (2009). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Daubert at *1, citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173

L.Ed.2d 868 (2009) (other citation omitted).  Determining whether a complaint states a plausible claim for relief will...be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  <u>Daubert</u> at *2 (ellipses in original), *citing* <u>Iqbal</u>, 129 S.Ct. at 1949-50. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. <u>Id</u>. Here, since Plaintiffs' FAC is replete with conclusory, unwarranted deductions of fact, or unreasonable inferences, as shown below, this case should be dismissed.

        C.     <u>Law and analysis</u>.

Plaintiffs' **<u>first claim for relief</u>** is entitled "without power to enact." FAC at ¶¶ 133-145. This is not a legally cognizable claim. Rather, it is merely a component of one of the myriad tests that the courts have fashioned over the years in First Amendment jurisprudence.  As pointed out in <u>Jacobs</u>,526 F.3d at 434 & n. 33, whether a regulation is within the government's power to enact is the fourth prong of intermediate scrutiny analysis, <u>citing</u> <u>United States v. O'Brien</u>, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 [*reh'g denied*, 393 U.S. 900] (1968).  As a mere prong in a test, the so-called "first claim for relief" fails to state any claim at all, and should be dismissed.

Since Plaintiffs' next several claims for relief cite 42 U.S.C. §1983, FAC at pp. 28-52, this is an appropriate place to cover some applicable §1983 legal principles.  To state a claim under 42 U.S.C. §1983 ("§1983"), a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. See <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). There is no *respondeat superior* liability under §1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).  In order to hold a municipality liable under <u>Monell</u> for declaratory, injunctive, or monetary relief, the

IAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

allegedly unconstitutional actions must have been pursuant to an official municipal policy, ordinance, regulation, or officially adopted decision. Id. at 690-691.

There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008) (citations and quotation marks omitted).

Here, Plaintiffs' allegations themselves undermine their claims against the WCSD as the "municipality" under Monell. That first alternative would require Plaintiffs to show "a longstanding practice or custom" that constitutes the WCSD's "standard operating procedure." Id. The actions of which Plaintiffs complain are of very recent vintage, e.g. FAC at ¶¶40-65, so Plaintiffs have failed to satisfy the first alternative prong of Monell. The other two alternatives fail as well, because of Plaintiffs' allegations that Roy Gomm's uniform policy is *not* the result of a policy adopted by the school board, which is the District's final policy maker. FAC at ¶¶20, 31, 88-90, 99. The Court may take judicial notice that the Washoe County School District Board of Trustees is the final policy-making authority for the District pursuant to NRS 386.110, 386.350. See Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir. 1988) (when ruling on motion to dismiss, court may consider, *inter alia*, matters of which court takes judicial notice), *superseded by statute on other grounds*, Abrego v. Dow Chem., 443 F.3d 676, 681 (9th Cir. 2006). There is no cognizable Monell claim against the WCSD.

Plaintiffs' **second claim for relief** is described as one under §1983, alleging "deprivation[s]

of students' rights and privileges" under the First Amendment.  FAC at ¶¶146-175.  Plaintiffs allege,

*inter alia*, that the written uniform policy "is not content or viewpoint neutral," as it requires

"students at Roy Gomm to participate in the dissemination of an ideological message" of "one team,

one community," with the express purpose that the message be "observed and read by the public,"

that the student Plaintiffs are compelled and coerced to "wear the Roy Gomm logo and printed

message," and that they and other students are prohibited from "expressing any other idea, content,

subject matter or message on their clothing." FAC at ¶148.

Plaintiffs also allege that their refusal to comply with the mandatory uniform policy in 2011-

2012 and to wear non-conforming clothing demonstrates their intent to convey the following

particularized messages: they do not believe the mandatory uniform policy has been implemented

pursuant to law and their non-conforming clothing represents a challenge to that authority; they

believe the mandatory uniform policy deprives them of their Constitutional right of freedom of

expression and freedom to parent; they believe the mandatory uniform policy compels them to speak

a viewpoint-based message of "one team, one community"; and they believe the mandatory uniform

policy compels them to convey a message of group affiliation, group or viewpoint associations, and

social class." FAC at ¶154.

In Jacobs v. Clark County School District, 373 F.Supp.2d 1162, 1172 (D. Nev. 2005), aff'd,

526 F.3d 419 (9th Cir. 2008), after having determined that student clothing may constitute "speech"

under the First Amendment, the trial court necessarily considered whether the student clothing at

issue in that case possessed sufficient communicative elements to implicate the First Amendment.

One of the student plaintiffs in Jacobs who refused to follow the uniform policy had worn shirts to

school bearing religious messages, and in so doing, the Court concluded that she intended to convey

her religious affiliation or beliefs:

> Given the *Cohen* Court's conclusion that wearing clothing bearing a printed message constitutes speech (*see Cohen*, 403 U.S. 15, 91 S.Ct. 1780), Kim's choice of attire would seem clearly to indicate an attempt to convey a particularized message with a high likelihood that the message would be understood by those who view the clothing, regardless of whether wearing that clothing was a necessary aspect of her religious beliefs.

373 F.Supp.2d at 1172.  Here, by contrast, there are no allegations describing any non-uniform clothing worn by the student Plaintiffs that espouses any particularized message.  Wearing a shirt inside-out (FAC at ¶126) does not automatically convey to the public a message of "protest."  It just as easily conveys the message that the student overslept, dressed hurriedly, or failed to look in the mirror before leaving the house. Nor does wearing soccer uniforms of a nationally recognized youth organization (without the cleats), FAC at ¶¶107,123, 148, have sufficient communicative elements to implicate the First Amendment.  Plaintiffs admit wearing the soccer togs merely because they fell within an "exemption" to the policy, FAC at ¶¶108-114, which would *not* be readily understood by the public.  The burden is on the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment is even implicated. See Blau v. Fort Thomas Public School Dist., 401 F.3d 381, 389 (6th Cir. 2005), *citing* Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065 (1984).  Plaintiffs have not met that burden, so dismissal of the second claim is appropriate.

Plaintiffs' **third claim for relief** is a §1983 claim for "deprivation of familial rights and privileges." FAC at ¶¶176-188. Plaintiffs assert a constitutionally protected liberty interest in providing companionship, care, custody, and management of their children. Id. at ¶177. They allege that the WCSD has no power to "standardize" the student Plaintiffs or other students by compelling

them to wear certain clothing that fosters homogeneity among students under the guise of "safety" or "academic achievement." Id. at 182.  They allege the school uniform policy allegedly interferes with the Plaintiffs' family relationships, the parents' rights to nurture, care for, and raise their children in the manner in which they choose, and the policy is irreconcilable with many of the Plaintiff parents' firm beliefs about parenting practices. Id. at ¶183. Further, they claim, they will be forced to purchase unnecessary clothing, launder more clothes, maintain two wardrobes for their children, and comply with a policy to which they vehemently object in order to avoid negative consequences suffered and surely to be suffered by the student Plaintiffs' non-compliance. Id. at ¶183(h), (i), (k).

While the courts recognize a fundamental liberty interest of parents in the care, custody, and control of their children, Littlefield v. Forney Indep. School Dist., 268 F.3d 275, 288 (5th Cir. 2001), citing Troxel v. Granville, 530 U.S. 57, 65-66 (2000), it has long been recognized that parental rights are not absolute in the public school context, they are subject to reasonable regulation, and that a rational basis review is the appropriate standard. Littlefield at 291. When the uniform policy is rationally related to the state's interest in fostering childrens' education and furthering the legitimate goals of improving student safety, decreasing socioeconomic tensions, increasing attendance, and reducing drop-out rates, parents' fundamental rights do not automatically validate  parents' objections to a public school uniform policy. See Id.

Here, numerous reasons for the Roy Gomm uniform policy were provided in April 2011, FAC at ¶¶51, 54, which mirror the above factors that the courts have found to satisfy the "rational relationship" test. Significantly, there are no allegations the student Plaintiffs suffered any negative consequences. When they were told that "insubordination" or "breaking a rule" by not wearing the

IAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

shirts could lead to a 15 minute detention, each student Plaintiff wore the school shirt.  FAC at ¶¶124-125; see also ¶121 (Plaintiffs have not received any written incident reports).  Moreover, Plaintiffs' alleged harms are highly speculative (alleging negative consequences "surely to be suffered," but not describing any actual consequences, FAC at ¶183(i)).  Since Defendants' actions satisfied the rational relationship test, the third claim for relief should be dismissed.

The **fourth claim for relief** is a §1983 claim for violations of procedural and substantive due process.  FAC at ¶¶189-197.  There are multiple defects in these allegations.  First, just as the complainants did in Blau, *supra*, 401 F.3d at 396, Plaintiffs here had ample notice and knowledge of the Roy Gomm uniform policy, of the intent to discuss and implement it,  and the manner and method employed in its implementation.  See FAC at ¶¶48-57, 63-69, 88-89. The complainants in Jacobs made a similar "novel argument" that the schools had violated Due Process when they acted in complete defiance of their own regulations and instituted school uniform policies absent the requisite level of parental approval. 526 F.3d at 441.  However, it has long been recognized that individuals have no Due Process right to participate in government policymaking, so even if a school implements a uniform policy in a manner that violates a regulation, it does not follow that it is a violation of the Fourteenth Amendment. Id. That same sound reasoning applies here to Plaintiffs' procedural Due Process allegations in ¶¶191(a)–(o), which fail to state a claim.

Second, substantive Due Process allegations in the education context tend to include claimed deprivations of a property interest in benefits derived from education, and liberty interests in clean academic records and students' reputations. See Jacobs, 373 F.Supp.2d at 1191-92, *citing* Goss v. Lopez, 419 U.S. 565 (1975).  However, there must be more than a *de minimus* exclusion from the educational process to violate a student's right to a property interest in a continuing education:

> For a variety of reasons and conduct, students are routinely sent to the principal's office to be admonished or punished.  Likewise, students are often subjected to in-class detention and the like for conduct that their teachers or other administrators dislike. During such detentions, it is often the case that students are encouraged (or required) to spend time on their school work, thereby causing as little interference as possible with the student's education, and often furthering it.  While such detentions undoubtedly interrupt a student's day, they must be considered de minimus and beyond more formal process if the nation's schools are to maintain their discipline and rigor.

Jacobs, 373 F.Supp.2d at 1192.  Moreover, if there is no interference with a student's liberty interest in a clean academic record, such as when records of non-compliance are stricken from the student's record or a student's grades remain untarnished, there is no Fourteenth Amendment violation. Id. at 1192-93.  Here, there are no allegations that the student Plaintiffs have been deprived of any educational benefits, or that their reputations or scholastic records were harmed in any manner.  See FAC at ¶¶101-132, 191-197. As such, dismissal of Plaintiffs' procedural and substantive Due Process challenges is warranted, since the claims are simply hollow and unsustainable.

The **fifth claim for relief** is a §1983 claim for "policy of inaction."  FAC at ¶¶198-211.  Plaintiffs allege that written policies and regulations expressly foreclose individual schools in the District from implementing mandatory school uniform policies on a school-by-school basis; that the District has a custom and practice of inaction to prevent individual schools within the District from implementing mandatory school uniform policies *carte blanche* in an arbitrary and capricious manner; and such inaction amounts to a failure to protect constitutional rights of parents and students. Id. at ¶¶200-208. Although ¶207 alleges that "student disciplinary action" resulted from "violations of such policies," the FAC is devoid of any such "action" or "violations."

Under Monell, supra, 436 U.S. at 691, §1983 liability of a local governing body's "policy of inaction" lies only when plaintiff demonstrates that the policy amounts to a deliberate indifference

to constitutional rights.  In order to impose liability based on a policy of deliberate inaction, the plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving factor behind the constitutional violation. Oviatt by and through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, the allegations fail to satisfy the requirements from Oviatt. Conspicuous by its absence is the threshold element:  a constitutional right of which they were (purportedly) deprived.  As for the second element, the WCSD is the "municipality." Since Plaintiffs have alleged that there is *no* "comprehensive dress code" policy, FAC at ¶201, the second element fails.  The third and fourth fail for lack of foundation, which are not saved by the nonsensical allegations:

> "The custom and practice of inaction was the result of a conscious or deliberate choice to follow a course of action made from among various alternatives set forth herein by the official or officials responsible for establishing final policy with respect to the implementation of mandatory uniforms policies and dress code policies, including the resulting student disciplinary action for violations of such policies."

FAC at ¶207. Moreover, Plaintiffs have not alleged how school uniforms prevent them from providing parental support, companionship, etc. to the student Plaintiffs as alleged in the FAC at ¶211, or why the supposed inability to "participate in a meaningful and ongoing manner in the development of the application and administration of the Written Uniform Policy," Id., deprived them of a constitutional right. Plaintiffs' mere unhappiness with the adopted uniform policy is simply not of constitutional magnitude. This claim for relief should be dismissed for failure to state a claim.

The **sixth claim for relief** is a §1983 claim for failure to train and supervise. FAC at ¶¶212-223.  Plaintiffs allege that the District was aware that individual schools within the District, including Roy Gomm, were implementing mandatory uniform policies *carte blanche* in an arbitrary

and capricious manner, without procedural safeguards. Id. at ¶216. It is also alleged that the District failed to properly train and supervise its employees (when the need to do so was "obvious"), including Defendants Pilling, Rauh and Morrison, or to implement and maintain proper procedures to ensure that the constitutional rights of those they were likely to and did come in contact with were not violated. Id. at ¶¶213, 216. Had the District's employees been properly trained, Plaintiffs allege, the constitutional injuries ("and the resulting disciplinary action as a result of violations of such policies") could have been avoided, and Defendants were deliberately indifferent to the deprivation of Plaintiffs' constitutional rights. Id. at ¶¶213-215, 217-220.

To impose liability under a theory of failure to train subordinates, a plaintiff must demonstrate that the subordinate's training was inadequate, that the inadequate training was a deliberate choice on the part of the supervisor, and that the inadequate training caused a constitutional violation. See Canell v. Lightner, 143 F.3d 1210, 1214 (9th Cir. 1998), citing City of Canton v. Harris, 489 U.S. 378, 391 (1989) (other citation omitted).

Other than passing reference to three of the Defendants, Id. at ¶216, this claim is devoid of an identity of who did the training. While it is true that a supervisor's failure to train subordinates may, in some circumstances, give rise to individual liability under §1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come in contact, Canell, 143 F.3d at 1213-14, in this claim, no one is even identified as a training supervisor. Further, Plaintiffs do not provide any specifics about the type or content of the alleged inadequate training, when and where it took place, or the specifics about the purported deliberate choices by a supervisor that led to the supposed deprivation of Plaintiffs' "constitutional rights." Additionally, since the allegations in the Complaint at ¶¶213-223 are very generic, they are pointless. They simply

take up space on paper, without any real application to this case.  Dismissal of this claim is therefore warranted.

The **seventh claim for relief** is designated as a §1983 claim for violation of the Equal Protection clause, NRS 388.070, BOT-PO39, and OSP-P002. FAC at ¶¶224-243. Plaintiffs' first stated basis, the Fourteenth Amendment Equal Protection Clause, "commands that no State shall deny to any person within its jurisdiction equal protection of the laws." Id. at ¶225. The second is NRS 388.070, which provides that when feasible, Nevada school boards must maintain the schools established by them, as far as practicable, "with equal rights and privileges." Id. at ¶226. The third is the WCSD's BOT-P039, which is an administrative regulation for school administrators/personnel to "develop a sound program of student discipline" to be "applied consistently throughout the District." FAC at ¶227.  A fourth basis, "OSP-P002," Id. at 48:10, is not further identified.

Plaintiffs next allege that some, but not all, of the WCSD's schools have mandatory uniform policies, that the procedure for implementing school uniforms varies from school to school, and that discipline for policy violations varies from school to school. Id. at ¶¶228-230; 231-233 (three examples of uniform policies in WCSD schools).  Although no particular impact of these policies upon Plaintiffs is even alleged (including the allegation about "financial assistance" to others), Plaintiffs nevertheless complain that they have been denied equal protection of the laws, that the WCSD schools "are not maintained as far as practicable with equal rights and privileges," that student discipline for violations of mandatory uniform policies are not consistently applied, that Defendants have "misused the powers entrusted to them under state law," and Defendants did so intentionally and with callous and reckless disregard to the rights of Plaintiffs. Id. at ¶¶234-243.

It is well-settled that the Equal Protection Clause protects persons, not groups. Engquist v.

<u>Or. Dep't of Agriculture</u>, 553 U.S. 591, 128 S.Ct. 2146, 2150 (2008). The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 120 S.Ct. 1073, 1074-75 (2000). Here, other than conclusory allegations about Plaintiffs possibly being subjected to an unspecified "deprivation of the rights, privileges, and/or immunities secured by the Constitution and laws," this claim focuses on other schools within the WCSD, and other unidentified groups of "students" and "parents" who are not the Plaintiffs. FAC at ¶¶231, 231-233, 234, 236, 238. Since Plaintiffs are complaining about groups, not persons, the claim is unlikely to meet with any success.[2]

Plaintiffs' allegations about other schools besides Roy Gomm, and students in other schools, FAC at ¶¶228-234, 237-239, followed by a vague allegation that "Defendants' conduct subjects Plaintiffs, or causes Plaintiffs to be subject to," deprivations of fundamental rights and privileges, <u>Id</u>. at ¶240, are unavailing. To state a claim under §1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based on his membership in a protected class. <u>Neveu v. City of Fresno</u>, 392 F.Supp.2d 1159, 1179 (E.D. Cal. 2005). Plaintiffs fail to allege membership in any protected class, so they cannot state a claim. This claim should therefore be dismissed.

The **eighth claim for relief** is a §1983 claim for denial of equal access to a public forum. FAC at ¶¶244-256. Plaintiffs complain that the Roy Gomm Parent Faculty Association, a non-profit

---

[2] With respect to the state statute and administrative regulation, FAC at 48:10 and ¶¶226-227, those do not provide any private right of action. <u>See</u> pp. 17-20, <u>infra</u>.

fund-raising organization ("Roy Gomm PFA"), was allowed access to Roy Gomm to present the advantages of implementing mandatory school uniforms at Roy Gomm, and was able to use school supplies, copy machines, computers, school staff, and faculty members to advance its views regarding implementing mandatory school uniforms, but that Principal Pilling, the Uniform Committee and Superintendent Dr. Heath Morrison denied Plaintiff and other school-uniform-policy-opponents equal access to such facilities to express opposing viewpoints. Id. at ¶¶246-249. The denial of equal access allegedly discriminated against the content, message, opinion, and perspective of the opposition viewpoint to having school uniforms (Defendants' attempt to give one side of a debatable public question), which was not narrowly drawn to achieve a compelling state interest, and in violation of the First Amendment. Id. at ¶¶249-253. Conspicuous by its absence is any description of any "speech" by any Plaintiff that was supposedly squelched by Defendants.

The public schools do not possess all of the attributes of streets, parks, and other traditional public forums that "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 267, 108 S.Ct. 562 (1988). Public property which is not by tradition or designation a forum for public communication is governed by different standards. Perry Educ. Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 46, 103 S.Ct. 948 (1983). In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression simply because public officials oppose the speaker's view. Id. The First Amendment does not guarantee access to property simply because it is owned or controlled by the government. Id.

Here, while the FAC uses many of the "buzz words," so to speak, from court cases on the

inapplicable subject of strict scrutiny analysis, e.g. FAC at ¶¶245, 249-252, there are no allegations to support Plaintiffs' claims that the alleged inability to use school's supplies, copy machines, computers, or staff, prevented them from speaking at the school meetings, or airing their objections or viewpoints to others. The allegations describing Plaintiffs' requests for information, Id. at ¶¶59, 70, 75, provide no inkling of what Plaintiffs were prevented from expressing simply because Plaintiffs supposedly did not have access to school property. Under Perry, *supra*, Plaintiffs are not guaranteed access to school property. A mere disagreement with school officials about a school uniform policy for students does not constitute content-based restrictions on speech, particularly since Plaintiffs were well aware of the Defendants' rationale, FAC at ¶¶40, 48-52, 54, 55, 61, and there are no allegations that any Defendant prevented Plaintiffs from expressing their viewpoint to anyone. Plaintiffs' dissatisfaction with the school uniform policy is apparent, Id. at ¶¶59, 95-98, but the FAC is devoid of allegations that they were subjected to any First Amendment violation under the forum analysis. Dismissal of this claim is appropriate.

Plaintiffs' **ninth claim for relief** alleges a violation of NRS 392.4644. FAC at ¶¶257-271. This claim fails as a matter of law because NRS 392.4644 and the other assorted statutes (NRS 392.463, 392.458, and 386.365) do not provide for any *express* private right of action, as shown by the plain statutory language, or for any *implied* private right of action.

The absence of an *express* private right of action under the education statutes cited by Plaintiffs is illustrated by analogy to the case of Palmer v. State Gaming Control Bd., 106 Nev. 151, 154, 787 P.2d 803, 804 (1990), which involved the discharge of a Gaming Control Board enforcement agent for alleged mishandling of an investigation. The statute at issue, NRS 281.370, provided that all personnel actions taken by state, county, or municipal departments, agencies or

boards, or appointing officers, had to be based solely on merit and fitness. 787 P.2d at 805.  The Palmer Court held that the plain and unambiguous language of the anti-discrimination statute in NRS 281.370 provided no private right of action.787 P.2d at 805 & n. 2.[3]  Here, too, the same sound reasoning applies, since the statutes relied upon by Plaintiffs do not provide for an express private right of action.

This claim also cannot satisfy an oft-used U.S. Supreme Court test for determining whether an *implied* private right of action exists.  In Sports Form, Inc. v. LeRoy's Horse and Sports Place, 108 Nev. 37, 39, 823 P.2d 901, 902 (1992), the Nevada Supreme Court said "it is helpful" to look to the case of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which is how courts typically determine whether a private remedy is implicit in a federal statute:

> [The] factors include the following: (1) whether the plaintiff was "one of the class for whose special benefit the statute was enacted"; (2) whether there was "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the implication of such a remedy was "consistent with the underlying purposes of the legislative theme"; and (4) whether the cause of action was "one traditionally relegated to state law, in an area basically that concerned the State, so that it would be inappropriate to infer a cause of action based solely on federal law."

Sports Form, 823 P.2d at 902, citing Cort v. Ash, 422 U.S. at 78, 95 S.Ct. at 2088 (quotation marks in original; bracketed word added). Cf., Broadbent v. Bd. of Educ. of Cache County School Dist., 910 P.2d 1274, 1276-1277 (Utah App.), cert. denied, 917 P.2d 556 (Utah 1996) (while there is considerable body of law involving creation of private rights of action under federal law, Utah courts

---

[3] See also In Re System 99, 109 Nev. 66, 68, 847 P.2d 741, 742 (1993) (plain language of NRS Ch. 706 does not permit a carrier to bring a private cause of action against a shipper to enforce the provisions of Chapter 706, because only utility commission may do so); Cf. Builders Ass'n of No. Nev. v. City of Reno, 105 Nev. 368, 369, 776 P.2d 1234, 1235 (1989) (affirming district court's conclusion that plain language of NRS 354.5989 weighed against any implication of a private remedy and that sole means of enforcement was procedure outlined in NRS 354.6245).

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
.P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

are not generally in the habit of implying private right of action based upon state law, absent some

specific direction from Legislature).  As will be shown below, Plaintiffs' allegations fail to satisfy

the factors from Cort v. Ash, which, like Broadbent, includes the failure of our Legislature to imply

a private right of action in AB376, the bill giving rise to Nevada's statewide and *discretionary* school

uniform statute.

     As to the first factor under Cort v. Ash, whether Plaintiffs are "one of the class for whose

special benefit the statute was enacted," the Nevada education code statutes cited by Plaintiffs apply,

by their plain language, to *all* seventeen school districts in the state of Nevada, and to *all* members

of boards of trustees and *all* employees of boards of trustees, including administrators, principals,

teachers, staff members, and pupils.  Conspicuous by its absence in those statutes is any reference

to students or parents of students who object to such things as a school uniform policy.  Plaintiffs

cannot meet the threshold element from Cort v. Ash as a matter of law.

     Plaintiffs also cannot satisfy the second factor,  because a review of the legislative history

from AB 376, the bill giving rise to NRS 392.458, shows absolutely  no intent to create any type of

remedy, and certainly no private right of action. The legislative history from Assembly and Senate

minutes about the bill is quite scant, but it does reveal that this legislation is simply a template or

model for school uniforms that can be used in seventeen different school districts in Nevada:

> Section 18 talked about school uniforms of which the public was very supportive.
> Ms. Giunchigliani stated she used to be opposed to the subject of school uniforms but
> had since begun to believe there was a need to get back to the business of education
> instead of being hall monitors, wardens, and debating whether or not wearing a T-
> shirt with a marijuana leaf on it was acceptable in the classroom.   Uniforms
> alleviated the problem of debates over dress codes. She said it would not fix all
> problems nor would it get rid of gangs; it would simply add another component of
> discipline to the classroom.  She said there was some type of facilitation needed for
> the "needs parents" and because [of] the transiency, many districts needed to allow

a trade-in uniform program. Ms. Von Tobel said she supported uniforms but to get it passed it would have to become an enabling process rather than mandating. ...

Minutes of the Assembly Subcommittee on Education considering section 18 (school uniforms) of AB 376, Sixty-ninth Session of the Nevada Legislature at p. 4 (June 17, 1997); see also Minutes of the Assembly Subcommittee on Education considering AB 376 , Sixty-ninth Session of the Nevada Legislature at p. 7 (June 19, 1997) (unanimous passage of motion to accept amendment to section 18 to change "shall" to "may" so that school districts could decide whether to have such policies).

The subcommittee minutes excerpted above are policy statements -- policy statements allowing dress codes. However, statutory policy statements as a general rule do not give rise to enforceable rights and duties. Aripa v. Dep't of Social and Health Services, 588 P.2d 185, 188 (Wash. 1978), overruled on other grounds, State v. WWJ Corp., 980 P.2d 1257, 1260 (Wash. 1999). Likewise, the policy statements from AB376 do not give rise to enforceable rights and duties.

Plaintiffs also fail to fulfill the third Cort v. Ash requirement of showing that implying a remedy is consistent with the underlying purpose of the legislation.  As the Legislative history reveals, implementation is to take place, or not, by seventeen separate school districts.  It would certainly be illogical to contend that an implied private right of action exists under a statute that, by its terms, is for implementation by seventeen separate school districts.  There is no room in the law for such a haphazard scheme.  Finally, simply citing a federal statute about "safe and drug-free schools," FAC at ¶¶259-260, 265, does not transform a state issue into a federal one. Since there is no express or implied private right of action, dismissal is an appropriate disposition of this claim.

Plaintiffs' **tenth claim for relief** grounds itself in NRS Ch. 241, Nevada's Open Meeting Law ("OML"). FAC at ¶¶272-279.  Plaintiffs allege that the Roy Gomm Uniform Committee is "an

advisory committee which advises or makes recommendations to Roy Gomm Elementary School and the WCSD, entities which expend or disburse or are supported in whole or in part by tax revenue." Id. at ¶273.  Contrary to several of their general allegations, Plaintiffs then allege that the Uniform Committee "took action" on May 31, 2011 "when it completed the written Uniform Policy." Id. at ¶274.  Since the meeting was "not open to the public," notice was not given, and a copy of the proposed written uniform policy was not provided, Id. at ¶275, Plaintiffs want the court to void the written uniform policy and award Plaintiffs attorney's fees and costs. Id. at ¶¶276-279.

Under the OML, if an advisory committee or subcommittee advises the school board *at the board's request*, the underline board is the "public body," and the committee's meetings can be subject to the OML's requirements for posted agendas, meeting minutes, etc. Here, there are no allegations that the Roy Gomm Uniform Committee was asked by the school board to report to it, so the OML is beside the point, and does not apply.  State law *permits* the various school districts to adopt a *permissive* policy to adopt dress codes/uniforms on a *local* basis. See NRS 392.458; AB376. Since there was no advisory committee doing work at the school board's behest, Plaintiffs' allegations fail to state a legally cognizable claim under the OML.

Defendants also have an alternative ground for dismissal of this claim.  Pursuant to NRS 241.037(3), when a suit is brought against a "public body" to have an "action" declared void, that suit "must be commenced with 60 days after the action objected to was taken." Id.  Subsections (1) and (3) of NRS 241.015 define "action" and "public body" as follows:

1. "Action" means:
(a) A decision made by a majority of the members present during a meeting of a public body;
(b) A commitment or promise made by a majority of the members present during a meeting of a public body;

(c) If a public body may have a member who is not an elected official, an affirmative vote taken by a majority of the members present during a meeting of the public body; or

(d) If all the members of a public body must be elected officials, an affirmative vote taken by a majority of all the members of the public body.

. . .

3.  Except as otherwise provided in this subsection, "public body" means:

(a) any administrative, advisory, executive or legislative body of the State or a local government which expends or disburses or is supported in whole or in part by tax revenue or which advises or makes recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue, including, but not limited to, any board, commission, committee, subcommittee or other subsidiary thereof . . .

NRS 241.015(1), (3).   For purposes of argument in this motion only, to the extent it is assumed that the Roy Gomm Uniform Committee could be considered a "public body," the NRS 241.015(1) "action" taken were the actions described in Plaintiffs' "General Allegations" at ¶¶40-67, which took place February 11, 2011, April 26-27, 2011, and May 2-3, 2011. Since all of those "actions" by the Uniform Committee as the "public body" (for purposes of this motion only) pre-date the July 6, 2011 filing of Plaintiffs' Complaint by more than 60 days under NRS 241.037(3), this claim is time-barred, it cannot succeed, and it should be dismissed.

Plaintiffs' **eleventh claim for relief** is for breach of a special relationship. FAC at ¶¶280-288. Plaintiffs allege that they "imparted a special confidence in Defendants based upon Defendants' statutory, educational and advisory roles" for Nevada citizens and students and parents at Roy Gomm Elementary School. Id. at ¶282. Plaintiffs also allege that they "imparted a special confidence in Defendants when Defendants undertook to provide the Roy Gomm parent and student population with information regarding the need and efficacy of mandatory school uniforms." Id. at ¶283.

Nevada does recognize a claim for breach of "confidential relationship," which may arise by reason of kinship or professional, business, or social relationships

between the parties. Such a relationship exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind; it may exist although there is no fiduciary relationship; it is particularly likely to exist when there is a family relationship or one of friendship.

<u>Yerington Ford, Inc. v. General Motors Acceptance Corp.</u>, 359 F.Supp.2d 1075, 1088 (D. Nev. 2004) (citing <u>Perry v. Jordan</u>, 111 Nev. 943, 900 P.2d 335, 337-38 (1995)), <u>rev'd, but aff'd in relevant part,</u> <u>Giles v. General Motors Acceptance Corp.</u>, 494 F.3d 865, 883-884 (9th Cir. 2007). A <u>Perry v. Jordan</u> claim, if supported by the facts, recognizes the existence of confidential relationships not rising to the level of fiduciary relationships. <u>Yerington Ford</u>, 359 F.Supp.2d at 1093.[4]

Here, Plaintiffs' allegations fall short. This type of claim requires that the *defendant* take action, in order to gain the confidence of the *plaintiff*. <u>Id</u>. Plaintiffs' allegations are "backwards," so to speak. Plaintiffs allege that they imparted "a special confidence in Defendants," FAC at ¶¶282-283, when that is the reverse of what is required for a cognizable claim of a "special" or "confidential relationship."[5] A defendant must gain the confidence of the plaintiff, and the defendant must purport to act or advise with the plaintiff's interests in mind. <u>See</u> 359 F.Supp.2d at 1093.

There are no allegations in Plaintiffs' Complaint that any of the Defendants took action to

---

[4] Plaintiffs allege "fiduciary-like" duties. FAC at ¶¶285-286. In <u>Yerington Ford</u>, this Court opined that because fiduciary relationships carry significant legal consequences, they cannot be the product of wishful thinking. 359 F.Supp.2d at 1091 (citation and punctuation omitted). Furthermore, a fiduciary duty is not created by a unilateral decision [by the plaintiff] to repose trust and confidence [in the defendant]; it derives from the conduct or undertaking of the purported fiduciary [defendant]. <u>Id</u>. (brackets added). By analogy, then, the allegations in this case that "Plaintiffs imparted a special confidence in Defendants...," FAC at ¶¶282-283, would be patently insufficient as unilateral decisions on their part, and nothing more than impermissible "wishful thinking."

[5] In addition, the purported "special confidence" in the allegations from the FAC at ¶¶282, 283, are inconsistent with those earlier in the FAC at ¶¶58-61, 68-76, 91-98. The earlier allegations show that Plaintiffs were taking their own path, and were not reposing any "special confidence" in the actions of Defendants.

MAUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

gain the confidences of the Plaintiffs.  Similarly, in the <u>Yerington Ford</u> case, the plaintiffs claimed that defendant GMAC purported to act or advise with plaintiffs' interests in mind. <u>Id</u>.  However, the notion that anyone at GMAC knew of plaintiffs' alleged confidence in them, or that plaintiffs were relying on GMAC for financial advice, could not withstand analysis:

> The mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.

<u>Id</u>., 359 F.Supp.2d at 1093 (citation omitted).  In this case, Plaintiffs do not even allege that any particular  Defendant knew of some supposed "trust and reliance" on the part of Plaintiffs, since Plaintiffs only allege that a "reasonable person in Defendants' positions would have known of that confidence." FAC at ¶284.  That is wholly deficient. Moreover, just because Plaintiffs' children attend a school that went through the process of researching and evaluating school uniforms does not morph somehow into a "confidential relationship."  Absent the necessary requirements for a "special" or "confidential" relationship, this claim should be dismissed.

Plaintiffs' **twelfth claim for relief** alleges "negligent and/or intentional misrepresentation and fraud," principally on the part of three individual Defendants: Principal Pilling; Mrs. Hunsberger, a parent who is chairperson of the Uniform Committee; and to a lesser extent Defendant Rauh, a WCSD Administrator. FAC at ¶¶289-309.  These claims are frivolous.

The elements of negligent misrepresentation in Nevada are (1) the defendant must have supplied information while in the course of his business, profession or employment, or any other transaction in which he had a pecuniary interest; (2) the information must have been false; (3) the information must have been supplied for the guidance of the plaintiff in his business transactions;

(4) the defendant must have failed to exercise reasonable care or competence in obtaining or communicating the information; (5) the plaintiff must have justifiably relied upon the information by taking action or refraining from it; and (6) as a result of his reliance upon the accuracy of the information, the plaintiff must have sustained damage. See  Bill Stremmel Motors v. First Nat'l Bank, 94 Nev. 131, 134, 575 P.2d 938 (1978).

Here, there is no question that Defendants provided information about school uniforms. E.g., FAC at ¶¶44, 48-52, 54-55.  But Plaintiffs' other allegations do not satisfy the remaining elements of negligent misrepresentation.   The claim requires Plaintiffs to focus on the alleged "false information" that was supplied by Defendants for the "guidance" of Plaintiffs in this "transaction." Yet, Plaintiffs' allegations  principally describe "Roy Gomm parents and students," FAC at ¶¶290, 291, 292, or similar variants, FAC at ¶¶293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 305, 307, directly or by implication. Plaintiffs are only mentioned from time-to-time, FAC at ¶¶297, 298, 305, 307, and there are no allegations that any of the information supplied by Defendants was "false." See FAC at ¶¶290-309 (no allegations of false information), which is fatal to this claim.  Although there is certainly a lot of complaining about the process, Id., Plaintiffs' mere unhappiness over a school dress code does not constitute "negligent misrepresentation," particularly since the "justifiable reliance" allegations at ¶307 conflict with ¶¶40-87, which show Plaintiffs' non-reliance.

In order to state a claim for fraud in Nevada, a plaintiff must show each of the following elements: (1) a false representation made by defendant; (2) defendant's knowledge that the representation was false when made; (3) an intent by defendant to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damages to plaintiff resulting from fraud. See Bulbman, Inc. v. Nevada Bell, 825 P.2d 588, 592 (Nev. 1992). Fraud must be pled with

particularity, including allegations as to time, place, nature of the fraud, and the specific parties involved. See Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993); Fed.R.Civ.P. 9(b).  Mere conclusory allegations of fraud are insufficient.  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).[6]

Rather than alleging any "false representations" by Defendants, this "fraud" claim is nothing more than a detailed recitation about the Plaintiffs' disagreements with the adoption of mandatory school uniforms at Roy Gomm Elementary School.  One illustration of this is found at ¶296 in the FAC which is simply a drawn-out version of an e-mail described in Plaintiffs' earlier allegation in ¶61.  The command in Rule 9(b) that fraud claims be pled with particularity does not mean simply re-packaging deficient allegations so that they take up additional space, which is all Plaintiffs have done.

Although Plaintiffs' allegations do contain dates and names, e.g., FAC at ¶¶290-307, no places or locations of the alleged fraud are stated. Those omissions are contrary to the requirements in Fed.R.Civ.P. 9(b), (f) and Neubronner, supra. Moreover, many of the allegations with dates and names are insufficient.  See FAC at ¶¶290-293, 297-300, 302, 305 (allegations that Defendants Pilling and Hunsberger, and also Rauh, failed to inform or identify or notify, or intentionally misled, the Roy Gomm parents and students or student population, etc.)  Those allegations are immaterial,

---

[6] In Larson v. Homecomings Financial, LLC, 680 F.Supp.2d 1230, 1235 (D. Nev. 2009), the Court opined that "misrepresentation is a form of fraud where a false representation is relied upon in fact." In finding that the Larson plaintiff's intentional misrepresentation claim failed, the Court noted that to state a claim for fraudulent misrepresentation in Nevada, a plaintiff must allege that (1) defendant made a false representation; (2) defendant knew or believed the representation to be false; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a result of his reliance. 680 F.Supp.2d at 1235. Whatever incantation is used, the Plaintiffs' allegations in this action fall far short of pleading a sufficient claim of fraud/intentional misrepresentation, as explained herein.

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

since the generic "Roy Gomm parents and students" are not parties to this action.   As such, Plaintiffs' allegations fail to satisfy the third prong of fraud/misrepresentation claims, *i.e.*, "an intent *by defendant* to induce *plaintiff* to act or refrain from acting." <u>See</u> <u>Bulbman</u>, <u>supra</u> (emphasis added). Since Plaintiffs knew and were well aware that there would be voting on the proposed uniform policy, FAC at ¶¶48-55, they also cannot meet the reliance prong of a "fraud" claim.   Absent allegations to satisfy a fraud claim, dismissal of the twelfth claim is warranted.

Plaintiffs' **thirteenth claim for relief** is labeled "violation of NRS Chapter 239."  FAC at ¶¶310-314. NRS Ch. 239 contains Nevada's Public Records Act.  Without specifying any records that are claimed to be "public records," FAC at ¶311, Plaintiffs allege that "Defendants Pilling and Hunsberger denied Plaintiffs access to public records which right is guaranteed pursuant to NRS Chapter 239." <u>Id</u>.  Assuming, *arguendo*, that the records of the Uniform Committee are "public records" subject to the Public Records Act in NRS Ch. 239 (which Defendants do not concede), this claim cannot succeed because it is in the wrong forum.  Under NRS 239.011, if a request to inspect or copy an actual public record is denied, "the requester may apply to the district court in the county in which the book or record is located for an order permitting him to inspect or copy it." <u>Id</u>.  The Nevada Supreme Court has held that such an application must be via a writ of mandamus in state court under NRS 34.160.  <u>See</u> <u>DR Partners v. Bd. of County Comm'rs</u>, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) (mandamus is the appropriate procedural remedy to compel production of public records).[7]  This claim is appropriately disposed of summarily on this basis, and because there does not appear to be any private right of action under the Act.  <u>See</u> pp. 17-20, <u>supra</u>.

---

[7]   Even in an appropriate forum, it appears that Defendants may be covered by the deliberative process privilege, <u>DR Partners</u>, <u>supra</u>, 6 P.3d at 468-69, assuming that "public records" are involved.

Plaintiffs' **fourteenth claim for relief**, FAC at ¶¶315-316, purports to be one for "attorney's fees and costs" under 42 U.S.C. §1988.  Section 1988(b) provides in pertinent part as follows:

> In any action or proceeding to enforce a provision of [sections 1981-83, 1985 and 1986 of this title], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, ... .

Id. (brackets and ellipses added). The statute, by its plain language, is a *remedy*, not an actual claim for relief.  Fees are not awarded as costs to a "prevailing party" until after a case is concluded and there actually is a "prevailing party."  Until then, the parties are just parties, not yet eligible for the discretionary remedy in 42 U.S.C. §1988.

Plaintiffs' **fifteenth and sixteenth claims for relief** are for injunctive and declaratory relief, respectively. FAC at ¶¶317-323, ¶¶324-328. Injunctive relief and declaratory relief are remedies and not causes of action.  Gillespie v. Countrywide Bank FSB, case no. 3:09-cv-556-JCM-VPC at p. 5 (D. Nev. August 19, 2011), citing Stock West, Inc. v. Confederated Tribes of Colville Reservations, 873 F. 2d 1221, 1225 (9th Cir. 1989) (the declaratory judgment act, 28 U.S.C. Sec. 2201, only creates a remedy and is not an independent basis for jurisdiction), and In re Wal-Mart Wage & Hour Employment Practices Litig., 490 F.Supp.2d 1091, 1130 (D. Nev. 2007) (although count nine was denominated as a separate claim, it was not a separate cause of action, but a request for injunctive relief which is not an independent ground for relief). Therefore, these should be dismissed as a matter of law.

D.     The individual defendants are entitled to qualified immunity against claims of constitutional violations.

There are four natural persons listed in the case caption who have been sued, *inter alia*, in their individual capacities: KayAnn Pilling (the school principal), Dina Hunsberger (a parent), Heath

Morrison (the WCSD Superintendent), and Lynn Rauh (the former Area Superintendent). FAC at p. 1.[8] Natural persons sued in their individual capacities, but not municipalities or natural persons sued in their official capacities, may have qualified immunity against claims of constitutional violations. Kentucky v. Graham, 473 U.S. 159, 166-167 (1985).  Government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  Ward v. County of San Diego, 791 F.2d 1329, 1332  (9th Cir. 1986), cert. denied, Duffy v. Ward, 483 U.S. 1020 (1987);[9] see also Saucier v. Katz, 533 U.S. 194, 201 (2001) (court must examine whether (1) there has been a constitutional violation, and (2) the state of the law was clear enough at the time of the alleged violation that a reasonable person in defendant's position would have known his actions violated plaintiff's rights), as modified in Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009) (while the sequence under Saucier is often appropriate, it should no longer be regarded as mandatory; a court has discretion to analyze the second prong first in light of the circumstances of a particular case, and in order to avoid unnecessary constitutional rulings).

Qualified immunity is an affirmative defense to damages liability; it does not bar actions for declaratory or injunctive relief. Petzak v. Nevada ex rel. Dep't of Corrections, 579 F.Supp.2d 1330, 1338 (D. Nev. 2008), citing Amer. Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816,

---

[8] A WCSD Area Superintendent, Debra Biersdorff, is mentioned in the text of ¶11 of the FAC, but is not shown as a defendant in the case caption. To the extent she is considered an individual defendant, she is represented herein by the undersigned to the same extent as the other individual defendants, and she is also entitled to qualified immunity for the reasons set forth in this section.

[9] A "clearly established" right for purposes of qualified immunity is one that has been announced by the Supreme Court or an applicable Court of Appeals, i.e., binding authority. See Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004).

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

818 (9th Cir. 1991) (other citations omitted), aff'd, 385 Fed.Appx. 635 (9th Cir. 2010) (not reported).

As shown above with respect to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth claims for relief, there were no constitutional violations by the individual Defendants. As to those claims, they are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, dismissal of Plaintiffs' action is appropriate pursuant to Fed.R.Civ.P. 12(b)(6).

DATED: November 8, 2011.

MAUPIN, COX & LeGOY

By: _____
     Michael E. Malloy, Esq.
     Debra O. Waggoner, Esq.
     Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of MAUPIN, COX & LeGOY, Attorneys at Law, and in such capacity and on the date indicated below, I mailed a copy of the foregoing document to Plaintiffs in an envelope with first class postage thereon fully prepaid, addressed as follows:

Mary Frudden
Jon E. Frudden
1902 Carter Dr.
Reno, NV 89509

Dated this _8_ day of November, 2011.

_____
Employee

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000