1  Michael E. Malloy, Esq., Nev. Bar No. 617
2  Debra O. Waggoner, Esq., Nev. Bar No. 5808
   MAUPIN, COX & LeGOY
3  P. O. Box 30,000
   Reno, Nevada  89520
4  (775) 827-2000 - telephone
   (775) 827-2185 - facsimile
5  mmalloy@mclrenolaw.com e-mail
6  dwaggoner@mclrenolaw.com e-mail
   Attorneys for Defendants Washoe County
7  School District, KayAnn Pilling, Dina
   Hunsberger, Heath Morrison, Lynn Rauh,
8  Debra Biersdorff, and the Roy Gomm
9  Uniform Committee

10

11              UNITED STATES DISTRICT COURT

12                 DISTRICT OF NEVADA

13

14  MARY FRUDDEN and JON E.              Case No. 3:11-cv-00474-RCJ-VPC
15  FRUDDEN, individually and as
    parents and guardians of their minor
16  children JOHN and JANE DOE,          **DEFENDANTS' REPLY TO
17                                         PLAINTIFFS' OPPOSITION TO
            Plaintiffs,                    DEFENDANTS' MOTION TO DISMISS**
18      vs.
19  KAYANN PILLING, individually and in
20  her official capacity as the Principal of Roy
    Gomm Elementary School; THE ROY GOMM
21  UNIFORM COMMITTEE; *et al.*,
22          Defendants.
23  _____/

24          Defendants Washoe County School District, a political subdivision of the State of Nevada

25  (the "District" or "WCSD"), KayAnn Pilling, Dina Hunsberger, Heath Morrison, Lynn Rauh, and

26  Debra Biersdorff, in their individual and official capacities, and the "Roy Gomm Uniform

Committee" (collectively "Defendants"), through counsel, submit their Reply to Plaintiffs' Opposition ("Opp." or "Opposition") to Defendants' Motion to Dismiss ("MTD") Plaintiffs' First Amended Complaint ("FAC" or "Complaint"). This Reply and the Motion it supports are made and based on Fed.R.Civ.P. 12(b)(6), each memorandum of points and authorities, the documents on file herein, and any other matters the Court deems pertinent to its consideration of this matter.

DATED:  November 30, 2011.                    MAUPIN, COX & LeGOY

By  *Debra O. Waggoner*
                                               Michael E. Malloy, Esq.
                                               Debra O. Waggoner, Esq.
                                               Attorneys for Defendants


## MEMORANDUM OF POINTS AND AUTHORITIES

A.      Introduction.

Plaintiffs begin with a lengthy, immaterial quotation about "nationalism" in a case involving the recitation of the pledge of allegiance and saluting the flag in school. Opp. at p. 2, 3:1-6. The quotation is unworthy of attention, because this case is simply not one that "transcends constitutional limitations." See Opp. at 3:3. Instead, this case is being driven by a disgruntled parent, Mary Frudden, who is clogging the federal courts with nothing more than a frivolous lawsuit. Cf. MTD at 3:24-26, Defendants' footnote one, which Plaintiffs have failed to traverse. Dismissal is the only appropriate disposition of this case.

B.      Since Plaintiffs' first claim is not legally cognizable, it should be dismissed.

Plaintiffs' inconsistent ramblings about the nature or basis of the so-called first claim for relief simply highlight its multiple inadequacies. Since it is evident that the "without power to enact"

claim is untenable, Plaintiffs have switched to "*ultra vires* acts by government officials." <u>Compare</u> FAC at ¶¶133-145, <u>with</u> Opp. at p.4. It does not help Plaintiffs because there must be a substantive claim *before* there can be a remedy:

> The question whether a given set of facts shows a right in the plaintiff is a substantive question. For example, the question whether the plaintiff can recover for trespass or breach of contract is substantive, and so is the question whether a given set of facts amounts to a trespass or breach of contract. Those questions are answered by turning to the law of torts or contract. When the plaintiff's substantive rights are known, the remedies questions can be asked. What relief is to be given for violation of the substantive rights? More specific remedial questions might be "Can the plaintiff recover damages for trespass, and if so by what measure?

Dan B. Dobbs, <u>Law of Remedies</u> 1-2 (2d ed. 1993). The lack of a coherent substantive basis for the first claim is also shown by Plaintiffs' failure to articulate whether it is based on federal law, or state law. Following citation to some federal cases, Plaintiffs argue that "[c]ase law makes clear the Court can determine whether Defendants exceeded statutory authority in promulgating the Written Uniform Policy." Opp. at 4:4-16 and 21-26. Then they switch to Nevada statutory law, Opp. at 4:17-19, p. 5, 6:1-7 (for which there is no private right of action, <u>see</u> MTD at pp. 17-20), and then even the Nevada Constitution, just in case! Opp. at 5:8-10, 6:10-12, 23-28. Plaintiffs are improperly conflating federal and state law claims, as explained in <u>Lovell v. Poway Unified School Dist.</u>, 90 F.3d 367, 370 (9th Cir. 1996). Plaintiffs' lack of coherence dooms their futile attempts to distinguish the <u>O'Brien</u> case, Opp. at 6:8-16, which fails to traverse the MTD at 5:10-18.[1]

Plaintiffs' arguments that the uniform policy was established by "utilizing arbitrary and capricious methods, lacking in adequate safeguards," Opp. at 6:4-7, are analogous to those made,

---

[1] Plaintiffs also cite FAC allegations that do not apply to this claim, Opp. at 5:26, and they mention the affirmative defense of discretionary function immunity, Opp. at 5:20-23, which was not briefed in the MTD. These are unworthy of attention.

MAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

and rejected, in the remarkably similar case of <u>Brandt v. Bd. of Educ. of City of Chicago</u>, 480 F.3d 460, 466 (7th Cir. 2007), <u>cert. denied</u>, 552 U.S. 976 (2007). There, a group of eighth graders including Michael Brandt, whose mother herself, as in this action, was lead counsel for plaintiffs, protested the selection of a class T-shirt other than the one they wanted. 480 F.3d at 462-463.  The court expressed doubts about whether the constitutional privilege to engage in protest demonstrations in the name of free speech extended to eighth graders, but it did not need to go as far as denying eighth graders *any* First Amendment rights because it was plain and manifest that the school did not violate the First Amendment by attempting to exclude the Brandt T-shirt:

> We must be precise about the right that the plaintiffs sought to vindicate by protesting. It is the right to an explanation by the school for how the election to pick an official eighth-grade T-shirt was conducted. We do not think eighth graders have such a right. For the school to hold an election for class T-shirt and rig the results, as the plaintiffs suspect happened, is probably not a recommended educational practice, **but it is not an infringement of <u>any</u> legal right**.

480 F.3d at 466 (italics in original; emphasis added). Here, the student plaintiffs are in the third and fifth grades, and their mother is their attorney. FAC at ¶¶125-126, 4; FAC at 1:1-2. Here, too, Plaintiffs suspect the election to establish Roy Gomm Elementary's school uniform policy was rigged, <u>see</u> Opp. at 6:5-7, but as the <u>Brandt</u> court stated, that is not an infringement of **<u>any</u>** legal right. Dismissal of the first claim is therefore warranted.

C.   <u>This is not a *Tinker* case, so the second claim for relief should be dismissed.</u>

Plaintiffs argue at length about content and viewpoint discrimination, and strict scrutiny. Opp. at pp. 7-10. Yet, after all the lofty quotations about students not shedding their constitutional rights at the schoolhouse gate, <u>Id.</u>, the actual protests to the District about the uniform policy were in reality being made by Mary Frudden, not the student Plaintiffs. <u>Id</u>. There are no allegations that

the wearing of non-uniform clothing, etc. by the student plaintiffs was *their* idea or expression. Id. at 8:26-28, 9:1-8; see also FAC at ¶154 (alleging "Plaintiffs' choice," not the student Plaintiffs' choice).  This is not the only "mom-driven" case, so to speak.  See Walz v. Egg Harbor Township Bd. of Educ., 342 F.3d 271, 275 (3rd Cir. 2003) (pre-kindergartner plaintiff's mother appeared to have driven her son's activity and the First Amendment litigation), cert. denied, 541 U.S. 936 (2004). This case, like Walz, should also go nowhere.  By the way, where is dad (Jon Frudden) in all this?

Moreover, as pointed out in a First Amendment case involving a fourth grade student, Muller v. Jefferson Lighthouse School, 98 F.3d 1530, 1538 (7th Cir. 1996), cert. denied, 520 U.S. 1156 (1997), the U.S. Supreme Court has not expressly considered whether free expression rights first announced in *Tinker* extend to grade school children. *Tinker* and its progeny dealt principally with older students for whom adulthood and full citizenship were fast approaching. Id. The "marketplace of ideas," an important theme in the high school student expression cases, is a less appropriate description of an elementary school, where children are just beginning to acquire means of expression. Id.  Grammar schools are more about learning, including learning to sit still and be polite, than about robust debate. Id. The young student Plaintiffs here are unable to allege any "marketplace of ideas" because this is not a *Tinker* case.

The Opposition argues that the student Plaintiffs were "protesting" the written uniform policy because they do not want to be "part of the Roy Gomm One Team, One Community" message, and that their actions in wearing a soccer uniform and wearing a shirt inside-out make it "clear" that the "Plaintiff students were sending their *continued* message of protest and their outward support of, and affiliation with, another "team."  Opp. at 9:9-20 (italics in original). But there is nothing "clear" in the student Plaintiffs' actions at all other than their simple and dubious non-compliance.  Plaintiffs

acknowledge the requirement to show that their intent to convey a particularized message was present AND a great likelihood that the message would be understood by those who viewed it, see Opp. at 8:11-18 (citing cases), but they never identify who may have viewed, or much less understood, their so-called "message." Their claims truly are made in a vacuum. The FAC at ¶155 is a mere formulaic and meaningless recitation parroting the case law in the Opp. at 8:13-14, neither of which is adequate to defeat Defendants' MTD. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009) (threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice).

Plaintiffs cite numerous non-school-uniform cases for their "viewpoint discrimination" arguments. Opp. at pp. 9-10. They do this, of course, because court decisions in school uniform cases do not support their own school uniform case. See e.g., Jacobs v. Clark County School District, 526 F.3d 419, 422 (9th Cir. 2008) (largely concluding that public school mandatory dress policies survive constitutional scrutiny); Blau v. Fort Thomas Public School Dist., 401 F.3d 381, 393 (6th Cir. 2005) (noting that student plaintiff faced an uphill battle claiming that strict scrutiny applied to school dress code because the list of fundamental rights is short, and it does not include the wearing of dungarees). Moreover, their plaintive arguments about the student Plaintiffs being "disciplined," are without support. Opp. at 9:1-8. What discipline?

Plaintiffs' vain attempts to impute some kind of sinister motive to school uniforms and slogans that simply attempt to foster a positive school environment and school spirit are very far afield indeed from Plaintiffs' over-the-top, inapplicable "political speech" argument. See Opp. at 10:26-28. Because the First Amendment is simply not implicated, Plaintiffs' second claim is appropriately disposed of via the MTD.

D.     No one is interfering with Plaintiffs' parental rights as alleged in the third claim.

Going well beyond the bounds of Plaintiffs' FAC at ¶¶176-188, the Opposition at pp. 11-12 prattles on and on about the "No Child Left Behind Act of 2001," a statute not mentioned in the FAC. Plaintiffs complain about their "meaningful parental involvement" being inhibited, Opp. at 11:9-10, and that the First Amendment protects against "public authority" assuming "a guardianship of the public mind through regulating the press, speech, and religion." Opp. at 12:8-9. Their arguments would seem to suggest, then, that school uniforms and slogans have assumed such a "guardianship" over the Plaintiffs' "public mind" because they are too addled to manage their own lives. No provision in the Constitution could solve that dilemma, not even the First Amendment. A court may dismiss a claim as frivolous when it lacks an arguable basis either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989), *superseded by statute on other grounds as stated in* Brown v. Citicorp, 1997 WL 665872 (N.D. Ill. 1997). This claim satisfies that criterion, so it should be dismissed.

E.     Plaintiffs' procedural and substantive due process rights were not violated.

In clear and concise language, the MTD at pp.10-11 dismantled Plaintiffs' "due process" claims. Therefore, Plaintiffs have shifted their focus in the Opposition to "voting" procedures that had "absolutely no safeguards," Opp. at 13:18-24, which are now (magically!) a constitutionally protected "liberty interest." Opp. at 13:6-8. However, defendants' purported failure to comply with their own administrative procedure does not, itself, constitute a violation of constitutional due process. Wynar v. Douglas County School Dist., 3:09-cv-0626-LRH-VPC, *4 (D. Nev. August 10, 2011).

Moreover, as we have seen from Brandt, *supra*, 480 F.3d at 466, "rigged" election results

for an eighth grade class T-shirt did not pose an infringement on *any* legal right, and the same sound reasoning applies here. Plaintiffs' FAC has very detailed descriptions about notice of the proposed school uniform policy to the Roy Gomm school community, about meetings held to explain the proposal and the process, that Plaintiffs knew about the content of the proposal and about the process and written policy, that Plaintiffs objected to the policy and process, that Plaintiffs interacted with District personnel, etc. FAC at pp. 7-23; ¶191. The notion that Plaintiffs lacked knowledge or opportunity to be heard, or that they were deprived of any "right," is fanciful indeed.

Plaintiffs' reference in the Opp. at 14:5 to some supposed "damages" argument made in the MTD at 10:22-11:14 is false. There, the MTD discusses liberty interests in clean academic records and that the student Plaintiffs were not deprived of *any* educational benefits. There is no mention of "damages," so Plaintiffs' case law, as well as the fourth claim, should all be disregarded by the court.

F.    Absent constitutional deprivations, dismissal of the fifth claim is appropriate.

Plaintiffs' FAC at ¶¶199-211 fails to allege the threshold element of this claim (deprivation of a constitutional right), which Defendants correctly pointed out in the MTD at pp. 11-12. Plaintiffs have therefore inserted a footnote in the Opp. at 14:28. The footnote, and the plethora of case law presented there without any factual context, Opp. at pp. 14-15, are unavailing. After spilling a great deal of ink complaining about how the Roy Gomm uniform policy was not enacted pursuant to statute, *i.e.*, that it is not a "comprehensive dress code" policy, *e.g.*, FAC at ¶¶20-36, 40-67, 90-98, 135-143, Plaintiffs now take umbrage about the MTD at 12:10-11 pointing out that the FAC at ¶201 alleges no "comprehensive dress code" policy. Opp. at 15:16-17. Their own inconsistent allegations undermine their arguments. Next, Plaintiffs argue that Defendants "confuse" use of the word "policy," Opp. at 15:18-26, but they fail to explain the distinction they claim exists. Since Plaintiffs'

confusing and poorly reasoned arguments fail to rebut Defendants' MTD, dismissal of the fifth claim is warranted.

       G.     The "inadequate failure to train" claim cannot survive so it should be dismissed.

       Instead of acknowledging their failure to allege *who* is responsible for the alleged "inadequate training" of the Roy Gomm Principal, the Area Superintendent, and the Superintendent, Opp. at 16:9-11, Plaintiffs argue that the MTD "does not reveal any deficiencies" in the sixth claim. Opp. at 17:8-9. Plaintiffs are wrong. Simply saying that the "WCSD" failed to train is patently inadequate. When a defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be specifically alleged. Jones v. Sisto, 2:08-cv-01382-LDG, *2 (E.D. Cal. June 9, 2011) (citations omitted). Vague and conclusory allegations of official participation in civil rights violations are not sufficient:

> Warden Sisto is the only named defendant specifically identified as attempting to place the plaintiff "in danger." Although it may be possible to read the complaint as providing an actual link between Calvo's actions and the blanket identification of "prison officials who attempted to place plaintiff in danger," plaintiff's vague and conclusory allegations are insufficient to allege a violation...and the allegations are not sufficient to show the defendants committed the conduct at issue.

Id. (internal punctuation omitted; ellipses added). Here, too, it is not enough to allege the failure of the "WCSD" to train and supervise its employees regarding the implementation of mandatory uniform policies, and the resulting disciplinary action from violations, FAC at ¶¶215, 216, 218, because non-specific allegations of "official participation" in "civil rights violations" are just not sufficient to state a claim. Jones, *supra*. In addition, Plaintiffs' citation to Bd. of County Comm'rs v. Brown, 520 U.S. 397 (1997) does not help Plaintiffs. Opp. at 16:12-25. There, county sheriff B. J. Moore, an actual person, was alleged to have "fallen down on the job," so to speak, in hiring the

son of his nephew as a deputy, who injured the plaintiff. 520 U.S. at 400-401. Here, Plaintiffs do not allege the identity of anyone *who* inadequately trained WCSD personnel, so their claim has no force.

Plaintiffs also argue that they could succeed in proving this claim without showing a pattern of constitutional violations where a violation of federal rights "may be a highly predictable consequence" of failure to train. Opp. at 16:26-28.  Since there has been no stampede to the courthouse by any other similarly aggrieved Roy Gomm families, the argument is meritless. The sixth claim should be dismissed.

H.    Absent facts to support an Equal Protection claim, the seventh claim fails.

An Equal Protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Jones v. Calif. Dep't of Corrections, 1:08-cv-01383-LJO-GBC, *9-10 (E.D. Cal. March 15, 2011) (citations omitted). Without addressing Defendants' MTD at pp. 14-15, Plaintiffs argue that they are not treated like all other students in the WCSD because they are "compelled" to speak the Roy Gomm message. Opp. at 17:15-21. The claim fails because Plaintiffs do not identify any defendant who intentionally discriminated against them, they do not identify any protected class of which they are members, and they do not identify who treated them differently, on purpose, and absent a rational and legitimate state purpose. The Court should dismiss the claim.

I.    The eighth claim fails because Roy Gomm Elementary is not a public forum.

When a school has not been opened up for indiscriminate use, it is not a public forum. See Muller, *supra*, 98 F.3d at 1539 (further, the potential verbal cacophony of a public forum can be

IAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

10

antithetical to the delicate custodial and tutelary environment of an elementary school). Since the allegations in the FAC do not fit Plaintiffs' template that Roy Gomm Elementary is a "public forum," Plaintiffs have improperly packed the Opposition with statutes, school regulations, and "facts" that are no where to be found in the FAC. Opp. 17:25-28, p.18. Those should be disregarded.

As Plaintiffs are well aware, Opp. at p. 3, Defendants' MTD tests the sufficiency of the *FAC*, and *not* whatever the Plaintiffs can conjure up later to suit their fancy. That Plaintiffs found some statutes or regulations which, in the abstract, may allow school facilities to be used by others, does not mean Roy Gomm Elementary is a "public forum." Quite the contrary. As noted in <u>Muller</u>, those plaintiffs wanted to have it both ways, too.  After arguing that schools were, by their very nature designated public forums in part because they are dedicated to accommodate students during prescribed hours, the complaint had alleged the school was too discriminating by imposing significant restrictions on certain types of student expression. 98 F.3d at 1539. Here, too, Plaintiffs' FAC alleges that Roy Gomm is way too discriminating because of the restrictive and supposedly so offending "one team, one community" message, FAC at ¶¶101-105, 182-183, yet their extraneous Opposition arguments claim "almost any group can rent school facilities as long as the insurance is paid," Opp. at 18:9-10, and voila`!  A public forum!

But that is not how the law works, which is why the Opposition at 19:1-3 stoops to taking defense arguments out of context by omitting the words "under the forum analysis" when referring to the lack of a First Amendment violation.  Plaintiffs also incorrectly claim that  ¶¶56-60, 64 in the FAC were "overlooked by Defendants," which show that "Plaintiffs were denied the opportunity to present views opposing mandatory uniforms" and their constitutional validity, efficacy, etc. Opp. at 19:4-9. The FAC at ¶¶56-60, 64 alleges that during a school uniform informational meeting, "a

member of the audience" moved to postpone the vote which was denied, that the audience was told that opposing information would be distributed if provided by the following day, that Mary Frudden made a number of requests via e-mail, asserted that school personnel had no authority to take their unconstitutional actions, and requested withdrawal of the ballots or distribution of opposing views with ballots, and that Defendants did not distribute opposing information. What that is supposed to have to do with forum analysis is anybody's guess. The defective eighth claim should therefore be dismissed.

       J.      <u>Absent a private right of action, the ninth claim for relief cannot be sustained.</u>

Despite a begrudging acknowledgment that their cited statutes do not provide for a private right of action, Opp. at 19:15-18, Plaintiffs still argue against automatic dismissal of the claim, and that a "common law claim," also asserted elsewhere in the FAC, might save it. FAC at 19:15-18, 26-28. Those arguments are, of course, nonsensical. Either a legally cognizable claim exists, or it does not. Plaintiffs seem to have difficulty grasping the concept, and requirement, of legally cognizable theories, even though those words or their variants appear in the Opposition at 19:20-21.

Plaintiffs' argument that maybe §1983 will save the day, Opp. at 20:4-8, is unavailing. Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal "Constitution and laws." <u>Lovell</u>, <i>supra</i>, 90 F.3d at 370, <i>citing</i> 42 U.S.C. §1983. To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress. <u>Id</u>.

Plaintiffs' next three paragraphs, Opp. at 20:9-16, 17-21, 22-25, contain an assortment of case law, absent any indication whatsoever about how that authority has any bearing on the ninth claim for relief. Since the ninth claim is devoid of a cognizable legal theory, it must be dismissed.

K.   <u>The flawed tenth claim based on the Open Meeting Law is appropriately dismissed.</u>

Plaintiffs' tenth claim alleging violations of Nevada's Open Meeting Law in NRS Ch. 241 ("OML") is time barred, and nothing in the Opposition changes that. Defendants' MTD at pp. 21-22 cited the meaning of "action" under the OML, which, as one would expect under an open *meeting* law, requires action to have been taken at a *meeting* of a *public body*. NRS 241.015(1).

Plaintiffs incorrectly argue that the Roy Gomm Uniform Committee took "action" when it promulgated the Written Uniform Policy, which took place at one or more meetings held at Roy Gomm Elementary School between May 8, 2011 and May 31, 2011. Opp. at 21:6-9. However, the three paragraphs in the FAC to which Plaintiffs refer, ¶¶90, 274, and 302, do not support their Opposition arguments. The tenth claim is alleged in the FAC at ¶¶272-279. Paragraph 272 realleges the paragraphs that *precede* it, not those which *follow* it. Paragraph 302 is an allegation in Plaintiffs' "fraud" claim, which *follows* the Plaintiffs' OML claim, so it does not apply to the tenth claim. But ¶302 does not help their time-barred OML claim in any event, because it does not mention any *meeting* of a *public body*, two necessary elements for a valid OML claim.

The other two paragraphs in Plaintiffs' FAC provide as follows:

90. The Written Uniform Policy was drafted by the Uniform Committee at one or more meetings held at Roy Gomm Elementary School; no notice of the meeting(s) was given.

274. The Uniform Committee took action, as defined by NRS 241.015(1), when it completed the Written Uniform Policy, which was made available to Roy Gomm parents and students on May 31, 2011 via the Roy Gomm and PFA websites.

These allegations do not support the arguments in Plaintiffs' Opposition. The cites in the Opp. at 21:12 to FAC ¶¶95-100 are also not helpful. Those are allegations about Mary Frudden's June 6, 2011 38-page written demands, that she did not hear from the WCSD by the time she filed

her complaint, and her receipt of Defendant Lynn Rauh's letter.  Moreover, Plaintiffs have not disputed Defendants' citation to the FAC at ¶¶40-67, which show (to the extent the OML even applies) the "action" taken by the Uniform Committee occurred on February 11, 2011, April 26-27, 2011, and May 2-3, 2011. See MTD at 22:9-16.  The short statutory time frame to file an OML complaint is 60 days. NRS 241.037(3).  Plaintiffs' complaint was not filed until July 6, 2011, see Dkt. #1, which was more than 60 days after the last "action" taken. The tenth claim is time barred.

Next, as Plaintiffs are apt to do, they conjure up "facts" in their Opposition which are not contained in the FAC.  Opp. at 22:3-10 (citing FAC at ¶100, alleging Mary Frudden's receipt of a brief letter from Defendant Lynn Rauh which does not support the "facts" in the Opposition); see also Opp. at 23:3-11 (inserting facts about a School Board meeting in June 2011 which are outside parameters of allegations in FAC and do not support the "facts" in the Opposition). This is an attempt to rebut defense arguments about the School Board.  Compare MTD at 21:9-18, with Opp. at 21:14-28, p. 22, 23:1-16.  However, no specifics are provided in the FAC about the composition, membership, or any other details of the Uniform Committee, or for that matter, of the School Board.

Because of the lack of specificity in Plaintiffs' OML allegations and claim, it fails on that basis. Plaintiffs do not allege who met, when they met, where they met, who was there, what they discussed, the numbers of members, whether there was a quorum, etc.  Moreover, to the extent Plaintiffs suggest secretive or sinister motives of the Uniform Committee, e.g., Opp. at 21:6-12, 22:7-14, it needs to be pointed out that Nevada's Open Meeting Law only prohibits collective deliberation or actions of a "public body" (as such term is defined in the OML) where a quorum is present, and the OML is not intended to prohibit every private discussion of a public issue. See Dewey v. Redevelopment Agency of Reno, 119 Nev. 87, 94, 64 P.3d 1070, 1075 (2003).  Besides

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

being time-barred, the Plaintiffs' OML claim lacks merit, so the tenth claim is appropriately disposed of via Defendants' MTD.

   L. <u>Absent any support, the "breach of special relationship" claim should be dismissed.</u>

   Because Defendants' MTD reveals the stark inadequacies of the FAC, Plaintiffs have chosen to enhance their "breach of special relationship" claim via their Opposition, by citing statutes that do not apply, by citing partnership law that does not apply, by assuming a "fiduciary relationship" unsupported by the allegations, and by referring to "facts" that are not found in the FAC. Opp. at 23:18-28, p. 24, 25:1-5. Plaintiffs claim that NRS 392.4575 constitutes an "educational involvement accord," Opp. at 7-18, but they provide no authority linking the statute to their alleged "fiduciary/ special relationship" construct, and no authority that NRS 392.4575 provides for any private right of action.

   Plaintiffs also argue, absent sufficient allegations in paragraphs 280-288 of the FAC, that there was a "fiduciary/special relationship" between "Plaintiff students and Defendants Pilling, Rauh and Morrison." Opp. at 24:7-8. In so doing, Plaintiffs completely ignore the controlling authority in the MTD at pp. 22-24 showing that this type of claim requires the *defendants* to take action in order to gain the confidence of *plaintiffs*. But that is *not* what Plaintiffs allege, because they allege that they imparted a special confidence in Defendants, which is the *reverse* of what is required to state this type of claim. Indeed, Plaintiffs' own cases, Opp. at 23:21-28, 24:1-6, are in accord with Defendants' authority in the MTD at pp. 22-24. Thus, simply citing a passage from a legal encyclopedia about business entity partnerships, Opp. at 24:20-25, is ineffectual and should be disregarded. Another matter that should be disregarded is the following argument:

   Plaintiffs assert Defendants owe them the fiduciary duty to maximize their education

and social experience and to carry out their professional responsibility as educators
to seek the best interest of each student as well as the fiduciary duty of all full
disclosure of material facts relating to decisions affecting them.  Because the duties
imposed upon Defendants are of a fiduciary and special nature, the cases cited by
Defendants regarding confidential relationships not rising to the level of fiduciary
relationships, Motion, 23:4-24:9 are inapposite.

Opp. at 24:27-28, 25:1-4.  Plaintiffs' failure to cite any factual or legal authority for such a specious

argument is understandable, because there are no such requirements.  As noted in Brandt, supra, 480

F.3d at 465, the maxim *de minimus non curat lex* (the law does not concern itself with trifles) is

applicable to constitutional and other cases, and it certainly applies to this "breach of special

relationship" claim, which should be dismissed.

       M.    Plaintiffs' inadequate "misrepresentation" claims should be dismissed.

       Plaintiffs' terse argument about their twelfth claim for relief is devoid of any legal authority,

or any convincing arguments. Opp. at 25:6-19.  Defendants addressed both negligent misrepresen-

tation and intentional misrepresentation/fraud, and showed in detail that Plaintiffs have failed to state

a claim under either construct. MTD at pp. 24-27.  By contrast, Plaintiffs make unconvincing and

feeble attempts to sweep aside the actual focus of their own FAC allegations, which is on others who

are not parties to this action, rather than themselves. See Opp. at 25:8-10. Fraud-based claims, of

course, require much more. See MTD at pp. 24-27. Plaintiffs also do their best to ignore the

Defendants' detailed recitations about Plaintiffs' failures to allege falsity on the part of Defendants,

as well as Plaintiffs' failures to deal with all of their allegations showing their own self-reliance,

rather than reliance-on-the-falsity-of-defendants, which is required for a fraud claim. Compare MTD

at 25:7-21, p. 26, 27:1-6 (detailed treatment), with Opp. at 25:7-19 (terse, inadequate response).

       Since it is not legally sufficient for Plaintiffs to repeatedly allege that the various Defendants

"misrepresented" something, *e.g.*, FAC at ¶¶294, 296, 301, 303, 304, Plaintiffs think they have

solved their inadequacies by one conclusory, opinionated allegation stating that the "representations

were false or without sufficient basis for making such representations." Opp. at 25:13, *citing* FAC

at ¶306. Plaintiffs are mistaken. Fed.R.Civ.P. 9(b) requires specificity as to the time, place and nature

of the alleged fraudulent activities.  Graziose v. American Home Prods. Corp., 202 F.R.D. 638, 642

(D. Nev. 2001).  The specificity requirement of a fraud claim is a necessary requirement to preclude

the filing of baseless claims like this one and avoid general, unsubstantiated charges of fraud that can

do damage to a defendant's reputation, but not afford it the opportunity to defend against the

allegations.  Id.  Allegations of fraud, without specificity of the particulars alleged, are merely the

allegations of opinions, not actions.  Id.

      Here, although the Opposition claims that Plaintiffs identified "the time, place and content

of the alleged  misrepresentation," Opp. at 25:14-15, this conclusory statement is unsupported by

reference to their FAC. As noted above, fraud claims require specificity for a reason: to prevent

baseless claims and unsubstantiated allegations. Since Plaintiffs have failed to traverse the MTD on

Plaintiffs' twelfth claim, or satisfy the legal and pleading requirements, it should be dismissed.

      N.    The public records act claim is not viable and should be dismissed.

      Not until the Opposition was filed did Plaintiffs identify the alleged "records" they claim to

have requested.  Compare FAC at ¶311 and MTD at 27:9-10, with Opp. at 25:25 ("plaintiffs were

denied public records when they were not afforded the right to view the ballots").  According to

Plaintiffs, on May 6 and 9, 2011, Mary Frudden requested to review the ballots, and as of the date

she filed the FAC, she had not been given equal access to the ballots. Opp. at 25:25, citing FAC at

¶¶68, 77. Assuming Mary Frudden's requests in early May 2011 had indeed been made pursuant

to NRS Ch. 239, then NRS 239.0107 requires a five-business-day turnaround by the "governmental entity" receiving the request for "public records."  Therefore, if the entity that received Mary Frudden's request was an entity covered by NRS Ch. 239, Mary Frudden knew no later than Tuesday, May 17, 2011, that a response was due.  Thus, in addition to the grounds for dismissal of this claim in the MTD, it has become evident with the passage of time that Plaintiffs have waived the ability to file a mandamus proceeding in Nevada state District Court to overturn Roy Gomm's adoption of the school uniform policy. See Adair v. City of North Las Vegas, 85 Nev. 66, 68-69, 450 P.2d 144, 145-146 (1969) (mandamus proceeding filed by citizens and taxpayers many months after city council hearing could not be used to invalidate the hearing or action taken by city; a known remedy is waived by not being timely asserted).

Plaintiffs' other argument, that an implied right of action should be implied because of the immunity provisions in NRS 239.012, even though there is no express private right of action, Opp. at 25:26-28, 26:1-2, has no legal support.  Defendants' MTD at pp. 18-20 briefed in detail the necessary analysis for implied private rights of action, so Plaintiffs cannot merely and casually state that an implied private right of action should exist, absent any support therefor. An argument analogous to Plaintiffs' was made, and rejected, in Builders Ass'n of No. Nev. v. City of Reno, 105 Nev. 368, 776 P.2d 1234, 1235 (1989), cited in the MTD at 18:25-26. Dismissal is a proper disposition of this claim.

O.    A request for attorney's fees is not a claim for relief.

Although Defendants showed without question that an attorney's fee award pursuant to 42 U.S.C. §1988(b) is not a claim for relief, MTD at 28:1-9, Plaintiffs argue that this claim should "not be dismissed until fees are no longer available," Opp. at 26:7, whatever that means. Since Plaintiffs

have not provided any authority for their position, the fourteenth "claim" is appropriately dismissed.

P.      Controlling authority in this judicial district have found that injunctive and declaratory relief are remedies not claims.

The Opposition labors to distinguish authority that is binding in this judicial district which have held that injunctive relief and declaratory relief are remedies, not claims for relief. Opp. at p. 26. Aside from the fact that the quotation cited by Plaintiffs' Opp. at 26:24-28 and their other arguments do not support their arguments, the law is what it is, and the fifteenth and sixteenth claims should be dismissed.

Q.      The individual defendants are entitled to qualified immunity as specified in the MTD.

Plaintiffs' dissertation on qualified immunity is essentially meaningless, inasmuch as it consists of two pages of case citations without any connection to this action. Opp. at pp. 27-28. Tucked within the myriad of cases is a section about state law immunity, Opp. at 27:23-28, 28:1-9, which has no application to qualified immunity.  Then Plaintiffs return to what they seem to think is the safety of *Tinker*, which as shown above, *e.g.*, pp. 4-5, *supra* does not have any sway in elementary school cases like this, and the political ramblings from their 1943 Supreme Court case, which, contrary to what they may think, is not helpful. Opp. at 28:27-28, 29:1-6. Plaintiffs have failed to traverse Defendants' qualified immunity arguments in the MTD at 28:23-26, p. 29, and 30:1-5, so those Defendants are entitled to that immunity as requested therein.

**CONCLUSION**

Based on the foregoing Reply and Defendants' Motion, dismissal of Plaintiffs' action in its entirety is appropriate.  Accordingly, pursuant to Fed.R.Civ.P. 12(b)(6), Defendants' Motion to Dismiss should be granted.

MAUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

DATED:  November 30, 2011.

MAUPIN, COX & LeGOY

By: _____
    Michael E. Malloy, Esq.
    Debra O. Waggoner, Esq.
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of MAUPIN, COX & LeGOY, Attorneys at Law, and

in such capacity and on the date indicated below, I mailed a copy of the foregoing document to

Plaintiffs in an envelope with first class postage thereon fully prepaid, addressed as follows:

Mary Frudden
Jon E. Frudden
1902 Carter Dr.
Reno, NV 89509

Dated this 30th day of November, 2011.

_____
Employee

MAUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

20