FILED ✓    RECEIVED ____
ENTERED ____    SERVED ON ____
COUNSEL/PARTIES OF RECORD

DEC 0 7 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

1    Mary Frudden
     Nevada State Bar No. 3973
2    Jon E. Frudden
     1902 Carter Dr.
3    Reno, NV 89509
     775-324-7078
4

5    *Pro Se* On Behalf of Themselves and their Minor Children

6

7                    UNITED STATES DISTRICT COURT
8                         DISTRICT OF NEVADA
9

10   MARY FRUDDEN, et al.           Case No. 3:11-cv-00474-RCJ-VPC
11             Plaintiffs,
12   v.                             **PLAINTIFFS' MOTION TO TAKE
13                                  JUDICIAL NOTICE**
14   KAYANN PILLING, et al.
15   _____/

16        Plaintiffs, MARY FRUDDEN and JON E. FRUDDEN, individually and as parents and

17   guardians of their minor children JOHN and JANE DOE, hereby file their Motion to Take Judicial

18   Notice pursuant to Fed.R.Evid. 201.

19        This Motion is made and based upon the following Memorandum of Points and

20   Authorities, the Exhibits attached hereto and any other matter the Court deems necessary or

21   pertinent.

22        DATED: December 7, 2011.

23                                  By: _____
24                                  MARY FRUDDEN, ESQ.
                                    Nevada State Bar No. 3973
25                                  and JON E. FRUDDEN
                                    *Pro Se*
26                                  1902 Carter Dr.
                                    Reno, NV 89501
27                                  Telephone: 775-324-7078
                                    maryfrudden@sbcglobal.net
28
                                    On Behalf of Themselves and their Minor Children

                                    1

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   STANDARD**

Judicial notice may be taken of adjudicative facts in accordance with Fed.R.Evid. 201. The court shall take judicial notice of adjudicative facts if requested by a party and supplied with the necessary information. Fed.R.Evid. 201(d). Judicial notice may be taken at any stage of the proceeding, including during appeal. Fed.R.Evid. 201(f).

"'Adjudicative facts,' ... are the ultimate facts in the case, plus those evidential facts that are sufficiently central to the controversy that they should be left to the jury unless clearly indisputable." 21 C. Wright & K. Graham, Federal Practice and Procedure Sec. 5103, at 478 (1977).

Adjudicative facts which are not subject to reasonable dispute because they are generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" may be judicially noticed. Fed.R.Evid. 201.

In order to take judicial notice under Rule 201, the court must find that the fact is either "generally known" or ascertainable from a source whose accuracy cannot reasonably be questioned; in either case, the court must also find that the fact is not reasonabl[y] subject to dispute." 21 C. Wright and K. Graham, Federal Practice and Procedure: Evidence Sec. 5109 at 519-20 (1977).

Judicial notice may be taken of the dictionary definition of words. *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F. 2d 801, 803 (9th Cir. 1989). A party's pleadings are subject to judicial notice. *Ins. Co. of N. America v. Hilton Hotels USA*, 908 F. Supp. 809, 813, n. 1 (D. Nev., 1995). Matters of public record can be judicially noticed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986). In addition, a court may take judicial notice of information from the Internet as long as the requirements of the judicial notice rule are satisfied. *See Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1219 n.2 (10th Cir. 2007). This includes taking judicial notice of information from an official government website. *See Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600,

1    607 (7th Cir.2002); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir.1994).

2    Furthermore, "'[d]ocuments whose contents are alleged in a complaint and whose

3    authenticity no party questions, but which are not physically attached to the pleading, may be

4    considered in ruling on a Rule 12(b)(6) motion to dismiss' without converting the motion to

5    dismiss into a motion for summary judgment." *Luangisa v. Interface Operation LLC*, 2:11-cv-

6    00951-RCJ-CWH, Order (D. Nev., 2011)(quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

7    1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th

8    Cir. 2002)).

9    **II.    REQUESTED JUDICIAL NOTICE**

10    Plaintiffs request the Court to take judicial notice of the following:

11    **A.    AN ACT WHICH IS BEYOND THE POWER AUTHORIZED BY LAW IS
        AN *ULTRA VIRES* ACT**

12

13    Plaintiffs' First Amended Complaint (FAC) sets out the First Claim for Relief (Without

14    Power to Enact) at paragraphs 133-145. Defendants moved to dismiss the Claim asserting it was

15    not a legally cognizable claim. In their Opposition to Defendants' Motion, Plaintiffs stated: "A

16    claim for relief based upon *ultra vires* acts by government officials is widely recognized by both

17    federal and state courts." Opposition, 4:4-5. Defendants' Reply thereto contends that "[s]ince it

18    is evident that the "without power to enact" claim is untenable, Plaintiffs have switched to '*ultra*

19    *vires* act by government officials.'" Reply, 2:26-3:2.

20    The term *ultra vires* is defined by various sources as follows: "Beyond the scope or in

21    excess of legal power or authority." Merriam Webster's Collegiate Dictionary, 10th ed., p. 1281.

22    "Beyond, outside of, in excess of powers; that which is beyond the power authorized by law for

23    an entity. . . ." Barron's Law Dictionary, 3rd ed., p. 506. And,

24    Acts beyond the scope of the powers of a corporation, as defined
        by its charter or laws of state or incorporation. *State ex rel. v.*

25    *Holston Trust Co.*, 168 Tenn. 546, 79 S.W.2d 1012, 1016. The
        term has a broad application and includes not only acts prohibited

26    by the charter, but acts which are in excess of powers granted and
        not prohibited, and generally applied either when a corporation has

27    no power whatever to do an act, or when the corporation has the
        power but exercises it irregularly. *People ex rel. Barrett v. Bank of*

28    *Peoria*, 295 Ill.App. 543, 15 N.E.2d 333, 335. Act is ultra vires

3

1  when corporation is without authority to perform it under any
   circumstances or for any purpose. By doctrine of ultra vires a
2  contract made by a corporation beyond the scope of its corporate
   powers is unlawful. *Community Federal Sav. & Loan Ass'n of*
3  *Independence, Mo. v. Fields, CC.A. Mo.*, 128 F.2d 705, 708. Ultra
   vires act of municipality is one which is beyond powers conferred
4  upon it by law. *Charles v. Town of Jeanerette, Inc., La.App.*, 234
   So.2d 794, 798.

5

6  Black Law Dictionary, 5th ed., p. 1365. Based upon the foregoing, Plaintiffs request the Court to

7  take judicial notice of the adjudicative fact that an act which is beyond the power authorized by

8  law is an *ultra vires* act.

9       **B.    POLICIES ADOPTED PURSUANT TO NRS 392.457 MUST COMPLY
              WITH THE PARENTAL INVOLVEMENT POLICY REQUIRED BY THE**
10            **FEDERAL NO CHILD LEFT BEHIND ACT OF 2001, AS SET FORTH IN
              20 U.S.C. § 6318**

11

12       Plaintiffs' FAC sets out the Third Claim for Relief (42 U.S.C. §1983–Deprivation of

13  Familial Rights and Privileges) in paragraphs 176-188. In Opposition to Defendants' Motion to

14  Dismiss, Plaintiffs cite to NRS 392.457 and 392.4575 which expressly adopt the parental

15  involvement policy of the No Child Left Behind Act of 2001, set forth at 20 U.S.C. §6318.

16  Defendants' Reply to Plaintiffs' Opposition contends that Plaintiffs have gone "well beyond the

17  bounds of Plaintiffs' FAC at ¶¶ 176-188" and that the Opposition "prattles on and on about the

18  'No Child Left Behind Act of 2001,' a statute not mentioned in the FAC."

19       Plaintiffs request the Court to take judicial notice of Plaintiffs' First Amended Complaint,

20  ¶ 180 which makes reference to NRS 392.457. Further, Plaintiffs request the Court take judicial

21  notice that NRS 392.457 expressly states the policies adopted pursuant to NRS 392.457 must

22  "[c]omply with the parental involvement policy required by the federal No Child Left Behind Act

23  of 2001, as set forth in 20 U.S.C. § 6318."

24       **C.    PUBLIC RECORDS AND DOCUMENTS WHOSE CONTENTS ARE
              ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

25

26            **1.    The Written Uniform Policy.**

27       The Written Uniform Policy quoted and referred to in Plaintiffs' FAC, is posted on the

28  Roy Gomm website at www.washoe.k12.nv.us/gomm/Uniform %20Policy%20-%20FINAL.pdf

4

1  and on the PFA website at www.roygommfundraising.or/Uniform-Policy.pdf.  Plaintiffs request

2  the Court to take judicial notice of the Written Uniform Policy to establish the following

3  adjudicative facts:

4          a.    The main purpose of the Roy Gomm School Uniform Policy is to

             establish a culture of "one team, one community" at Roy Gomm

5               Elementary School;

6          b.    The Written Uniform Policy provides an "exemption" to the

             Uniform Policy "[w]hen a student wears a uniform of a nationally

7               recognized youth organization such as Boy Scouts or Girl Scouts

             on regular meeting days;" and

8

9          c.    The Written Uniform Policy provides for a sequential and

             progressive disciplinary plan against a student who is insubordinate.

10      **2.**    **The Minutes of the Washoe County School District Board of Trustees'**

          **Meetings.**

11

12      Plaintiffs request the Court to take judicial notice of the minutes of the Washoe County

13  School District Board of Trustees' Meetings which can be found at www.washoe.k12.nv.us/

14  trustees/meetings-agendas-minutes-archive.  Plaintiffs request the Court to take judicial notice of

15  said minutes to establish the following adjudicative facts:

16          a.    The WCSD Board of Trustees did not give 15 days' notice of its

             intention to adopt, repeal or amend a policy or regulation of the

17               board concerning pupil discipline before Roy Gomm implemented

             the Written Uniform Policy;

18

19          b.    All persons interested in the Written Uniform Policy were not

             afforded a reasonable opportunity to submit data, views and

             arguments, orally or in writing to the Board of Trustees;

20

21          c.    The board of trustees did not consider all written and oral

             submissions respecting the proposal or change before taking final

             action on the Written Uniform Policy; and

22

23          d.    The board of trustees has not established a policy that requires

             pupils to wear school uniforms.

24      **3.**    **The Washoe County School District Parent Student Handbook.**

25      Plaintiffs request the Court to take judicial notice of the Washoe County School District

26  Parent Student Handbook for the 2011-2012 school year, PATH-M006, is referred to in

27  Plaintiffs' FAC and can be found at www.washoe.k12.nv.us/docs/public-policy-accountability-

28  assessment/Registration/Student_Handbook_Website.pdf  Plaintiffs request the Court to take

1    judicial notice of the Handbook to establish the following adjudicative facts:

2          a.    The WCSD expressly provides "[t]he primary responsibility for dress and grooming rests solely with our students and their parents
3               and/or legal guardians;"

4          b.    The WCSD reserves the right to establish a comprehensive dress code with limitations for students which addresses what clothing
5               they may wear and how they may wear that clothing;

6          c.    The dress code set forth therein applies to middle and high school students and is not intended to silence expressive conduct, but
7               instead, constitute an attempt to maintain a productive, safe, learning environment; and

8
         d.    The dress or grooming of students must not present potential health
9               or safety problems or cause distractions.

10        **4.    The Roy Gomm Elementary School Uniform Shirt Contains the Messages Roy Gomm Students are "Tomorrow's Leaders."**

11

12       The blue Roy Gomm Elementary School Uniform Shirt is referred to in Plaintiffs' FAC ¶

13    116 and is accurately depicted in the photograph attached hereto as Exhibit A. Plaintiffs request

14    the Court to take judicial notice of the uniform shirt to establish the adjudicative fact the shirt

15    expressly states the messages "Roy Gomm Elementary School" and "Tomorrow's Leaders."

16        **5.    The Banners Placed on the Fences at Roy Gomm Elementary School Contain the Message "One Team One Community."**

17

18       The banners attached to the fences at Roy Gomm Elementary School are referred to in

19    Plaintiffs' FAC ¶ 101 and are accurately depicted in the photographs attached hereto as Exhibit B.

20    Plaintiffs request the Court to take judicial notice banners to establish the adjudicative facts:

21          a.    The banners expressly state the message of "One Team One Community," which is also the express main purpose of the Roy
22               Gomm School Uniform Policy to establish a culture of "one team, one community" at Roy Gomm Elementary School; and

23
         b.    The banners contain the same stylized gopher logo and messages
24               "Roy Gomm Elementary School" and "Tomorrow's Leaders" that are contained on the Roy Gomm uniform shirt.

25

26        **6.    Emails from Defendant Pilling to Plaintiff Mary Frudden.**

27       The May 10, 2011 emails from Defendant Pilling to Mary Frudden which are referred to in

28    Plaintiffs' FAC ¶¶ 73-76 are attached hereto as Exhibit C. Plaintiffs request the Court to take

1   judicial notice of the emails as evidence the Uniform Committee was "preparing" the Written

2   Uniform Policy on May 10, 2011; Exhibit C, May 10, 2011 3:41:45 email from Defendant Pilling

3   to Plaintiff Mary Frudden("The uniform committee is now preparing our written report/policy,

4   and that will go home to families before the end of the school year and will be included in our

5   handbook for next school year.") and to establish the adjudicative fact the Uniform Committee

6   "took action" at least as late as May 10, 2011 and thus Plaintiffs' Tenth Claim for Relief is not

7   time-barred.

8              **7.      Mary Frudden's June 6, 2011 Letter to Washoe County School
                          District Board of Trustees and Defendant Rauh's June 28, 2011 Letter**
9              **in Response thereto and the Envelope in Which Rauh's Letter was
                          Mailed.**
10        A true and accurate copy of Mary Frudden's June 6, 2011 letter to the WCSD's Board of

11   Trustees and the June 28, 2011 Letter from Defendant Rauh to Plaintiff Mary Frudden in

12   response thereto and the envelope containing the post-mark date of July 5, 2011 in which Rauh's

13   letter was mailed are referred to in Plaintiffs' FAC at ¶¶ 95-100 and attached hereto as Exhibits D

14   and E.  Plaintiffs request the Court to take judicial notice of the letters and envelope to establish

15   the following adjudicative facts:

16              a.   Washoe County School District Board of Trustees received Mary
                     Frudden's letter dated June 6, 2011;
17
18              b.   Washoe County School District Board of Trustees considered the
                     matters voiced in Plaintiff Mary Frudden's June 6, 2011 letter;
19              c.   Roy Gomm Elementary school was permitted to move forward
                     with the implementation of uniforms for the 2011-2012 school year;
20
21              d.   As of June 28, 2011, Lynn Rauh was the Area Superintendent for
                     Zone 3 for the Office of School Performance for the Washoe
                     County School District;
22
23              e.   Defendant Pilling was provided a copy of Defendant Rauh's June
                     28, 2011 letter at that time; and
24              f.   Defendant Rauh's letter dated June 28, 2011 was not mailed until
                     July 5, 2011.
25

26   **D.   AMERICAN YOUTH SOCCER ORGANIZATION (AYSO) IS A
              NATIONALLY RECOGNIZED YOUTH ORGANIZATION WHICH HAS
27            REGULAR MEETING DAYS MONDAY THROUGH SATURDAY**

28        Plaintiffs request the Court to take judicial notice that, pursuant to the Ted Stevens

1   Olympic and Amateur Sports Act, 36 U.S.C. § 220512 *et seq.*, the United States Olympic

2   Committee has recognized US Soccer, as the national governing body for soccer in the United

3   States. www.ussoccer.com/About/About-Home.aspx. American Youth Soccer Organization

4   (AYSO) is an affiliate member of US Soccer and has approximately 650,000 players nationally

5   that are registered with US Soccer. www.ussoccer.com/About/About-Home/Organizational-

6   Structure/Member-Organizations.aspxwww; www.soccer.org/ AboutAYSO.aspx. Plaintiffs

7   request the Court to take judicial notice of these Internet websites to establish the adjudicative

8   fact that the AYSO is a nationally recognized youth organization which has regular meeting days

9   Monday through Saturday.

10      **E.      ROY GOMM ELEMENTARY SCHOOL HAS DESIGNATED A TIME
               AND PLACE FOR ONE OR MORE OUTSIDE YOUTH OR COMMUNITY
11             GROUPS TO MEET ON SCHOOL PREMISES AND FACILITIES FOR
               REASONS OTHER THAN TO PROVIDE THE SCHOOL'S
12             EDUCATIONAL PROGRAM**

13      Plaintiffs request the Court to take judicial notice of the following documents which can

14   be found at the referenced websites on the Internet as evidence that Roy Gomm designated the

15   following times and places, among others, for the following youth groups, among others, to meet

16   on school premises and/or in school facilities for reasons other than to provide the school's

17   educational program and to establish the adjudicative fact that Roy Gomm Elementary School is a

18   designated public forum:

19          1.      Bricks 4 Kidz–a session beginning December 1, 2011 and ending
                    December 22, 2011, on Thursdays from 3:30-4:30 p.m. in the Roy Gomm
20                  Library; Exhibit F attached hereto and found at www.bricks4kidz.com
                    [Reno/Sparks Area Classes tab and then follow prompt]
21
            2.      Chess Kidz–a session beginning November 8, 2011 and ending January 10,
22                  2012, on Tuesdays from 3:35-4:35 p.m. in the Roy Gomm Library; Exhibit
                    G attached hereto and found at www.chesskidz.org [Sign Up tab then
23                  Gomm tab]

24          3.      Kidscape Productions–a session beginning October 12, 2011 and ending
                    December 14, 2011, on Wednesdays from 2:50-3:50 p.m. in Roy Gomm
25                  classroom #36; Exhibit H attached hereto and found at
                    www.kidscapeproductions.com [classes/coaching tab, then Wednesday tab]
26
            4.      General Meetings of the PFA on September 13, 2011, October 18, 2011,
27                  November 15, 2011, December 13, 2011, January 17, 2012, February 21,
                    2012, March 13, 2012, April 24, 2012, and May 15, 2012 at 7:00 p.m. in
28                  the Roy Gomm Library; found at www.roygommfundraising.org/

8

1      calendar.php;

2      5.      Junior Girl Scout Troop 277–stocking stuffer drive; items to be dropped
               off anytime in the Roy Gomm office through December 15, 2011; Exhibit I
3              attached hereto.

4

5      Respectfully submitted this 7th day of December, 2011.

6

7                              By:
                               MARY FRUDDEN, ESQ.
8                              Nevada State Bar No. 3973
                               and JON E. FRUDDEN
9                              *Pro Se*
                               1902 Carter Dr.
10                             Reno, NV 89501
                               Telephone: 775-324-7078
11                             maryfrudden@sbcglobal.net

12                             On Behalf of Themselves and their Minor Children

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1

## INDEX OF EXHIBITS

2

| Exhibit No. | Description |
|---|---|
| A | Photograph depicting blue Roy Gomm uniform shirts |
| B | Photographs depicting banners on fences at Roy Gomm Elementary School |
| C | Emails from Defendant Pilling to Plaintiff Mary Frudden |
| D | Letter to WCSD BOT from Plaintiff Mary Frudden dated June 6, 2011 |
| E | Letter to Plaintiff Mary Frudden from Defendant Rauh dated June 28, 2011 and envelope in which it was received |
| F | Bricks 4 Kidz flyer |
| G | Chess Kidz flyer |
| H | Kidscape Productions flyer |
| I | Junior Girl Scout Troop 277 flyer |

# EXHIBIT A



**EXHIBIT B**





EXHIBIT C

**From:** KayAnn Pilling (kpilling@washoe.k12.nv.us)
**To:** maryfrudden@sbcglobal.net;
**Date:** Tue, May 10, 2011 3:41:45 PM
**Cc:** CReich@washoeschools.net; LRauh@washoeschools.net;
**Subject:** Re: Uniform Ballots

Mary-

No, the connect-eds aren't on line. It is a communication system that sends phone calls and e-mails. What I sent home with Kai is a print-out that I get after the message goes out. He should have that with him this afternoon. Again, if you want it to come to you in print the only way I know is to give your e-mail to the office to be entered into our student information system, and then it will be sent to you automatically by the system.

I've contacted the school district's attorney on the question of having you review the ballots. I have a concern about the confidentiality of the families who voted. He asked me to meet with you to inquire why you would like to review the ballots. So, since you aren't ready to meet yet, I will just ask you why you would like to review them. When you respond I will then convey this information to him and get back to you with a response. Again, in the meantime, we will have a summary report which will include the exact number of votes and the comments will be transcribed from the ballots just as they are written - just without family names. I will be happy to share this with you as soon as it is prepared. I expect it at the end of the week.

I know that Dina already prepared and sent you a list of materials that you requested last week regarding this issue. I'm not sure specifically what else you are looking for at this point.

In terms of research, we did use a summary paper prepared by Joe Nanini, who is the dean of students at Swope. It was a paper he wrote for a class he was taking. I will attach that to this e-mail. We also asked for guidance from both Mr. Brown and Mr. Nanini about the process of becoming a uniform school.

I also spoke to a colleague at Virginia Palmer about her experience of becoming a uniform school. She is the principal there and shared her feelings with me about students wearing uniforms.

The uniform committee is now preparing our written report/policy, and that will go home to families before the end of the school year and will be included in our handbook for next school year.

When you are ready, I also look forward to being able to work with you on this matter. Thank you for taking the time to write to me. I appreciate hearing your perspective and the consideration you have put into this issue. I also hear a strong commitment to your children in your communications, and I can tell you are raising them to be independent and creative individuals. As a parent of three very unique children myself, I agree with the importance of instilling those values and commend you for your dedication to your children.

Thanks!
KayAnn

>>> Mary Frudden <maryfrudden@sbcglobal.net> 5/10/2011 2:36 PM >>>
KayAnn~~

Thanks for the information regarding the connect-ed. Is there a way to access
that on line? If you could send the print version home with either Kai or Sage
today, that would be great.

I would like to review the actual ballots and the comments made on those and not
just a summary of those comments. Should I contact the PFA President to set
this up?

Also, I asked Dina Hunsberger for all the information the uniform committee
reviewed (studies, statistics, articles, etc.) and a list of those who were
contacted regarding any further information (ie. anyone at Swope or the school
district, etc.) relied upon by the uniform committee prior to making
its presentation. She referred me to you. Where can I get this information?
Is there a written report by the uniform committee?

As you I'm sure you are aware from my comments at the April 26, 2011 meeting and
the email I sent to you, Dina and Dr. Morrison, I am opposed to mandatory
uniforms at Roy Gomm. However, since I am still in the information-gathering
stage, I am not yet ready to meet with you regarding the issues involved. I
appreciate the offer and look forward to being able to work with you on this
matter when I am better prepared to do so.

M.

---

From: KayAnn Pilling <kpilling@washoe.k12.nv.us>
To: Mary Frudden <maryfrudden@sbcglobal.net>
Cc: Lynn Rauh <LRauh@washoeschools.net>
Sent: Tue, May 10, 2011 8:01:21 AM
Subject: Re: Uniform Ballots

Mary-

I will forward you the print version of the connect-ed message. If you have a
phone answering machine that cuts off after a certain point, you might want to
give the office your e-mail address to be put into our student data system,
Infinite Campus, then you will get the messages in an e-mail as well. Debbie,
in the office, can help with that if you would like.


As far as the ballots, following our uniform committee meeting yesterday
afternoon they are now with the PFA President and Treasurer who are preparing a
written report of the results similar to last year's report that will be
presented at the PFA meeting next week. I think they plan to have it completed
by the end of this week. I will be happy to send it to you as soon as it is
completed.

I am also happy to set up a time to meet with you to discuss any concerns you have about these issues. Would you like to schedule a meeting?

Thanks!
KayAnn

>>> Mary Frudden <maryfrudden@sbcglobal.net> 5/9/2011 5:36 PM >>>
Hi Mrs. Pilling~~

I came by the office on Friday to review the uniform ballots but no one seemed to know where they were and you were out on a personal day. Someone thought maybe Dina Hunsberger might have them, so I contacted her today. She indicated that you had them. Please let me know when I can come and review the ballots at

the office sometime this week.

Also, the recorded telephonic message you left on Sunday night was cut short, so

we were unable to hear a portion of the announcement regarding the uniform ballots and the announcement following that. Is there a way to find out what these announcements are? The last time this occurred, I called the front office, but Debbie Koch was unaware of the content of the messages at that time.

Thanks,

Mary Frudden

**EXHIBIT D**

June 6, 2011

To:   Washoe County School District
Board of Trustees
425 East Ninth Street
Reno, NV 89512

Re:   Request to Declare Roy Gomm Elementary School's Mandatory School Uniform
Policy for the 2011-12 School Year Void or to Revoke

## I.   INTRODUCTION

Recently, the Principal of Roy Gomm Elementary School, KayAnn Pilling, announced that students at Roy Gomm will be wearing school uniforms for the 2011-2012 school year. The policy was allegedly instituted as a result of a parental vote. The written policy can be viewed at www.washoe.k12.nv.us/gomm. However, the mandatory uniform policy should be declared void *ab initio* or revoked for a multitude of reasons.

First, there is no authority for Roy Gomm to implement such a policy. In fact, mandatory school uniforms at Roy Gomm is an unlawful abridgment of Constitutional rights (both parents' and students')[1] and contravenes Federal and State laws. In implementing the mandatory school uniform policy at Roy Gomm, Principal Pilling, at least some of the PFA officers and directors, and the Uniform Committee committed misrepresentations and breached their special and fiduciary-like duties, and have either negligently or intentionally misinformed the parents of Roy Gomm students as to the impact a mandatory school uniform policy will have on the parents and students.

Second, the policy is in contravention of Washoe County School District's (WCSD) policies and regulations and Roy Gomm's Students' Bill of Rights and Mission Statement.

Third, as evidenced herein, is quite clear the parents and students at Roy Gomm have been not been kept adequately apprised of the issue. Parental involvement outside of the Roy Gomm Parent Faculty Association (PFA) was never sought out prior to April 26, 2011 and, indeed was flatly denied on April 26, 2011. Thus, the entire process was anything but open, informed and transparent.

Finally, the "voting" process itself was severely flawed for several independent reasons, and which, taken as a whole, would be found at the very least to be improper.

The alleged parental support for mandatory school uniforms is a reflection only on the matter as it was presented by the Uniform Committee, the PFA and Roy Gomm staff and faculty

---

[1] All references to "parents" includes reference to "legal guardians" as well.

-1-

on April 26, 2011, which was incomplete, inaccurate and admittedly biased. In all, if challenged in Court, the mandatory uniform policy at Roy Gomm for the 2011-2012 school year would not survive and those involved in its implementation could be subject to liability. For these reasons, as more fully set forth herein, I request the WCSD Board of Trustees to declare the 2011-2012 mandatory school uniform policy to be void *ab initio* or that it be revoked in its entirety.

## II.   CHRONOLOGY OF EVENTS REGARDING SCHOOL UNIFORMS AT ROY GOMM ELEMENTARY SCHOOL

The Roy Gomm Parent Faculty (hereafter "PFA), is a non-profit, fund-raising organization for Roy Gomm Elementary School. It operates under bylaws and articles of organization. The minutes of monthly general meetings are contained in a notebook kept at the Roy Gomm front office.

This is how the arbitrary and capricious process of implementing school uniforms at Roy Gomm began and has continued to date.

At the January 19, 2010 PFA general meeting, the PFA President, Mimi Butler, asked for a show of hands to see if there was any interest in a possible dress code at Roy Gomm. Those in attendance seemed interested.[2] Although the PFA sets out an agenda just prior to its meetings, "dress code" was not listed as an agenda item for the January PFA meeting.[3] In addition, no information via the most widely used forms of communication (ie. connect-ed announcements, Gopher Gazette,[4] flyers, bulletins) was distributed to the Roy Gomm parents or students which indicated the PFA was considering a dress code at Roy Gomm. Thus, if you were not a PFA member and not in attendance at the PFA January 19, 2010 meeting, you would have no knowledge or information which would make you aware of this issue being raised.

Furthermore, at that time as now, Roy Gomm did not and does not have a dress code.[5] Although the Washoe County School District (WCSD) Parent Student Handbook contains a "dress code," it applies to middle and high schools only.[6]

The next time the PFA discussed students' clothing was at the March 16, 2010 general

---

[2]January 19, 2010  Roy Gomm PFA General Meeting Minutes.

[3]January 19, 2010  Roy Gomm PFA General Meeting Agenda.

[4]The Gopher Gazette is the monthly newsletter published by the PFA.

[5]Roy Gomm Elementary School Parent Handbook and Calendar, 2010-2011.

[6]WCSD Parent Student Handbook, pp. 19-21.

meeting. This time, "school uniforms" did appear on the agenda.[7] However, as is customary with the PFA, the agenda is not posted anywhere prior to the actual meeting, but rather is set out on a table just prior to the meeting being held. At that time, Mrs. Butler discussed the idea of school uniforms, assertedly discussing the pros and cons.[8] She reported that Mr. Brown, the Principal at Swope middle school, was also working on a dress code.[9] Upon motion, the decision to move forward with "re-searching and gathering information on school uniforms," was made.[10] It is unclear what research or information gathering was done at this time. What is clear, however, is that *no research or information was distributed* to the Roy Gomm students or parents as a result of this action. In addition, no information was distributed to the Roy Gomm parents or students which indicated the PFA was considering school uniforms at Roy Gomm via connect-ed announcements, Gopher Gazette, flyers or bulletins. Again, if you were not a PFA member or were not in attendance at the March 16, 2010 PFA meeting, you would have no idea that school uniforms were even being considered.

Then, in April, the following announcement appeared in the Gopher Gazette on the second page:

> The PFA is recommending that Roy Gomm change from the current dress code policy to school uniforms. A parent ballot will be sent home regarding the switch to school uniforms for fall of 2010-11 school year. We would like to have a 100% return on the ballots. We will be asking two students from grades 3, 4, and 5 to assist us in selecting clothes for our new school dress/code uniforms. This topic will also be discussed at the next general PFA meeting at 7 p.m. on Tuesday, April 20th.[11]

For most parents and students who remained uninformed of the PFA's discussions regarding school uniforms, the April 2010 Gopher Gazette announcement came as quite a surprise. I know it did for me.

Even if the intent was to keep the parents and students "informed" of the issues regarding uniforms, the actual course of events evidences any thing but that. Notably, the April issue of the

---

[7]PFA General Meeting March 16, 2010 Agenda.

[8]*Id.*

[9]*Id.*

[10]March 16, 2010 PFA General Meeting Minutes.

[11]April 2010 Gopher Gazette Issue 11.

Gopher Gazette twice advertised the next general PFA meeting as April 20, 2010.[12] But, the meeting was actually held on *Tuesday, April 13, 2010*.[13] There was no announcement correcting the date. Thus, anyone who relied upon the advertised date so that they could participate in the discussions regarding uniforms, were deprived of the opportunity to do so.

A review of the April minutes reveals even more discrepancies, confusion and arbitrariness. At that meeting, the President assertedly attempted to "clarify" significant issues surrounding the voting process. The minutes state: "Clarification on the proposed uniform idea for Roy Gomm starting next school year was made by Mimi. 2/3 ballots returned will need to be in favor for the uniforms to pass. PFA Executive Board is in favor of uniforms, but all families at Gomm will need to cast their vote."[14]

At that point, the parent and student population had been informed that "100% return on the ballots" was desired. But, the PFA president was then explaining to the PFA that 2/3 of the ballots returned had to be in favor in order for the "vote" to pass and that all families at Gomm would need to cast their vote. Obviously, despite the "clarification" a discrepancy still remained. All families (ie.**100%**) were required to cast a vote, yet only 2/3 of those **returned** had to be in favor of uniforms.[15]

I have been unable to locate any authority of any kind which sets forth the procedures by which the parents of students enrolled at schools can vote on matters which concern the parents' and/or students' rights. Certainly no standardized process exists.

The April minutes also indicate the "pros and cons on school wide uniforms" was discussed, but do not elaborate on either.[16] Furthermore, the "pros and cons" were not made known to the parent and student population at that time.

Again, notably, even if the intent was keep the parents and students informed, this intent was not carried out in any meaningful manner. Despite the "clarification," if it can even be called that, no "clarification" was never made to the Roy Gomm students or parents. In fact, there was *never any information* distributed to the parents and students explaining how the voting process would be conducted or why uniforms were being "recommended."

---

[12]*Id.*, pp. 1-2.

[13]April 13, 2010 PFA General Meeting Minutes.

[14]*Id.*

[15]*Id.*

[16]*Id.*

-4-

The ballots were sent out shortly thereafter via the older/oldest child of each family at Roy Gomm. Somewhere along the line it was determined each family, regardless of the number of children enrolled at Roy Gomm, was entitled to only one vote. The "one vote per family" stipulation was never discussed at a PFA meeting (or, if it was, it was not recorded in the minutes).[17] And, in keeping with the course of conduct thus far exhibited, no information regarding the "one vote per family" was distributed to the parent or student population.

The ballots were not held out as confidential, were not collected in a confidential manner and were not maintained in a confidential manner. In fact, no safeguards were employed to guarantee that parents even *received* the ballots, let alone that parents *actually cast* the vote. I was recently informed by one of those 6th grader parents that her child informed her last year that some of her fellow classmates did not, in fact, give the ballots to their parents, but instead they marked the ballots "yes" themselves as a "joke" on the remaining Roy Gomm students.

The May 2010 Gopher Gazette published the "results" of the votes, reporting that "62% voted in favor of the uniform dress code, just shy of the 66% majority necessary."[18] Notably, the breakdown shows that only **68% of the ballots sent out were returned.** Of that 68%, 141 voted "yes" and 85 voted "no."[19] Of the 141, 6 votes were cast by families of 6th graders with no younger brothers or sisters.[20] Thus, for those with a stake in Roy Gomm for the 2011-2012 2010-2011 school year, only 61% of the 68% that voted, voted "yes." In reality, this amounts to 40.6% of the 332 ballots distributed (remember, one vote per family, regardless of the number of children) voting "yes" and 25.6 % voting "no" with 33% unaccounted.

Of considerable note at this point is the PFA President's stated requirement that "**all families [100%] at Roy Gomm will need to cast their votes**" is completely ignored and disregarded.[21]

The PFA President reports to the PFA at its next meeting on May 18, 2010 as follows: "Student uniform vote did not pass – 67% of the returned ballots need to be in favor. Unfortunately, 62% of the returned ballots were in favor. We will re-visit this issue again next year."[22]

---

[17]PFA minutes.

[18]May 2010 Gopher Gazette Issue 12.

[19]*Id.*

[20]*Id.*

[21]April 2010 Gopher Gazette Issue 11; April 13, 2010 PFA General Meeting Minutes.

[22]May 18, 2010 PFA General Meeting Minutes.

-5-

Despite the fact the PFA determined at the May 2010 meeting to "re-visit" the issue of uniforms the following year, no notice or announcement of this was ever made to the Roy Gomm parents or students.

On Friday February 11, 2011, the following school year, Mrs. Pilling appointed a Uniform Committee" to "gather information and educate parents. . . about the research supporting uniforms."[23]

Considering the recent assertions the parents and students were "involve[d] and inform[ed] along the way,"[24] I think three facts surrounding the February PFA meeting are more than just noteworthy. The first is that the meeting was held on a Friday, whereas, generally the PFA meetings are and have been held on a Tuesday. The second, and more significant, is that neither the issue of uniforms nor formation of a Uniform Committee was listed as an item on the February 2011 Agenda. The third, and most significant, is that the general parent and student populations were kept completely uninformed about the formation of a Uniform Committee-- there were no notices or announcements regarding the formation of the Uniform Committee; there were no notices or announcements soliciting participation in the Uniform Committee; and there were no notices, announcements, or agendas regarding the Uniform Committee's meetings. Considering the apparent push to implement a mandatory uniform policy at Roy Gomm, I cannot believe these were committed unintentionally.

Shortly after the formation of the Uniform Committee, **at the very next PFA general meeting**, the PFA President reported: "The uniform committee has been meeting and is ready to have a parent information night and fashion show. This evening is scheduled for April 26[th]. Thank you to Dina, Randi, Adam, Matthew, Leslie and Ms. Early for their assistance in this project."[25]

Knowing only that the issue of uniforms was "voted" upon the prior school year, and having absolutely no knowledge or information concerning the formation of the Uniform Committee or that uniforms were even being considered *again*, it came as a complete shock to me to read the announcement in the April 2011 Gopher Gazette which stated:

> The PFA is having an informational Parent Meeting on Tuesday,
> April 26[th] to discuss the possibility of implementing uniforms at Roy
> Gomm in Fall 2011. At this meeting, we will discuss the benefits of
> uniforms and address concerns parents may have about

---

[23]February 11, 2011 Roy Gomm PFA General Meeting Minutes.

[24]April 27, 2010 email to Mary Frudden from Dina Hunsberger, Chair of Uniform Committee and Vice President of PFA.

[25]March 15, 2011 Roy Gomm PFA General Meeting Minutes.

-6-

implementing uniforms. We will also have a fashion show of
children modeling uniform options currently being considered. The
Parent presentation will be held from 6:30-7:30 p.m. on the night
of **April 26th in the MPR.** Following the presentation, parents will
have an opportunity to vote on the implementation of uniforms.
Ballots may be cast after the presentation through Monday, May 2.
Ballots and the voting process will be distributed and described at
the meeting and in an informational flier sent home with children
that week. Please plan on attending this Parent Meeting![26]

Up until that point, this was the *only* information about school uniforms which had been
distributed to the general population of parents and students at Roy Gomm during the 2010-2011
school year!

Shortly thereafter, a notice entitled "SCHOOL UNIFORM INFORMATIONAL PARENT
MEETING" was sent home with the students. It announced the time, date and location of the
meeting at Roy Gomm. It described the nature of the meeting as follows:

The PFA is having an informational parent meeting on Tuesday,
April 26th to discuss the possibility of implementing uniforms at Roy
Gomm in Fall 2011. At this meeting, the PFA and school faculty
will discuss the benefits of uniforms and address the concerns
parents may have about implementing uniforms."[27]

The April 26, 2011 Informational Meeting, which included a "fashion show" and a brief
question and answer period, was a one-sided presentation designed to get parents to accept a
mandatory school uniform policy. There was no opportunity for any opponent to present any
countervailing arguments. Most importantly, the representations which were given, were
inaccurate, incomplete and misleading.

Despite the fact that Mrs. Pilling and the PFA acknowledged the issue was "hotly
debated," the April 26, 2011 PowerPoint presentation provided only information in favor of
implementing a mandatory school uniform policy. An audience member at the meeting asked why
there was no representative at the meeting prepared to provide information regarding the
opposing views. In response, Mrs. Pilling readily admitted the meeting was a "sales pitch" to get
parents to vote for the mandatory uniform policy. Another member of the audience moved to
postpone voting on the issue until those opposing the recommendation had an opportunity to
present their side, which motion was then seconded. Mrs. Pilling flatly stated she would not do
so. The audience was told the school would disseminate such information if it was provided to

---

[26]April 2011 Gopher Gazette Issue 8, p. 2.

[27]Notice of School Uniform Informational Parent Meeting.

the school by the following day, an early-release day, and the day remaining ballots (ie. those that were not picked up on April 26, 2011) were distributed to the eldest child of each family at Roy Gomm.

At the April 26, 2011 informational meeting I asked, as did others, what the consequences would be if a student or parent refused to abide by the mandatory uniform policy if it "passed." Mrs. Pilling asked if I would refuse her and when I clearly stated yes, she indicated that she and I and her supervisor would have to meet and discuss this.

At least one parent at the April 26, 2011 informational meeting expressed dissatisfaction that sale of mandatory uniform shirts by the PFA was being used as a fund-raising event and that the $3.00 profit on the sale of shirts would be used to establish a fund for those unable to afford shirts.

At approximately 1:30 on the morning of April 27, 2011, I requested the following information from Dina Hunsberger, the chairperson of the Uniform Committee:

- The complete proposed school uniform policy;
- The PowerPoint presentation that was given at the 4-26-11 meeting;
- Any documents the PFA has generated regarding school uniforms (ie. newsletters, etc.);
- Any policies, procedures, rules and/or regulations which are applicable to the implementation of mandatory school uniforms at Roy Gomm; and
- The reasons the PFA is recommending mandatory school uniforms and any empirical evidence used to support those reasons.[28]

Later that day, after staying up much of the night to research whether the school had any authority to mandate school uniforms, I sent an email at 1:45 p.m. to Dina Hunsberger, KayAnn Pilling and Dr. Heath Morrison.[29] I asserted therein the school had no authority and the action was unconstitutional and violated state and federal law. I requested the ballots be withdrawn or, in the alternative, that a copy of my letter, as well as other pertinent information, including but not limited to the written policy, be distributed with the ballots. Neither request was granted. As the school had clearly given the PFA the opportunity to present arguments in favor of school uniforms, the failure to give me the opportunity to present countervailing arguments was, by itself, a violation of First Amendment rights guaranteed by the U.S. Constitution.

At approximately 4:23 p.m. on April 27, I received an email from Mrs. Hunsberger which provided responses to some of my inquiries. It stated as follows:

---

[28] April 27, 2011 email from Mary Frudden to Dina Hunsberger.

[29] Email from Mary Frudden to Dina Hunsberger, KayAnn Pilling and Heath Morrison dated April 27, 2011.

[T]he Uniform Committee reviewed literature related to negative aspects and found little of concern for the PFA Board. . . . The bottom line is that research suggests that schools who adopt uniforms see improvement in the many areas noted in the PowerPoint last night. We did not find negative impacts in the literature following the adoption of a uniform policy. You are welcome to search the literature for negative aspects of uniforms if you would like to review additional information on this issue.

The majority of the uniform policy was provided last night. . . .The children in violation will be issued a warning and asked to change into a uniform provided by the school for that day. In cases where children choose not to wear a uniform, the parent would be asked to meet with the school principal. This information was provided at the meeting but has not been formalized in a written document (because the policy is only proposed at this juncture – and not yet approved).

[The PowerPoint presentation] will be going home to all Roy Gomm parents tonight via email.[30]

I see you have contacted the school district [regarding any policies, procedures, rules and/or regulations which are applicable to the implementation of mandatory school uniforms at Roy Gomm] and believe they are in a better position to reply to this than I am. Since several other schools in Washoe County have adopted uniform policies, I know that schools have the ability to adopt uniform policies, provided they involve and inform the parents along the way. Since we have been discussing this for the better part of two school years and it has been an agenda item at this year's PFA meetings, we have informed parents about this issue. At the general PFA meeting where the Uniform Committee was formed, we asked any interested individuals to attend Uniform Committee meetings. These minutes have been available in the office so interested parties had ample opportunity to participate in the Uniform Committee meeting process."

Incredibly, neither Mrs. Pilling nor Dr. Morrison responded to my email. Furthermore, in light of the facts as presented above, I find Mrs. Hunsberger's attempt to hold the parents out as "informed" farcical.

---

[30] I have been informed by at least two parents they did not receive any PowerPoint presentation by email.

On April 29, 2011, approximately a week before it would have normally been distributed, the PFA published its May 2011 Gopher Gazette. It announced:

> Dear Roy Gomm Families,
> We are pleased to report that two parents (who are not members of the PFA Executive Board or the Uniform Committee) contacted Roy Gomm offering generous donations toward uniform purchases. These donations will make it possible for the school to establish a fund for families who need financial assistance purchasing shirts. As a result, the PFA will be able to sell the shirts to you for cost. The total for shirts will be $7.00 (versus the $10.00 amount originally proposed). The sweatshirts will be sold for $9.00 each (versus $12.00 as originally proposed). For those of you concerned about cost we wanted to let you know this information as soon as possible since it may affect your decision on the vote. Thank you again for taking the time to vote on this issue and don't forget to turn in your ballot by **Monday, May 2nd**.
> The Roy Gomm Uniform Committee

I find this most revealing, not merely because it was published so much further in advance than was usual, but because it shows the PFA and Roy Gomm obviously had the means and the wherewithal to notify parents and students *at the last minute* of information *supporting* the implementation of school uniforms. However, no attempt whatsoever was made to disseminate the information *opposing* school uniforms which I expressly requested be distributed to the parents and students.

The ballots were due on May 2, 2011. As with the year before, the ballots were not held out as confidential, were not collected in a confidential manner and were not maintained in a confidential manner. And, once again, no safeguards were employed to guarantee that parents even *received* the ballots, let alone that parents *actually cast* the vote.

On May 6, 2011, I went to the Roy Gomm office and requested to review the ballots. No one there knew where the ballots were, but someone suggested maybe Mrs. Hunsberger had them.

On May 8, 2011, Mrs. Pilling announced via connect-ed:

> The uniform ballots have been tallied and over 66% of families at Roy Gomm are in favor of our students wearing uniforms next year. We are thankful to all of you who took the time to vote. Over 70% of our families returned their uniform ballots. So Roy Gomm

-10-

students will be wearing uniforms next school year.[31]

Once again, the information provided misrepresented the actual facts. Only 70% of the ballots were returned. Since 30% of the ballots were not returned, *66% of families at Roy Gomm* could not have been in favor of wearing uniforms. In addition, as with the prior year's vote, the PFA President's stated requirement that "**all families [100%] at Roy Gomm will need to cast their votes**" is completely ignored and disregarded.[32]

On Monday, May 9, I emailed Mrs. Hunsberger to determine when the ballots would be available in the Roy Gomm office for review.[33] Mrs. Hunsberger replied that she was "pretty sure" the ballots were in Principal Pilling's office and suggested I contact her. In addition, I informed Mrs. Hunsberger that I wanted to review all the information the Uniform Committee reviewed (studies, statistics, articles, etc.) and a list of those who were contacted regarding any further information prior to making its presentation.[34] She responded that she was not home then "but will have this to you by the end of the day."[35] Later that evening, at 5:50, Mrs. Hunsberger replied again, this time she stated: "The Uniform Committee met this afternoon. At this meeting I was advised to refer all communication about the Uniform Committee and the uniform vote to KayAnn Pilling (copied on this email). Please contact her for the information you have requested."[36]

Prior to receiving Mrs. Hunsberger's later reply, I contacted Mrs. Pilling who responded the following day as follows: "As far as the ballots, following our uniform committee meeting yesterday afternoon they are now with the PFA President and Treasurer who are preparing a written report of the results similar to last year's report that will be presented at the PFA meeting next week."[37] The email from Mrs. Pilling to me was also sent to Lynn Rauh, the area superintendent.[38] In response, I indicated I'd like to review the actual ballots and inquired

---

[31]May 8, 2011 connect-ed message summary.

[32]April 13, 2010 PFA General Meeting Minutes.

[33]May 9, 2011 email to Dina Hunsberger from Mary Frudden.

[34]May 9, 2011 email to Dina Hunsberger from Mary Frudden.

[35]May 9, 2011 email to Mary Frudden from Dina Hunsberger.

[36]May 9, 2011 email to Mary Frudden from Dina Hunsberger.

[37]May 9, 2011 email to KayAnn Pilling from Mary Frudden and May 10, 2011 email to Mary Frudden from KayAnn Pilling.

[38]*Id.*

whether I should contact the PFA President.[39]

Later that day, May 10, Mrs. Pilling told me she had contacted the school district's attorney to determine whether I would be permitted to review the ballots as she had a concern about the confidentiality of the families who voted.[40] Mrs. Pilling's email to me was also sent to Mrs. Rauh as well as Chris Reich, one of the attorneys for WCSD.[41] Thus, at this point in the process, the following WCSD employees were on notice that there are questions, at the very least, concerning the implementation of mandatory school uniforms at Roy Gomm: Dr. Morrison, Lynn Rauh, Chris Reich, KayAnn Pilling.

In the same email, Mrs. Pilling indicated that Dina Hunsberger had prepared and sent me a list of materials I had previously requested and that she was "not sure specifically what else [I was] looking for at this point."[42] She stated: "In terms of research, we did use a summary paper prepared by Joe Naninni, who is the dean of students at Swope [which was attached]. . . . We also asked for guidance from both Mr. Brown [Swope's principal] and Mr. Naninni about the process of becoming a uniform school."[43] In addition she said she "spoke to a colleague at Virginia Palmer about her experience of becoming a uniform school. She is the principal there and shared her feelings with me about students wearing uniforms."[44] Finally, Mrs. Pilling stated: "The uniform committee is now preparing our written report/policy, and that will go home to families before the end of the school year and will be included in our handbook for next school year."[45]

On May 11, 2011, I responded to Mrs. Pilling's May 10, 2011 email that I had not received any information from Mrs. Hunsberger and I was still looking for all the "literature" and "research" the Uniform Committee reviewed. Further, I responded that I wanted equal access to the information to which the PFA had access and to inform the WCSD's lawyer that the ballots were not obtained or collected in a confidential manner, were not publicized as confidential and were not kept in a confidential manner, including the fact the uniform committee and others had access to the ballots after they had been collected. I also asked Mrs. Pilling to ask the WCSD's attorney to provide the laws, rules, regulations, policies, etc. which allow for each individual school within the WCSD to implement mandatory school uniforms since I had not yet received a

---

[39]May 10, 2011 email to KayAnn Pilling from Mary Frudden.

[40]May 10, 2011 email to Mary Frudden from KayAnn Pilling.

[41]*Id.*

[42]*Id.* I had not received any such list.

[43]*Id.*

[44]*Id.*

[45]*Id.*

response from WCSD to this question which I posed on April 27, 2011.[46]

On May 16, 2011, Mrs. Pilling forwarded the 2011 uniform ballot report and tally.  She also referred to two sources listed on Mr. Naninni's paper.[47]  It is unclear when or if these sources were actually reviewed by anyone on the Uniform Committee.  Mrs. Pilling did not address whether I would be permitted to review the actual ballots and did not provide laws, rules, regulations, policies.[48]

On May 17, 2011, I requested the most current PFA Bylaws and the Articles of Organization from Dina Hunsberger (who is also the Vice-President of the PFA).[49]  In addition, I indicated that I had been at school on Friday May 13, 2011 to find the PFA agenda for the May 17, 2011 meeting and that I had searched the PFA website as well but was unable to locate it.  I asked whether school uniforms was a listed item on the agenda for that night.[50]  Somewhat surprisingly,  I never received a response from Mrs. Hunsberger.

At the May 17, 2011 PFA General Meeting, the PFA President, Mimi Butler, explained she came up with the idea for school uniforms after participating in a "brain-storming" session with Dr. Heath Morrison on how to make WCSD the best possible school district.  **I asked whether anyone with the PFA or on the Uniform Committee had considered the constitutionality of mandatory uniforms and was told no one had**.

On May 31, 2011, a uniform pre-order form was sent home indicating it was a "PRE-ORDER form only.  By completing this form, you are reserving uniform items for your child(ren)."  The reverse side of the pre-order from set out the description of the mandatory uniform and directed parents to the written uniform policy on the Roy Gomm website.[51]

At the urging of Andrea Hughs-Baird, Andrea, I and one other parent, Leilani Schweitzer, met with Lynn Rauh on June 2, 2011.  Mrs. Hughs-Baird has been extensively involved with the PFA for some time and is the current Treasurer.  Ms. Schweitzer is a good friend of mine, who, despite my repeated urgings not to do so, voted in favor of uniforms.  After reading the written policy, Ms. Schweitzer was extremely troubled and concerned.  Ms. Schweitzer informed Ms.

---

[46]May 11, 2011 email to KayAnn Pilling from Mary Frudden.

[47]May 16, 2011 email to Mary Frudden from KayAnn Pilling.

[48]*Id.*

[49]May 17, 2011 email to Dina Hunsberger from Mary Frudden.

[50]*Id.*

[51]Uniform Pre-Order Form.

Rauh, *inter alia*, in no uncertain terms she would not have voted for uniforms if she had been aware of the written policy at that time.[52]

After a lengthy conversation, Mrs. Rauh indicated she had the authority to prevent the mandatory school uniform policy from being acted upon and that the first step was to investigate the facts and gather information. She stated she was not prepared to decide (nor were we asking) to prevent the policy.

## III.   ROY GOMM HAS NO AUTHORITY TO IMPLEMENT MANDATORY SCHOOL UNIFORMS

### A.   NEVADA REVISED STATUTES

Nevada has only one statute which expressly addresses school uniforms, that is NRS 392.458 which states in full:

> 1.      The board of trustees of a school district may, in consultation with the schools within the district, parents and legal guardians of pupils who are enrolled in the district, and associations and organizations representing licensed educational personnel within the district, establish a policy that requires pupils to wear school uniforms.
> 2.      The policy must:
>          (a) Describe the uniforms;
>          (b) Designate which pupils must wear the uniforms; and
>          (c) Designate the hours or events during which the uniforms must be worn.
> 3.      If the board of trustees of a school district establishes a policy that requires pupils to wear school uniforms, the board shall facilitate the acquisition of school uniforms for pupils whose parents or legal guardians request financial assistance to purchase the uniforms.
> 4.      The board of trustees of a school district may establish a dress code enforceable during school hours for the teachers and other personnel employed by the board of trustees.

Washoe County School District (WCSD) has not established a mandatory uniform policy pursuant to NRS 392.458. Thus, despite the fact that many other schools within the district have implemented mandatory uniform policies, none of them have adopted uniforms under the auspices of NRS 392.458.

---

[52]On April 27, 2011, I expressly requested the written policy be attached to the ballots and sent home to the parents. This of course, did not happen.

## B.    WASHOE COUNTY SCHOOL DISTRICT'S POLICIES

The WCSD's policies expressly limit restrictions on students' dress to those which concern potential health or safety problems or cause distractions.  The WCSD Parent Student Handbook, pp. 19-21 (for both the current school year and  next school year), sets forth only a "dress code" policy.  It states in part:

> Dress Code - Middle School and High School
> The United States Supreme Court rendered a decision in 2000 that
> school administrators can establish policies prohibiting conduct
> which materially and substantially interferes with the educational
> process. This includes, but is not limited to, inappropriate clothing
> or attire. The Court noted that it is a highly appropriate function of
> public school education to prohibit offensive language or clothing in
> public discourse. The First Amendment does not prevent schools
> from establishing guidelines to prevent the undermining of their
> basic educational mission. **The primary responsibility for dress
> and grooming rests solely with our students and their parents
> and/or legal guardians**. [Emphasis added].  However, the District
> does reserve the right to establish a comprehensive dress code with
> limitations for students which addresses what clothing they may
> wear and how they may wear that clothing. School authorities have
> the professional responsibility and legal sanction to enforce student
> dress requirements, and within this authority, the right to request
> that students change their attire to conform to the Washoe County
> School District High School Dress Code. **The following
> requirements are not intended to silence expressive conduct,
> but instead, constitute an attempt to maintain a productive,
> safe, learning environment.** [Emphasis added].

> As specified in Washoe County School District procedures, 'the
> dress or grooming of all students must not present potential health
> or safety problems or cause distractions.'

The School District represents as follows:

> As specified in the WCSD administrative regulations, 'the dress or
> grooming of all students must not present potential health or safety
> problems or cause distractions.'

> **The requirements are in no way an attempt to silence free
> expression but to create a productive, uninterrupted, and safe
> learning environment. It is the District's hope that this code**

-15-

> **will help its students in preparing for the real world of work**
> **and to assist parents when they purchase school-year**
> **wardrobes.** [Emphasis added].

www.washoe.k12.nv.us/district/policies-and-regulations/student-dress-code.

The WCSD adopted BOT-P039 regarding Student Discipline, on February 18, 2009, which policy was revised on May 19, 2010. The Board Policy states, in part, as follows:

> **Freedom of Expression:**
> **a. The Washoe County School District is committed to**
> **encouraging, protecting and ensuring students' freedom of**
> **speech, press and expression, and rights under the U.S.**
> **Constitution.**
> **b. The District further recognizes the intrinsic value of**
> **educating students in the reasonable exercise of these**
> **fundamental rights in order to become responsible citizens of**
> **the State of Nevada and the United States of America.**
> [Emphasis added].
>
> Student Conduct:
> a. It is expected that all District students will conduct themselves in
> a proper and exemplary manner. This includes, within the limits of
> good taste, dress and grooming.
> B. General rules of conduct for the welfare and safety of all
> students, as well as personal cleanliness, neatness and appropriate
> standards of dress and appearance, shall be maintained. [Emphasis
> added].

In addition, WCSD's Student Dress Procedure OSP-P002 states in pertinent part:

**1.0 SCOPE:**

> 1.1    This procedure describes the process in which the
>        Office of School Performance implements a dress
>        code in the Washoe County School District.

**2.0 RESPONSIBILITY:**

> 2.1    Superintendent

**3.0 APPROVAL AUTHORITY:**

-16-

3.1    Deputy Superintendent

. . .

## 5.0 PROCEDURE:

5.1    Dress and grooming are individual and personal matters and the primary responsibility for dress and grooming rests with the student and the student's parent(s) or guardian(s).

5.    However, the school district reserves the right to insist that the dress and grooming of all students must not present potential health or safety problems or cause disruptions.

5.3    The school authorities have the professional responsibility and legal sanction to require student to change their dress and/or grooming to conform to these requirements.

5.4    With the approval of the principal, school organizations, [sic] or departments which sponsor off-campus activities may adopt special rules regarding dress and grooming to be followed when the group represents the school.

5.5    See BOT-P039 and School Police Gangs and Gang Activity for additional information.

. . .

Despite my repeated requests for the laws, policies, rules and/or regulations which authorize an individual school to implement a mandatory school uniform policy, I was never provided with any such authority. Instead, my requests were ignored and swept aside. After reviewing the foregoing laws, policies, rules and regulations I am quite certain there is no such authority.

Indeed, at the meeting on June 2, 2011 with Mrs. Rauh, she confirmed there is no written authority for individual schools within the school district to implement mandatory uniform policies. The authority, she said, comes from the "past practices" of schools "voting" on issues.

-17-

## C.    "PAST PRACTICES"

I do not have the luxury of spending the necessary time to compile all the data in order to fully and accurately assess the "past practices" approach to implementing mandatory uniforms at a school within the WCSD.  However, a cursory search on the internet shows that the "past practices" are anything but standardized and none of the past practices, as they concern or touch upon the implementation of school uniforms, alleviate my concerns in this case.

A recent post by a parent at Lemmon Valley states:

> My child has attended LVES for a few years now. The teachers I have encountered have all been caring and creative. With falling test scores and continued decline in parent involvement we have adopted uniforms. At a parent meeting to vote on uniforms it seemed no was the favored answer. Weeks later... we recieved [sic] word the vote had come back yes with no totals included. There could not have been more than 50 parents at said meeting to decide the fate of the school uniform policy. To date there has been no mention of how the uniform money was to be spent. Nor the total value of the uniforms. Likely in the thousands range with 500 plus students. No results can be given as far as bullying or improved test scores with new uniforms. I have talked with many parents about many differant [sic] issues at our school. **The one thing we all share is approach management of the school with caution, and expect no action to assist you with your problem**. [Emphasis added].

Submitted by a Parent on Feb 23, 2011

http://www.education.com/schoolfinder/us/nevada/reno/lemmon-valley-elementary-school/

In a paper addressing the uniform program at Traner Middle School Richard F. Daugherty, Associate Professor, Department of Educational Leadership at the University of Nevada, Reno and a former public school teacher and administrator, whose research and teaching emphasis has been education law, stated, *inter alia*, as follows:

> In an effort to further enhance academic and social goals, the school's parent/teacher organization discussed, researched, and voted to pilot a school uniform program commencing November 2000. School officials used a variety of research studies and a manual published by the U.S. Department of Education which noted that "A safe and disciplined learning environment is the first requirement of a good school" (1998). The manual stresses the importance of parental support and states that in recent years the

-18-

> strongest push for school uniforms has been initiated by parent
> groups--such as Traner's--seeking improved school safety.
>
> . . .
>
> The school district did not officially endorse or fund the pilot
> program and Traner officials were therefore faced with working out
> such details as locating a low-priced uniform that would be popular
> with students and finding a source of funding to purchase uniforms
> for students who could not afford them.

Notably, though Traner's pilot uniform policy was initiated by the school's parent/teacher organization, the policy was *voluntary*, not mandatory.

According to Mrs. Pilling, she relied upon information from the principal and dean of students at Swope middle school, including the document entitled "An Administrators [sic] Guide to Implementing School Uniforms" by Joe Naninni dated 6/29/2010. Mrs. Pilling provided the document to me on May 10, 2011 by email and indicated she had used it as "research." However, a comparison of the suggestions set forth therein and those methods employed by Roy Gomm, the PFA and the Uniform Committee shows little, if any, similarity between the methods used at Swope middle school and Roy Gomm.

Most notably, Roy Gomm did not: (I) take heed of the strong suggestion to constantly, frequently, efficiently and openly communicate with the parents and students; (ii) customize the plan to fit the needs of Roy Gomm; (iii) utilize the sample research studies as a "starting point from which to further investigate specific areas of interest;" (iv) provide the stake-holders (parents, staff, and students) with sound data-based reasons for implementing a school uniform policy; (v) utilize a parental survey (instead choosing to present it as a "vote"); or (vi) gather student input. Roy Gomm did, however, make repeated use of the "*rhetoric*" encouraged by Mr. Naninni.

Mrs. Pilling also indicated she spoke with her colleague at Virginia Palmer Elementary School which instituted mandatory uniforms for the 2009-2010 school year. I was unable to find any information on line regarding the process by which Virginia Palmer implemented mandatory uniforms other than "[s]chool uniforms were implemented in the 2009-2010 school year with greater than 80% parent support." www.washoesip.org/schools. Curiously, Mrs. Pilling relied upon Virginia Palmer's experience with mandatory uniforms even though Virginia Palmer and Roy Gomm do not demonstrate the same needs by any stretch of the imagination. For example, in 2009-2010, Virginia Palmer did not make adequate yearly progress and was in its 5th year designation of "in need of improvement." By contrast, since 1998 Roy Gomm has met the state requirements for adequate achievement every year and has been designated a high achieving school seven times and an exemplary school once.

-19-

In addition, there were 17 incidents of violence to other students, 1 incident of violence to school staff and 1 incident of violence involving possession of weapons. Roy Gomm had 3 incidents of violence to other students. Whereas 68% of the student population receives free or reduced lunch at Virginia Palmer, at Roy Gomm only 4.9% do. More than 55% of the student population is Hispanic compared to Gomm's 88.4% white population. The Hispanic parents requested English classes as communication was everyone's primary area of concern. Hispanic parents wanted classes in Spanish offered on how to work with their students at home. Virginia Palmer partners with Reno Sunrise Rotary which takes 40 students Back to School shopping, shops for 65 students on Angel Tree at Christmas, sends reading volunteers, works on our grounds a day each year and takes requests from classroom teachers for assistance upon approval. They have helped Palmer for nearly 20 years. Roy Gomm conducts food drives, partners with Anderson Elementary School to help families in need at various times of the year and provides gifts for Angel Tree at Christmas. Finally, Virginia Palmer's 2009-2010 School Accountability Summary Report specifically and expressly addresses school uniforms as an objective--something which Roy Gomm did not. All this information is readily available to WCSD and on line to the public at www.nevadareportcard.com and www.washoesip.org.

Thus, what we have are two schools identified by Mrs. Pilling, Swope middle school and Virginia Palmer elementary school, which can be characterized as schools with a "past practices" upon which she relied. As noted above, there was very little, if any, compliance with the procedures set forth by Mr. Naninni and glaring dissimilarities between Virginia Palmer and Roy Gomm. It is difficult, if not impossible, to see how the "past practices" can be held out as valid authority for implementing mandatory school uniforms, especially when the "past practices" are arbitrary and non-standardized.

A cavalier approach that sanctions "past practices" as a valid method by which to judge the need and propriety, let alone the legality, of procedures which clearly and unequivocally touch upon valid Constitutional rights, which rights have been repeatedly and expressly protected by the *written* policies and regulations adopted by WCSD, is appalling and nothing less than gross misconduct. The approach clearly subjects all WCSD schools' operating with mandatory uniform policies and those intent upon instituting such a mandatory policy to legal scrutiny at the very minimum.

## IV.    VIOLATION OF RIGHTS

Even if WCSD authorizes parent "voting" as a method by which to adopt certain rules and regulations, it would not pass legal scrutiny in this case. As recognized long ago by the United States Supreme Court:

> The very purpose of a Bill of Rights was to withdraw certain
> subjects from the vicissitudes of political controversy, to place them
> beyond the reach of majorities and officials and to establish them as
> legal principles to be applied by the courts. One's right to life,

liberty, and property, to free speech, a free press, freedom of
worship and assembly, and other fundamental rights may not be
submitted to vote; they depend on the outcome of no elections.

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

## A.   UNITED STATES AND NEVADA CONSTITUTIONS

Rights under the United States Constitution and the Nevada Constitution are protected
from state action. U.S. Constitution, 1st Amendment, 14th Amendment; Nevada Constitution, Art.
1, Sec. 9. These rights include the right to speak freely and the right to refrain from speaking at
all. *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428 (1977). Refusal to comply with a
school uniform requirement on the basis of religious and moral objections constitutes expressive
speech protected by the First Amendment of the United States Constitution. *Jacobs v. Clark
County School District*, 373 F.Supp.2d 1162, 1173 (D.Nev. 2005), aff'd by *Jacobs v. Clark
County School District*, 526 F.3d 419 (2008). Further, parents have the fundamental right to
make decision regarding the care and control of their children. *Troxel v. Granville*, 530 U.S. 57,
65-66, 120 S.Ct. 2054 (2000).[53]

Other pertinent cases include, but are not limited to, *Tinker v. Des Moines Independent
Community School District*, 393 U.S. 503, 89 S.Ct. 733 (1969); *United States v. O'Brien*, 391
U.S. 367, 88 S.Ct. 1673 (1968); and *Chandler v. McMinnville School District*, 978 F.2d 524 (9th
Cir. 1992).

### 1.   Must Demonstrate Real Harm and Alleviation of Harm by Policy

In evaluating whether Roy Gomm's mandatory school uniform policy furthers an
important school interest, there must be evidence which "**demonstrate[s] that the recited harms
are real, not merely conjectural and that the regulation will in fact alleviate these harms in
a direct and material way.**" *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664, 114 S.Ct.
2445 (1994)[emphasis added]; *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 36 (CADC 1977)
("[A] 'regulation perfectly reasonable and appropriate in the face of a given problem may be highly
capricious if that problem does not exist'")[citation omitted].

After the matter was put to a vote, Mrs. Pilling admitted to a parent Roy Gomm does not
have any identified need that will be addressed by a mandatory uniform policy. The following
reasons are addressed, however, as they were reasons given at the April 26, 2011 informational
meeting and are reasons which parents relied upon when casting their votes.

---

[53]If *parents* refuse to comply with the mandatory uniform policy and their children are not
permitted to wear the uniforms, will children be subject discipline?

## 2.    Given Reasons for Implementing Policy[54]

At the April 26, 2011 informational meeting, and as stated on the PowerPoint presentation, the following reasons were identified for implementing a mandatory uniform policy at Roy Gomm:

- Help to create an academic atmosphere

- Increased peer respect for who a student is rather than what they are wearing; offers a level playing field for all students in terms of attire

- Create a greater sense of belonging at school

- Encourage the idea that dressing for school is different than dressing for play

- Help in creating school pride and school spirit

- Save money by reducing wardrobe expenses

- Simplify parents [sic] lives (if you haven't already done so, please take time to talk to parents who have children at schools with uniforms; the vast majority say it simplifies their lives tremendously)

- Roy Gomm's Principal and Faculty are in support of students wearing uniforms

Notably, at no time has Roy Gomm, the PFA, or the Uniform Committee asserted that Roy Gomm, its students or the parents suffer from a lack of any of the foregoing. In fact, when the PFA President first raised the issue of a "possible dress code" on January 19, 2010, there were no discussions regarding the reasons for the dress code. Furthermore, none of the PFA minutes reflect any concern or problems at Roy Gomm regarding these issues either before or after January 19, 2010. Even the PowerPoint presentation does not identify these as problems or issues faced by Roy Gomm students.

---

[54]The uniform committee's PowerPoint presentation also stated:
Research suggests that school uniforms are correlated
with:
Increased test scores
Fewer discipline referrals
Increased attendance, fewer truancies
Student resistance to peer pressure (to buy trendy clothes)
Better identification of intruders at the school
Lower incidence of violence
Fewer gang related affiliations/attire incidents

· Tellingly, since my older child began attending Roy Gomm four years ago, there have been no notices or announcements of any kind whatsoever which discuss or identify any of the foregoing as problems or issues faced at Roy Gomm.

*I have been informed that Mrs. Pilling admitted to a parent recently that Roy Gomm suffers from none of these identified issues or problems.* The evidence clearly bears this out.

### 3.   Roy Gomm Faces No Harms

#### a.   Academic Atmosphere and Sense of Belonging at School

The existing school environment is chock-full of examples demonstrating an elevated the "academic atmosphere" and sense of belonging at Roy Gomm. Here are but a few. There is a large, conspicuous, permanent, concrete sign on the south side of the campus advertising Roy Gomm Elementary School. A marquee used to update students, parents and the general public stands close by and is used frequently by the school. The school campus is comprised of permanent individual, structures, mostly enclosed by chain-link fencing.

Grade levels are set apart generally by grouping together the younger, middle and older grade levels and placing them in classrooms located in one of the three classroom buildings. The rooms are identified by number and most often the teacher's name and grade is identified on the window of his/her classroom. Classrooms are equipped with multiple computers, white boards and other technology. Each student is assigned his/her own desk which generally display their names.

Roy Gomm has a large library, and a distinct administrative office location. The multi-purpose room is designed to accommodate activities involving the entire school, as well as performances to which parents and guests are invited, and lunch.

The playground and field areas are separated and specific grade levels are permitted to use only specific areas. School rules are enforced routinely and no running, shouting, or playing is permitted in the halls. Duty teachers are provided at all recesses and for a certain period of time before school.

Students receive constant information about school events via announcements and notices. At every activity I have ever attended, the students are well-behaved. Every time I have acted as a volunteer, I have seen nothing but quiet, cooperative students, eager to learn and please their teachers.

There is a specified drop-off and pick-up area and an area designated for buses only at

-23-

certain times of the day. An audible bell sounds twice before school begins and then, at least again, at the end of the day. Roy Gomm has an excellent custodial staff that keeps the campus generally safe and clean. There are no signs of graffiti (and the one time of which I am aware that it occurred within the last few years, it was remedied before the students arrived on campus).

Although the school is need of some repair (something which uniforms will not alleviated), overall the academic atmosphere and sense of belonging are high (especially when compared to other schools in the district).

### b. Peer Respect for Who a Student Is Rather than What They Are Wearing; Level Playing Field for All Students in Terms of Attire

First, and most interestingly, a mandatory school uniform policy directly contradicts the stated purpose. The message being sent is not equality. Instead we are teaching are children "you must all look alike to be treated alike." If there are conflicts because of what a student is wearing, the current laws, policies, rules and regulations which address civil rights, bullying, harassment, intimidation and fighting more than adequately address the needs for a productive and safe learning environment without impinging upon constitutional rights.

Second, what evidence is there that students are suffering from peer disrespect so harmful as to be disruptive? I can say with all certainty that my childrens' lack of any particular "designer clothes" or "fashionable clothes" has not impacted their self-esteem, self-confidence or ability to learn. They suffer no peer disrespect.

Third, a mandatory uniform policy aimed at eliminating "designer clothes" in order to "level the playing field" (which was a reason for mandating uniforms expressed at the informational meeting) directly impacts a students' First Amendment right of free speech. Clothing that bears printed language, including brand names or custom clothing, may constitute pure speech indicating, among other things, social class. *Jacobs v. Clark County School District,* 526 F.3d 419 (2008), citing to *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780 (1971). And yet, there is no evidence that wearing "designer clothes," fashionable clothes or any other clothes by students at Roy Gomm has had any impact whatsoever on the learning environment. Indeed, as stated below, Roy Gomm does not have a high drop-out rate, truancy or low student attendance rate which may indicate that there is no peer pressure based upon a student's attire.

Finally, there is no evidence a mandatory school uniform policy alleviates any such harm in a *direct* and *material* way. In fact, the policy, as it currently stands, permits students to wear any shorts, pants, skirts, skorts they desire so long as they are the required colors as well as any closed-toe or open-toed shoes (for brevity, referred to as "lower-torso clothing"). Obviously, students and their parents will still be able to purchase whatever designer, fashionable or trendy lower-torso clothing they choose which does nothing to "level the playing field." Now we'll just have students buying designer, fashionable and trendy lower-torso clothing, most notably shoes.

-24-

**c.    Encourage the Idea That Dressing for School Is Different than Dressing for Play**

I find this to be in direct conflict with what I teach my children. The idea that you should be "dressed for learning" *or* "dressed for play" is simply irreconcilable. I, and I believe many, many others, firmly believe learning should be fun and everything, even fun, is a learning experience. To me, the two are not only compatible, but nearly inseparable.

What are the students to do when they are on recess or participating in physical activity—*not play or participate* because they are in school uniforms? Students who are worried about getting their "uniforms" sweaty, dirty, stained, torn, etc., while on recess or participating in physical activities will be inhibited from fully participating. Isn't the idea of these activities to let the students "burn off" some of their excessive energy so that they will be more receptive to learning while in the classroom? I do not believe these points were adequately, if at all, considered.

In addition, I find this "idea" to be an inaccurate reflection of today's business environments. Many people "work from home." They are in various states of dress (or undress), including pajamas. While my children have seen me "dressed up" for various meetings and appearances, most often they see me in comfortable, casual clothes—the same clothes I "play" in—while I am working.

Standing alone, this idea holds very little weight for mandating school uniforms. I have found no scientifically based research that supports this idea. On the other hand, I would venture to guess there are at least a few peer-reviewed studies which support the play/learning interaction.

**d.    School Pride and Spirit**

Even if school pride is a valid school interest, a statement for which I have found very little support, school pride and spirit at Roy Gomm is anything but lacking. In addition to those factors listed above under "Academic Atmosphere and Sense of Belonging," there are multiple examples of the extremely high level of school pride and spirit.

Participation in school-related activities, including, but not limited to, fund-raising events, is phenomenal and successful. These include Multicultural Art Show, Roy Gomm's Family Night at the Reno Aces, Denim & Spring, Box Tops for Education, Gomm Family Yard Sale and Skate Night, to name just a few. School spirit wear is successfully sold as a fund-raising endeavor. Students and parents from Roy Gomm participate in the Meridian Gold Run for Education each year. Gopher Day is always a huge success and the year-end "group hug" is highly touted.

There is a glass-enclosed bulletin board where students' art and other achievements are displayed as well as bulletin boards in the MPR. Students are rewarded with Gopher Bucks for their positive behavior and are recognized and honored with programs such as student-of-the-

-25-

week (both school-wide, and in individual classes).

Parent volunteers fill positions so that students have the opportunity to participate in art, recreation, physical education and other subjects. Without question, parents, relatives and friends fill the seats whenever a school performance is given.

Again, there is no evidence of lack of school pride or spirit at Roy Gomm. In addition, there is no scientifically based research which shows an increase in school pride/spirit from mandatory school uniforms.

On the other hand, we now know that at least 1/3 of the parents that were permitted to vote are against mandatory school uniforms.[55] These parents, at a minimum, will more than likely be even more disgruntled and feel more oppressed once they are informed and become aware of the written uniform policy. So, whereas prior to mandatory uniforms, Roy Gomm suffered no ill effects of low school spirit or unity, as admitted by Mrs. Pilling, now, we will have at least 1/3 of the parent population participating in school activities less than enthusiastically, if at all.

David L. Brunsma, an assistant professor of sociology at the University of Missouri and a leader in scientifically based research analyzing the effectiveness of school uniforms since 1998 has this to say:

> [S]chool uniforms do not impact a school's climate, save for a small negative impact on 8[th] grade principals' perceptions of the safety climate. These findings are much more rigorous than previous studies of school climate (Murray 1997) and certainly contrary to the contemporary discourse on the potential effects of school uniform policies. The results of such analyses are quite detrimental to the reigning assumptions of enhancing school unity and safety through standardized dress policies.

www.naesp.org; Principal, January/February 2006 Special Section, p. 52.

---

[55]I believe that this number will increase once parents become informed and made aware of the written mandatory uniform policy, including, but not limited to, the progressive disciplinary action that will be taken against their children (I simply can't imagine a kindergartner or primary grade student being assigned in-school suspension, Saturday school, work crew or multiple detentions!), the 66% majority of all parents of students enrolled at Roy Gomm now needed to execute a petition to rescind or amend the uniform policy, which then must be decided upon by the "standing Uniform Committee," and the fact that only PFA members can sit on the standing Uniform Committee.

-26-

### e.    Save Money by Decreasing Wardrobe Expenses

First, this is not a valid school interest.

Second, there is no evidence to support this statement. Like many families, especially in today's economy, our family has intentionally refrained from expending unnecessary funds on "wardrobe expenses." Requiring us to purchase shirts and certain colored pants, shorts, skirts, etc. that would not otherwise be purchased cannot possibly be "saving" me money. The argument is fallacious and ridiculous. Schools should not be permitted to dictate how much or little money parents spend on their childrens' public school attire.

A mandatory policy that forces parents to spend money unnecessarily on Roy Gomm uniforms is bad for the economy and bad for the environment. We will now need two wardrobes for our children–one for school and one for other occasions. Currently, we pass on our childrens' clothes to friends and relatives once they are outgrown. None of them will need or want a shirt specifically made for Roy Gomm. And, as addressed below, the cleaning costs involved in keeping one or two shirts clean for an entire week will increase, not decrease.

### f.    Simplify Parents' Lives

This argument is equally unavailing and again, is not a valid school interest. What evidence is there that the lives of parents of Roy Gomm students are complicated by students being able to choose their clothes?

For me, a mandatory school uniform policy complicates my life, it does not simplify it. I will now have to explain to my children that, despite our Constitution, their rights of expression, and free speech, and our rights as parents to make decisions regarding the care and control or our children, can be impinged upon for no valid reason.

If *I* refuse to dress my children in the mandatory uniform, this is not my childrens' fault. Yet, according to the written policy, they will be forced to choose to either obey their parents or obey the Uniform Committee and/or the school principal. If they obey the Uniform Committee or principal, they face consequences at home. If they obey their parents, they face dire consequences under the written uniform policy.

I have been forced to spend much time and attention to a matter which was, at best, handled in a surreptitious manner.

A mandatory school uniform policy will force me to challenge the legality of such a policy in order to protect my and my childrens' interests.

And a mandatory school uniform policy will attempt to force me to comply with something to which I vehemently object in order to avoid the negative consequences surely to be

suffered by my family for non-compliance.

In so complying, a mandatory school uniform policy will require me to ensure that every morning my children have what is necessary to comply with the policy. They will have a severely more limited selection of clothes from which to choose. I will have to ensure that the "proper" clothes, from the severely limited selection, are clean and acceptable.

I will have to "do laundry" more frequently to ensure that this is so. When those clothing options that meet the uniform standards are outgrown, dirty, torn or otherwise rendered inappropriate, I will be forced to replace them—not from the selection we currently have, but, rather, only with those that fit the uniform standards.

My children are able to get themselves dressed in the morning for school with little to no instruction from me. They've been able to do this for some time now. There are clearly less restrictive alternatives available for those parents whose children have trouble doing so. For example, those parents can establish "school clothes" which they deem appropriate for their children and have their children decide the night before what they will wear to school the next day.

### g.   Increased Academic Achievement

Increased academic achievement was not an enumerated reason for adopting a uniform policy at Roy Gomm. However, I discuss it herein because it was strenuously relied upon by at least one parent at the informational meeting as a reason for doing so. In addition, the PowerPoint presentation stated, without support, that "research suggests that school uniforms are correlated with increased test scores. . . ."

> [S]chool uniforms are not significantly implicated in the success or failure of elementary, middle, or high school students (except for negative effects on reading scores). Furthermore, research has shown that school uniforms neither directly nor indirectly affect academics by creating a positive school climate or a positive approach to learning. Regardless of where one starts in the chain of anecdotal assumptions (whether uniforms change context, which in turn affects outcomes, or that uniforms directly change outcomes for unspecified reasons) *the data on uniforms' effects on academic achievement simply give no evidence.* [Emphasis in original].

www.naesp.org; Principal, January/February 2006 Special Section, p. 52.

Despite scientifically based research which shows no correlation or negative correlation, the research is blatantly ignored and the drive to mandate school uniforms continues with the express, apparent, and/or implied authority of WCSD.

-28-

### I.    No Strong Correlation

Roy Gomm, the PFA and the Uniform Committee were aware that "there is not a lot of empirical research to suggest strong correlations between school uniforms and academic achievement." An Administrators Guide to Implementing School Uniforms, Joe Naninni, June 29, 2010, citing to Gentile, & Imberman, 2010; Dauerghty, 2002; Brunsma, & Rockquemore, 2003; www.naesp.org; Principal, January/February 2006 Special Section, p. 52.

This information was never disclosed to the parents of Roy Gomm students prior to voting. In addition, parents were never informed of the scientifically based studies which show no impact or negative impact. Such flagrant omissions are irresponsible and misleading.

### ii.    Roy Gomm's Students Do Not Suffer Low Academic Achievement

Recently, Roy Gomm reported:

> Since the state accountability began in 1998, Gomm Elementary School has met the state requirements for adequate achievement every year and has been designated a high achieving school seven times and an exemplary school once. All teachers at Roy Gomm are highly qualified in the area they teach and have participated in professional learning communities. We have four teachers on staff who are Nationally Board Certified. We have a very supportive PFA at Gomm. They fund additional instructional staff in the areas of intervention teacher and kindergarten teacher's aide. They also provide monies for enrichment activities and basic supplies around the school. Our PFA also runs many family fun events including Gopher Day, Bingo Night, and for the adults, Denim and Spring.

www.washoesip.org/schools/32004800243/sip1261-gomm-roy.html/print.

Roy Gomm is located in an upper-middle class, suburban neighborhood. Its student population is predominantly white (88.4%) and it meets or exceeds the standards in range of academic performance; it has virtually no history of school violence, gang activity, disciplinary problems, decreased student attendance, truancy problems or increased drop-out rates. Roy Gomm Elementary School 2009-2010 School Accountability Summary Report, www.nevadareport card.com.

In short, there are no issues, harms or problems at Roy Gomm for which a mandatory uniform policy can be said to address. In addition, even if one or more of the identified reasons did exist as a problem at Roy Gomm, there is no empirical evidence that a mandatory uniform policy would alleviate those problems in a direct and material way.

## B.    ROY GOMM'S MISSION STATEMENT

Roy Gomm's website, found at www.washoe.k12.nv.us/gomm/missionstatement.html states: "Roy Gomm Elementary School provides students with a safe, challenging, and positive learning environment helping students to achieve his or her potential and to become tolerant, productive, and independent citizens of our community." A mandatory uniform policy violates the stated mission statement.

## C.    ROY GOMM'S STUDENT/STAFF BILL OF RIGHTS

Roy Gomm's website also sets forth the Student/Staff Bill of Rights at www.washoe.k12.nv.us/gomm/billofrights.html. It states:

**#1    I have the right to be happy and to be treated with compassion:**
this means that no one will verbally put me down, swear at me, laugh at me, make fun of me, hurt my feelings, embarrass me, scare me, threaten me, or bully me.

**#2    I have the right to be myself:**
this means that no one will treat me unfairly because of my race, my skin color, my religious or cultural practices, my gender, or my physical appearance.

**#3    I have the right to hear and to be heard:**
this means that no one will interfere with my learning or teaching by yelling, screaming, shouting, or making loud noises.

**#4    I have the right to learn about myself:**
this means that I will be free to appropriately express my feelings and opinions without being interrupted or punished.

**#5    I have the right to be physically safe:**
this means that no one will physically hurt me in any way. Our school will remain safe through the enforcement of rules involving supervised play areas, the safe usage of playground equipment, and sportsmanship. Students will not be allowed to throw dirt, rocks, or snow and will attempt to stay clear of puddles. Dangerous substances and objects will not be allowed on school grounds.

**#6    I have property rights:**
this means that no one will break or steal my things and will not engage in behavior that is damaging to our school. In addition, all members of the Roy Gomm Community will behave in a manner that exhibits good character. This would include responsibility, honesty, and integrity in completing assignments (coming to school prepared, working independently, and not copying from others).

The mandatory uniform policy violates students' rights as set forth therein.

-30-

**V.   ROY GOMM, THE PFA AND THE UNIFORM COMMITTEE HAVE NOT BEEN OPEN AND TRANSPARENT WITH THE PROCEDURES AND METHODS USED IN ATTEMPTING TO IMPLEMENT A MANDATORY UNIFORM POLICY**

As stated above, there is no authority for each individual school to implement mandatory school uniforms.  In addition, the method and manner utilized at Roy Gomm entirely fails to satisfy the parental involvement requirements of both federal and state law.  It evidences the hidden agenda of a select few carried out, at best, in a surreptitious and misleading manner.

Obviously, only those actually attending the February or March PFA general meetings–a very small portion of the entire Roy Gomm parent population--would have had any direct knowledge that a Uniform Committee existed or that the issue was again being discussed.  In addition, it was only *after* Ms. Hunsberger informed me that the minutes were available at the Roy Gomm office did I become aware that minutes even existed.  Interestingly, at least two Roy Gomm office staff members had no idea where the PFA minutes were located and no one could tell me where to find the PFA agendas.  Finally, although I cannot attest as to when the February minutes were placed in the minutes notebook, I can state that, as of May 17, the April minutes had not yet been placed in the notebook.  Even assuming, *arguendo*, the PFA minutes were sufficient notice, the notice would not have occurred until they were actually placed in the notebook and made available to the public, a date sometime presumably after February 13, 2011. And, since the Uniform Committee was "ready to have a parent information night"as of March 15, having met, by Ms. Hunsberger's own admissions, only *twice*, the "ample opportunity to participate in the Uniform Committee meeting process" is grossly overstated.  Given these facts, I find Ms. Hunsberger's statements regarding "involving" and "informing" parents to be patently false and misleading. At no time were there any announcements or notices regarding the Uniform Committee's meeting and no agenda was ever published.

Furthermore, from the time the uniform committee was established until the notice of the informational meeting was distributed in mid-April 2011, there were absolutely no communications to the "Roy Gomm Community," outside of PFA meetings, which even hinted at uniforms.

In late April, 2011, the notice describing the April 26, 2011 informational parent meeting was sent home.  As set forth above in the Chronology of Events, the Gopher Gazette published only two announcements regarding school uniforms in the April and May issues–well after the Uniform Committee had concluded its "research" and had reported to the PFA it was ready to hold an informational meeting.  Finally, prior to the May 2 voting deadline, only two pre-recorded telephonic announcements from Mrs. Pilling via connect-ed were made regarding school uniforms–one shortly before April 26, 2011 reminding parents of the April 26 informational meeting and one shortly thereafter reminding parents to vote on the issue.

Most notably, the written uniform policy was never disclosed to the Roy Gomm students

or parents prior to casting votes.  At least one "yes" parent has unequivocally stated she would not have voted affirmatively if the policy had been disclosed with the ballot, a request that I made on April 27, 2011.  This was made known to Lynn Rauh on June 2, 2011.  *This is significant because the "vote" would not have passed the 66% majority if there was even one less "yes" vote.  This alone should be enough to void the entire policy ab initio.*

As reflected herein, the process has been anything but open and informative  Rather it has been surreptitious and one-sided, clearly designed to push through a "hotly debated" issue without due regard for the rights and interests of all involved.  By omitting crucial and necessary information, the parents of Roy Gomm students and the students have been critically misled and misinformed.

## VI.   THE "VOTING" PROCESS ITSELF WAS SEVERELY FLAWED FOR SEVERAL INDEPENDENT REASONS

As stated above, the parents of Roy Gomm students simply cannot "vote" to deprive individuals of their constitutional rights.  To the extent the "votes" have some meaningful role, it is imperative the voting process itself satisfy due process, be subject to public scrutiny, and not simply pushed through and "verified" by only those who support and propose the policy.  This has not been done.

### A.   THE PROCEDURE WAS ARBITRARY AND CAPRICIOUS FOLLOWING NO SET GUIDELINES OR PROCEDURES

The PFA is a volunteer non-profit, fund-raising organization.  I have been unable to find any authority upon which the PFA can institute, implement, control, supervise or otherwise govern a mandatory uniform policy at a public school.  Nevertheless, the PFA initiated and controlled the entire voting process.  The PFA "recommended" uniforms to the parent population and it was at a PFA meeting from which the Uniform Committee members were drawn.  The Uniform Committee allegedly researched the literature and informed the public of its "findings."  The PFA dictated by way of the Gopher Gazette what information would be published regarding uniforms, when the matter would be considered and re-considered and under what circumstances.  The Uniform Committee drafted the written uniform policy and now the standing Uniform Committee, which will be formed out of PFA members, "will be responsible for implementing and evaluating the school uniform policy."

The PFA set the requirements of who could vote (ie. one vote per family and parents of outgoing 6th graders with no younger siblings) and the percentage of votes in favor of uniforms which were necessary to pass.  The PFA dictated when, where and how the ballots would be distributed, collected and maintained and what the ballots would contain.  The PFA determined which votes "counted" (those submitted late did not).  The PFA President and Treasurer were responsible for counting the votes and I, for one, was denied the opportunity to inspect the votes as collected.

-32-

At the April 26, 2011 informational meeting, an audience member inquired why we were again voting on this issue when it had not passed last year. Mrs. Pilling indicated that it had "passed" by majority vote and that the current meeting was being held to address the issues raised by parents when the votes were cast. When asked whether the school would look at the issue every year, Mrs. Pilling indicated that if there was an interest to do so, it would be reexamined. Now, however, contrary to this representation, it will take a 66% majority of all parents/guardians of students enrolled at Roy Gomm to execute a petition to rescind or amend the uniform policy.

Now, under the written uniform policy, there will be a "standing Uniform Committee" made up of PFA members. Since you have to pay membership dues to be a PFA member, the obvious conclusion to be drawn is that you can buy your way on to the standing Uniform Committee. But even this is not guaranteed, especially for someone such as myself who has been openly criticized, berated and subjected to hostile treatment because of my open opposition to the manner, method, reasons and results surrounding the implementation of mandatory school uniforms at Roy Gomm.

In addition, Dina Hunsberger the chairperson of the Uniform Committee, stated: "The majority of the uniform policy was provided last night. . . .The children in violation will be issued a warning and asked to change into a uniform provided by the school for that day. In cases where children choose not to wear a uniform, the parent would be asked to meet with the school principal. This information was provided at the meeting but has not been formalized in a written document (because the policy is only proposed at this juncture – and not yet approved)."

Where once there was not even a dress code applicable to Roy Gomm students (see WCSD Parent Student Handbook and Roy Gomm Parent Handbook), now the written uniform policy subjects students to harsh and severe sanctions for their failure to comply. Not only were these sanctions *not disclosed*, but the express representations regarding consequences made by Mrs. Pilling and Dina Hunsberger prior to the vote come nowhere close to those now set forth in the written policy.

Compare the progressive discipline set out in the written uniform policy with those of other WCSD school's that have implemented mandatory uniform policies (also implemented under nothing more than the authority of "past practices"):

Pine Middle School's Uniform Policy provides:

> Students in violation of the uniform policy will be referred to the Dean of Students' Office for disciplinary action. All violations will be documented in the student's disciplinary file and parents will be notified. Appropriate disciplinary action will be taken with habitual offenders, as it becomes an issue of insubordination.

Lemmon Valley Elementary School's Uniform Policy provides:

Students not in appropriate dress with their school uniform will
have the following progressive discipline implemented:

1st Day – Warning and student will be required to change for that
day into a "loaner" shirt and a will call home for assistance
2nd Day – Student will receive an Office Referral and be required
to change for the day in to a "loaner" shirt, call home
3rd Day – Student will receive an Office Referral, miss recess,
change for the day into a "loaner" shirt, call home.

Given that, as represented by Mrs. Pilling to me, the Uniform Committee drafted the
written policy, what legal support did they rely upon, if at all, in drafting the policy? The answer
can only be "none" or "completely insufficient, inaccurate legal support." Either way, the conduct
amount to gross misconduct and breach of various duties imposed by law, not the least of which
is clearly, expressly and unequivocally set forth under NRS 388.070 which states: "**When
feasible, boards of trustees must maintain all the schools established by them, . . .. as far as
practicable, with equal rights and privileges**." Emphasis added.

Finally, at no time did Roy Gomm, the PFA or the Uniform Committee address the
constitutional issues at stake in implementing the mandatory uniform policy. In fact, those
involved admitted they never considered such issues *at all*. Again, such conduct amount to gross
misconduct and breach of various duties imposed by law

### B.  NO ADEQUATE SAFEGUARDS WERE EMPLOYED FOR THE DISTRIBUTION, COLLECTION, MAINTENANCE OR EVALUATION OF BALLOTS

The ballots were either picked up at the April 26, 2011 meeting or sent home with the
eldest child of the family. I received mine at the April 26, 2011 meeting. I was not asked to
provide any identification.

No method was used to verify that parents received the ballots which were sent home with
a student.

The ballots did not require a verified signature of the parent/guardian, thus there was no
guarantee the votes were actually cast by someone with authority.

The votes were "collected" in various ways, including, but not limited to, delivery by a
parent to office personnel or sent back to school with a student. Considering this, how likely is it
that some of the approximately 33% unreturned, or at least unaccounted, votes were merely lost,
misplaced or intentionally withheld?

The PFA President and Treasurer counted the ballots. I requested to see them, but was

-34-

denied. Thus, the very body which has shown nothing but unbridled favoritism and support of mandatory school uniforms had the only access to the ballots. The very apparent appearance of impropriety in this should be enough to at least raise eyebrows especially in light of the fact Mrs. Pilling recognized the "hotly debated" issue and the mere fact that issue passed the arbitrary 66% by only one vote.

### C.   BALLOTS WERE NOT DISTRIBUTED, COLLECTED OR MAINTAINED IN A SAFE OR CONFIDENTIAL MANNER

The ballots contained the name of the name of elder/eldest child at Roy Gomm (if more than one) and that student's teacher's name. When I delivered mine to the office, there was no confidential ballot box within which to place it and was merely placed by personnel on the front office desk. Another mother complained to me that when she inquired as to where the ballot box was located Mrs. Pilling took the ballot directly from her and read it in her presence. At a minimum, the PFA President and Treasurer had full and direct access to the ballots as they were the one who tallied them and provided the summary.

### D.   STUDENTS WERE NOT PERMITTED TO VOICE THEIR OPINIONS OR CAST A VOTE

Again, it must be noted the purpose of mandatory school uniforms is contrary to WCSD policies and regulations. As stated in the written policy, the purpose of mandatory school uniforms "is to establish a culture of 'one team, one community.'" The WCSD regulations and policies make clear this is not a reason for limiting students' and parents' rights. "Dress and grooming are individual and personal matters and the primary responsibility for dress and grooming rests with the student and the student's parent(s) or guardian(s). However, the school district reserves the right to insist that the dress and grooming of all students must not present *potential health or safety problems or cause disruptions.*" OSP-P002 [emphasis added].

In addition, the students themselves were never polled on this issue and were not permitted to cast a vote. Given that there is a freedom of expression, speech and religion, the protection of which is expressly espoused by written WCSD policies and regulations, see e.g. BOT P039, and that the primary responsibility lies solely with the students and parents, see WCSD Parent Student Handbook, pp. 19-21, I find the fact students had no voice in this to be extremely problematic.

### E.   EACH FAMILY WAS ENTITLED TO ONLY ONE VOTE

Regardless of the number of children enrolled at Roy Gomm, each family was only entitled to one vote. Clearly the parents of more than one Roy Gomm student suffer greater financial impact.

This arbitrary stipulation also precluded parents with differing opinions from both

-35-

participating in the process and thus, caused a division between parents requiring them to determine whose "vote" should count.

**F.  VOTES CAST BY PARENTS OF SIXTH GRADERS WITH NO YOUNGER BROTHERS OR SISTERS ENROLLED AT ROY GOMM HAVE NO STAKE IN ROY GOMM FOR THE 2011-2012 SCHOOL YEAR YET THEIR VOTES WERE COUNTED AND PARENTS OF INCOMING KINDERGARTNERS WERE DEPRIVED OF THE OPPORTUNITY TO BE HEARD.**

The ramifications of this are self evident. Notably, in this years' vote tally, the votes of parents of outgoing 6th graders with no younger brothers or sisters at Roy Gomm were not provided or excluded as they were last year. If only one less "yes" vote had been received, the issue would have "failed" yet again. I believe it is necessary to determine how many such votes were included. I have spoken to a few parents who voted yes, but who were dismayed to hear that 6th graders with no younger brothers or sisters at Roy Gomm were included.

**G.  THE WRITTEN POLICY**

While there are many things about the written policy which raise concerns, the following are the most disconcerting:

1.  Parents and students were led to believe the information presented in conjunction with the ballot constituted the uniform policy. The written uniform policy, however, is drastically different than that represented by Roy Gomm, the PFA and the Uniform Committee. Notably, the written policy as it stands today, was never "voted" on by the parents.

2.  Policy: A "standing Uniform Committee" is to be established. The four parents chosen for the standing Uniform Committee will be chosen from PFA members. If more than four parents are interested, a formal vote will be held to determine which four.

    Concerns: In order to be on the standing Uniform Committee you must be a PFA member; in order to be a PFA member, you must pay dues. The obvious conclusion here is that you have to pay your way into the Uniform Committee. The written policy does not contain sufficient details about the "formal vote" process. For example, it does not state whether it is an open vote or the number of votes necessary.

3.  Policy: The standing Uniform Committee Chair is established by an anonymous vote of the Uniform Committee members.

Concerns:  In order to be the standing Uniform Committee Chair you must be a PFA member; in order to be a PFA member, you must pay dues.  The obvious conclusion here is that you have to pay your way into the Uniform Committee. The written policy does not contain sufficient details about the voting process.  For example, it does not state the number of votes necessary.

3.    Policy:  The standing Uniform Committee "will be responsible for implementing and evaluating the school uniform policy."

Concerns:  Although Roy Gomm's Principal will "interpret and resolve all disciplinary issues regarding the written uniform policy," the current wording of the written policy gives the Uniform Committee the authority to "implement" the policy.  Who is responsible for the actions of the Uniform Committee?

## VII.    CONCLUSION

I believe the procedure, manner and method employed by Roy Gomm, the PFA and the Uniform Committee to implement a mandatory uniform policy at Roy Gomm and the resulting mandatory uniform policy is *ultra vires*, violates the Constitutions of the United States and Nevada, as well as state statutes and common law, Washoe County School Districts' policies and regulations, Roy Gomm's Bill of Rights and Mission Statement.

Based upon the foregoing, I respectfully request the following:

1.    The Roy Gomm Elementary School 2011-2012 mandatory school uniform policy be declared null and void and/or revoked by WCSD Board of Trustees;

2.    If not declared null and void and/or revoked, the comments contained herein be reproduced and distributed to the parents of all Roy Gomm students; and

4.    All evidence be marshaled and maintained and not spoliated, including, but not limited to:
      a.    2010 and 2011 uniform ballots;
      b.    Roy Gomm PFA minutes, bylaws and articles of organization;
      c.    All data, including electronic data, regarding uniforms whether held or maintained by WCSD, Roy Gomm, the PFA or the Uniform Committee; and
      d.    any other evidence or material pertinent hereto.

In addition, Roy Gomm is aggressively moving forward with the mandatory uniform policy, including a pre-orders for shirts.  I fear that unnecessary funds will be expended.[56]  Thus,

---

[56]It is yet unclear whether public funds or PFA funds will be utilized.

-37-

at a minimum, while this matter is being considered by the Board, Mrs. Pilling and the Uniform Committee should be advised to cease and desist with any and all activity related to the placement of orders.

Finally, on June 2, 2011 I inquired of Lynn Rauh whether the placement of the uniform contract with the company providing shirts was subject to the public bid requirements set forth under NRS Chapter 332. She indicated she did not know. I request a response to this question and if the response is yes, then I also request to be informed on whether the requirements were met.

Washoe County School District had sufficient notice of vigorous opposition to mandatory school uniforms at Roy Gomm as early as April 27, 2011 but nonetheless sat idly by. I believe there have been many violations of state and federal law as set forth herein, as well as possible violations of the open meeting laws pursuant to NRS Chapter 241. Accordingly, I request action be taken on this with the utmost priority and that I be advised of such action no later than June 20, 2011 so that I may maintain all rights under NRS Chapter 241.

Sincerely,

Mary L. Frudden, Esq.
Parent of students at Roy Gomm Elementary School

cc:     Dr. Heath Morrison
        Lynn Rauh
        KayAnn Pilling
        Chris Reich

**EXHIBIT E**



**Washoe County School District**

Every Child, By Name And Face, To Graduation

**Lynn E. Rauh**
**Area Superintendent, Zone 3**
**Office of School Performance**
Washoe County School District
425 East Ninth Street
P.O. Box 30425
Reno, NV 89520-3425

Phone (775) 348-0396
Fax    (775) 348-0263

June 28, 2011

Mary Frudden
1902 Carter Drive
Reno, Nevada 89509

Dear Ms. Frudden,

Thank you for your communication.  This is to notify you that the WCSD has considered matters voiced in your letter.  Gomm Elementary School will be moving forward with the implementation of uniforms for the 2011-2012 school year.

Sincerely,

Lynn E. Rauh
Area Superintendent, Zone 3

cc: Kay Ann Pilling
    Randy Drake

OSP-Zone3

WASHOE COUNTY SCHOOL DISTRICT
425 EAST NINTH STREET
P.O. BOX 30425
RENO, NEVADA 89520-3425

RETURN SERVICE REQUESTED

**PRESORTED
FIRST CLASS**



neopost

0495182053311

$00.41 $^{4}$
07/05/2011
Mailed From 89520

US POSTAGE

MS MARY FRUDDEN
1902 CARTER DR
RENO NV 89509

89509 LV XXXX

||..|.|.|.|..|.|.|l.|..|.|l.|..l|.|..|l..|l.||.|.|.|.|.|

# LEGO® Lab
# at Gomm!

## Bricks 4 Kidz

### We Learn, We Build, We Play with....
### LEGO® bricks




For Grades K-5

## 'AMUSEMENT PARK'

Get your ticket to ride at a Bricks 4 Kidz®
Amusement Park! Students will build a new ride
each week, learning how to make things spin, roll,
turn and rock. Then they will take what they have
learned to design their own thrills and challenges.
Motorized models maximize the action and the fun.

---

## THURSDAYS 3:30pm - 4:30pm
## 12/1/11 - 12/22/11

**$50-** 4 week session On Campus in the Library

### _MUST Be Registered online_
### _to attend class_
### www.Bricks4Kidz.com/reno

*\* No Online access? Call us to register!*

---

- ♥ <u>**Class Size Limited to 20 Students**</u>
- ● Participants build a new project each week.
  - o   By registering in LEGO® Lab, *I understand all personal absences are forfeited. No refund available after session has started.*
  - o   *Ongoing program throughout the school year!*

---

*Payments for LEGO® Lab can be made online or dropped off
with the LEGO® Lab instructor in class.*

<u>*\*Make checks payable to Bricks 4 Kidz*</u>
<u>*and include your child's name & school on the check*</u>

# ENROLL NOW FOR
# WINTER BREAK CAMP!!

### www.Bricks4Kidz.com/reno
### (775) 200-0445

The Washoe County School District neither endorses nor sponsors the organization or activity represented in this document. The distribution of this material is provided as a community service

All materials provided. Students do not take home LEGO® projects or pieces.
LEGO® is a trademark of the LEGO® Company which is not affiliated with these classes.

**Like us on facebook - Bricks 4 Kidz - Reno/Sparks, NV**

**EXHIBIT G**

**Chess Kidz**



# Gomm Elementary
# After School Chess Club

Day: **Tuesdays**

Place: **Library**

Time: **3:35 - 4:35 1st - 6th Grade**

Fee: **$85 for 8 weeks of chess**

Dates: **11/8, 11/15, 11/22, 11/29**
**12/6, 12/13, 12/20 & 1/10**

**\*\* Refer two friends and**
**receive a full size chess set!**

**Instructor: Ryan Van Reken**

---

**Sign up today to reserve your child's spot**

The maximum number of students
for this session:   22 children

Questions? Please include student's name, school,
and estimated chess ability when contacting us:

Info@ChessKidz.org
Online Signups:  www.ChessKidz.org
Instructor:        (775) 338 - 9278
Administration:   (775) 223 - 9644

**After-school chess club will include lessons as**
**well as playing time for each child!**

\*No Pro-Ration on Classes – See attendance policy

---

Our Mission Statement: As parents struggle to find pleasurable and worthwhile activities for their children, programs that challenge children to learn are becoming scarce. ChessKidz Incorporated promotes the game of chess as a learning device realizing that learning is a lifelong process. Children will participate in a program that inspires learning and teaches skills that will provide benefits for the rest of their lives.

---

Signing up is easy. Just fill out the fields below, cut at the dotted line (keep the dates for your reference), and turn it in to the school office. Please include a check that is **negotiable to ChessKidz**. Late sign-ups are only accepted if there is still space available in the class. Please visit the website for refund and attendance policy. "The Washoe County School District neither endorses nor sponsors the organization or activity represented in this document.  The distribution of this material is provided as a community service."

*Yes! Please sign me up for the ChessKidz Club at my school!*

Student Name(s):_____ Grade Level:_____ Check #:_____

Parent Name:_____ Parent Signature:_____

Email Address:_____ Skill Level:_____

Home Phone #:_____ Mobile Phone #:_____

**\*\*** Were you referred by someone? Please list their name here:_____

*Please return this form by 11/7/2011 to the Gomm Elementary office.*

# EXHIBIT H



# Roy Gomm Elementary School
## Drama Club
**Presentation Skills and Confidence!**
**FALL 2011**
## Ages:  K – 6th

---

For more information please visit:
www.KidScapeProductions.com
Or call (775) 313-3900

---

# Roy Gomm Elementary School
New and repeat students encouraged to attend, all new presentational games!
Students may register midsession until class is full!

| | |
|---|---|
| **Day:** | **Wednesday's**   (Early release day) |
| **Time:** | **2:50 – 3:50pm** |
| **Room:** | **#36** |
| **Fall Dates:** | **October 12th - December 14th    2011    (10 Classes)** |

Note:    I understand that if school is closed due to weather or school needs, there will not be a KidScape Program on this day. So if school is closed, so is KidScape! We will schedule a makeup day as quickly as possible and will do our best to schedule it when all students may participate!

Cost:    $125.00 for entire 10 weeks or $15 per class
Checks made payable to KidScape Productions/ No Cash

Registration:   Please place form at bottom and payment in KidScape envelope in the main office!  Limited to 15 students!  (If space available, students may register throughout session until class is full)

*KidScape Productions is a professional acting program which strengthens important skills such as Self Esteem, Self Confidence, and Presentation Skills.  Through Improvisational Acting, KidScape Productions teaches students to develop these skills and equip them to make the most of the process.  Our curriculum helps participants have complete trust in their abilities through engaging repetition and a whole lot of FUN!  * Confidence equal happiness   * Happiness equals success  * Success in school  * Success in life!*

--------------------------------------------------------------------------------

Roy Gomm – FALL 2011 REGISTRATION FORM

Session #:    __1 Fall__   Circle Attending Dates:   __10/12, 10/19, 10/26, 11/2, 11/9, 11/16, 11/23, 11/30, 12/7, 12/14__

Student Name: _____    Age: _____    Grade: _____   Check #: _____

Parent Name: _____    Parent Signature: _____

Email Address: _____

Cell Phone #:  (____) _____    Home Phone #: _____

Please place this form with payment in the yellow KidScape envelope in the main office

*The Washoe County School District neither endorses nor sponsors the organization or activity represented in this document.  The distribution of this material is provided as a community service.*

**EXHIBIT I**

# Roy Gomm's 4th grade Jr. Girl Scout Troop 277 announces their 1st...



# "Stuff That Stocking" Drive!

We would LOVE your help with donations of stocking stuffer items for delivery to the local Family Shelter in need this season.

Some suggested items we could use for kids ages 3-12...

| Boys | Girls |
|------|-------|
| socks, mittens, gloves | socks, mittens, gloves |
| soap, shampoo, lotion | soap, shampoo, lotion |
| small toys | small toys |
| watches | jewlery or watches |
| books | books |
| cards or small games | cards or small games |
| candy | hair accessoires |
| school supplies | candy |
| art supplies | school supplies |
|  | art supplies |

Items can be dropped off in the office in the "stocking stuffer bin" anytime through Dec. 15th.

Any questions call troop leader, Lisa Hall 720-1728

Thank you for helping us GIVE to those in need this season!

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that I hand-delivered a copy of the foregoing document to Defendants to

4  the following:

5  MAUPIN, COX & LeGOY
   4785 Caughlin Parkway
6  Reno, NV 89519

7  Dated this 7th day of December, 2011.

8                                                    Mary Frudden

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11