Michael E. Malloy, Esq., Nev. Bar No. 617
Debra O. Waggoner, Esq., Nev. Bar No. 5808
MAUPIN, COX & LeGOY
P. O. Box 30,000
Reno, Nevada  89520
(775) 827-2000 - telephone
(775) 827-2185 - facsimile
mmalloy@mclrenolaw.com e-mail
dwaggoner@mclrenolaw.com e-mail
Attorneys for Defendants Washoe County
School District, KayAnn Pilling, Dina
Hunsberger, Heath Morrison, Lynn Rauh,
Debra Biersdorff, and the Roy Gomm Uniform Committee

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARY FRUDDEN and JON E. FRUDDEN, individually and as parents and guardians of their minor children JOHN and JANE DOE,<br><br>        Plaintiffs,<br><br>vs.<br><br>KAYANN PILLING, individually and in her official capacity as the Principal of Roy Gomm Elementary School; et al.,<br><br>        Defendants.<br>_____/ | Case No. 3:11-cv-00474-RCJ-VPC<br><br>**DEFENDANTS' OPPOSITION AND OBJECTIONS TO PLAINTIFFS' MOTION TO TAKE JUDICIAL NOTICE** |

      Defendants Washoe County School District, a political subdivision of the State of Nevada,

and KayAnn Pilling, Dina Hunsberger, Heath Morrison, Lynn Rauh, and Debra Biersdorff,

individually and as employees of the Washoe County School District, and the "Roy Gomm Uniform

Committee" (collectively, "Defendants"), file their opposition and objections to Plaintiffs' Motion to Take Judicial Notice (abbreviated "JNM" for "Judicial Notice Motion"). This Opposition and the Objections of Defendants are made and based on Fed.R.Evid. 201, the following memorandum of points and authorities, the pleadings and papers on file herein, and any other matters the Court deems pertinent to its consideration of this matter.

Dated this 22ND day of December, 2011.

MAUPIN, COX & LeGOY

By: Debra O. Waggoner

Michael E. Malloy, Esq.
Debra O. Waggoner, Esq.
Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

A.    <u>Plaintiffs' JNM should be denied because it does not satisfy Fed.R.Evid. 201, and because it is defective in multiple respects.</u>

The purpose of a taking judicial notice is succinctly stated in persuasive authority: the principle underlying judicial notice is that some matters of fact are indisputable, so that there is no point in wasting court time by insisting that they be proven. <u>Linscome v. State</u>, 584 P.2d 1349, 1350 (Okla. Cr. 1978). Fed.R.Evid. 201 covers only *adjudicative facts*, which are facts a party must establish in order to prevail, *i.e.*, the who, what, when, how or why of a case. <u>See</u> 1 Charles E. Wagner, *Federal Rules of Evidence Case Commentary* at 135 (2001-2002 ed.). If the fact to be noticed is not generally known within the court's territorial jurisdiction, the court may take notice

of a fact if its existence can be ascertained by resort to sources whose accuracy cannot reasonably be questioned. Id. at 139. Accordingly, the court may use almanacs, encyclopedias, treatises or other recognized publications to determine whether the fact qualifies for notice. Id. at 139-140.

Here, there are multiple reasons why the JNM fails to meet the requirements of Rule 201. Many of Plaintiffs' so-called "adjudicative facts" cannot be so classified. Many of the "adjudicative facts" the Plaintiffs want the Court to judicially notice are already alleged in the First Amended Complaint ("FAC"). As such, they are already taken as true under Fed.R.Civ.P. 12(b)(6) for purposes of Defendants' pending Motion to Dismiss, making Plaintiffs' JNM superfluous and unnecessary. Moreover, to the extent the JNM constitutes an improper sur-reply, it should be stricken.

The JNM is prefaced with unhelpful references to case law and secondary authority that have no cogent connection to the remainder of the Motion, compare JNM at p. 2 and 3:1-8, with JNM 3:9-28 and pp. 4-10, and the arguments which follow are riddled with defects. Finally, sections II.A., II.B., and II.D. of the JNM involve requests to take judicial notice of legislative facts, *not* adjudicative facts. Legislative facts are outside the scope of the plain language of Fed.R.Evid. 201, the purported basis of Plaintiffs' JNM. Absent any sound basis for it, as shown in detail below, the JNM should be denied.

B.    The incorporation by reference doctrine does not apply, warranting denial of the JNM

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. Harmon v. Hilton Group, C-11-03677-JCS, *8 (N.D. Cal. November 28, 2011), *citing* Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 & n. 19 (9th Cir. 1990). The underlying purpose is to prevent the Rule 12(b)(6) motion from being

converted to a Rule 56 motion. See Id. A document is not "outside" the complaint if it is specifically referenced in the complaint, and its authenticity is not questioned. Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994), *overruled on other grounds*, Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

The Ninth Circuit's adoption of the "incorporation by reference" doctrine in Branch v. Tunnell has been extended to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing cases in which *defendant* attached to the motion to dismiss the materials central to plaintiff's claim and plaintiff did not contest authenticity) (emphasis added).

Based on Ninth Circuit authority, the "incorporation by reference" doctrine applies when (1) a *plaintiff's claim* depends on the content of a document, and (2) the *defendant* attaches the document to the motion to dismiss, and (3) *plaintiff* does not dispute authenticity. See Knievel at 1076. Other courts have acknowledged this circuit's view of the doctrine. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 & n. 16 (11th Cir. 1999) (Ninth Circuit's approval of the doctrine in Branch quotes 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d 1327 at 762-63 (2d ed. 1990), stating that "'when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibits as part of his motion attacking the pleading'.") (brackets and punctuation in original).

Here, Defendants did not attach anything to their Motion to Dismiss. See Dkt. #7 (no exhibits). Defendants attacked Plaintiffs' pleading without any exhibits, see Id., because the FAC contains allegations sufficient to cover the matters Plaintiffs purportedly seek in their JNM. As such,

the "incorporation by reference" doctrine does not apply here, so Plaintiffs' reliance on Branch, JNM at 3:2-8 is misplaced. Absent any plausible basis for it, the JNM should be denied.

C.      To the extent the JNM constitutes an improper sur-reply, it should not be considered.

As the record reflects, Defendants filed their Motion to Dismiss (Dkt. #7), Plaintiffs filed their Opposition (Dkt. #10), and Defendants filed their Reply (Dkt. #11). That is the accepted protocol for motion practice in this Judicial District. See LR 7-2 (specifying rules for motion, opposition, and reply); Westbrook v. GES Exposition Servs., Inc., 2007 WL 1288812 *2 (D. Nev. May 1, 2007) (LR 7-2(a)-(c) allows a motion, a response and a reply). The briefing is therefore closed. Yet, about a week after Defendants filed their Reply, Plaintiffs filed their fugitive JNM, purportedly grounded in Fed.R.Evid. 201. See Dkt. #12.

However, "[t]he Federal Rules of Civil Procedure and the Local Rules do not provide for second oppositions (essentially sur-replies) as a matter of right," so a party must move for leave to file a sur-reply. Wheeler v. Luxor Security Dep't, 2:11-cv-00099-PMP-PAL *1 (D. Nev. October 27, 2011) (parenthetical in original; brackets added); see also Westbrook, supra (there is no provision in the FRCP or LR 7-2(a)-(c) for the filing of a sur-reply, and since plaintiff improperly filed a sur-reply without leave of court, the court would not consider it). Additionally, a district court has the inherent authority to strike a party's submissions. Wheeler, supra, citing Spurlock v. F.B.I., 69 F.3d 1010, 1016 (9th Cir. 1995) (court has inherent authority over the administration of its business and to manage its docket).

Here, the JNM is essentially, and in reality, nothing but a second opposition. Simply calling the JNM a "motion" rather than following proper procedure to file a sur-reply is unavailing, because the substance of the JNM makes it a sur-reply.

Section II.A. of Plaintiffs' JNM is devoted to the definition of the legal concept of *ultra vires*. But Plaintiffs already briefed that in their Opposition, Dkt. #10 at 3:26-28 and pp. 4-6, and Plaintiffs have not claimed that Defendants brought up something new.  The reference to Defendants' Reply in the JNM Sec. II.A. at 3:16-19 simply recounts Defendants' proper response to Plaintiffs' Opposition regarding the First Claim for Relief. Defendants have not stepped "out-of-bounds," so to speak; it is Plaintiffs who have done that. As such, Plaintiffs' improper sur-reply in the JNM at Sec. II.A. should be disregarded.

Section II.B. of the JNM claims that the Court should take judicial notice of a federal statute by reference to a state statute that is mentioned in the FAC at ¶180. JNM Sec. II.B. at 4:9-23.  Here again, Plaintiffs already raised that in their Opposition at 11:6-28, so the JNM is Plaintiffs' second opposition.  The reference in the JNM at 4:16-18 to Defendants' Reply regarding the Third Claim for Relief is, once again, simply Defendants' response to Plaintiffs' Opposition. That is how litigation briefing works, so Plaintiffs' attempt at a second opposition should not be permitted.

Section II.E. of the JNM claims that the Court should take judicial notice of some flyers from youth groups to support Plaintiffs' claim that Roy Gomm Elementary School is a "public forum," JNM Sec. II.E. at 8:10-28, 9:1-3, but Plaintiffs already made these arguments in their Opposition at p. 18, making the JNM a second opposition.[1]

---

[1] Sections II.C. and II.D. of the JNM are a hodgepodge of websites, photos, e-mails, Mary Frudden's tedious 38 page letter, and a federal statute about amateur sports. See JNM Sec. II.C. and II.D. at pp. 4-8.  These essentially oppose Defendants' Reply, and are therefore Plaintiffs' second opposition, with respect to the First, Second, Third, Fourth, Fifth, and Tenth Claims for Relief, as can be gleaned by reading the JNM text. See JNM at 4:24-28, pp. 5-7, 8:1-9; FAC at 28:21-27, pp. 29-45, 56; Plaintiffs' Opposition at pp. 3-15, 21-23. Plaintiffs' so-called "adjudicative facts" in the JNM at Sec. II.C. (see Defendants' briefing herein at pp. 7-9) should not be judicially noticed to the extent that they simply posit statements slanted in favor of Plaintiffs. See JNM at 4:24-28, pp. 5-7. Cf. In re Blumer, 95 B.R. 143, 146 (9th Cir. BAP 1988) (that a fact sought to be noticed is found in

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Plaintiffs' JNM is in reality a sur-reply, but they did not seek leave to file it.  See Court Record (no such motion).  As a "second bite at the apple," so to speak, or an improper second opposition, the JNM should be disregarded under <u>Wheeler</u> and <u>Westbrook</u>, *supra*, and not considered by the Court.[2]

> D.  <u>Plaintiffs' FAC allegations are already taken as true under Fed.R.Civ.P. 12(b)(6) for purposes of Defendants' pending Motion to Dismiss, so judicially noticing Plaintiffs' view of the "facts" in Sections II.C., II.D., and II.E. would not only be improper, but it may effectively invoke the conclusiveness clause in Fed.R.Evid 201(g), and at this early stage, that would offend the policy of a "just" determination of actions in Fed.R.Civ.P. 1, and it would be improper to judicially notice any "legislative" facts.</u>

As noted in Defendants' Motion to Dismiss at p. 4, it is well established that "[i]n reviewing a complaint under Rule 12(b)(6), the court accepts the complaint's material allegations of fact as true, and the court construes these facts in the light most favorable to the non-moving party." <u>Daubert v. City of Lindsay</u>, 2011 WL 3917369, *1 (E.D. Cal. Sept. 6, 2011) (citation omitted).  In the JNM at Sec. II.C., all seven subcategories of the "adjudicative facts" that the Plaintiffs want the Court to judicially notice are already effectively alleged in the FAC, so they have already been taken as true for purposes of Fed.R.Civ.P. 12(b)(6):

With respect to the written school uniform policy, <u>see</u> JNM Sec. II.C.1. at 4:26-28, 5:1-9, it is reproduced *in full* in the FAC at pp. 16-21. JNM subsection II.C.1.a. is already alleged in ¶¶103-

---

a court's records is not talismanic; the fact still must be of the type described in Fed.R.Evid. 201). Plaintiffs already addressed their AYSO uniforms and the reasons for them in their Opposition at p. 9 with respect to their Second Claim for Relief (deprivation of students' rights and privileges), so the JNM at Sec. II.D. is not only superfluous and unnecessary on that issue, the JNM is also an improper second opposition.

[2] <u>Wheeler</u>, *supra*, also refers to sur-replies that address new matters raised in a reply to which a party would otherwise be unable to respond. That aspect of the law of sur-replies does not apply in this instance, because Defendants simply addressed the matters in Plaintiffs' Opposition, and did not bring up any new matters in their Reply.

104 of the FAC, JNM subsection II.C.1.b. is already alleged in the FAC at 19:15-19, and JNM subsection II.C.1.c. is already alleged in the FAC at p. 20.  Therefore, judicial notice of the JNM subsections II.C.1. (a. – c.), JNM at 5:4-9, would be superfluous, unnecessary, and a waste of the Court's time because the matters are already deemed true under Rule12(b)(6) for purposes of Defendants' Motion to Dismiss.

With respect to the School Board minutes, <u>see</u> JNM Sec. II.C.2. at 5:12-23, Plaintiffs do not really want the minutes themselves judicially noticed, because if they did, they would have cited more than just a reference to the website "archives." JNM at 5:14.  Instead, Plaintiffs want only *their slant* on the "facts" to be "established" via judicial notice. <u>See</u> JNM at 5:16-23. Subsection II.C.2.a. in the JNM at 5:16-17 is a conclusory statement about the School Board not giving 15 days' notice of the uniform policy. <u>Cf</u>. FAC at ¶22 (alleging that NRS 386.385 addresses 15 day notification procedures for certain policies or regulations). These are not matters that are properly noticed pursuant to Fed.R.Evid. 201.

JNM subsections II.C.2.b. and II.C.2.c. in the JNM at 5:19-22 indicate that not all persons were afforded a reasonable opportunity to submit opposing views to the School Board and that the School Board did not consider all written and oral submissions, which *are at odds with* another one of Plaintiffs' "facts" in the JNM at 7:17-18 (the school board considered the matters voiced in Mary Frudden's June 6, 2011, 38 page letter [that letter was essentially a template for the original complaint and the FAC]). <u>Cf</u>. FAC at ¶¶24 and 64. These are not matters that are properly noticed pursuant to Fed.R.Evid. 201.

JNM subsection II.C.2.d., which says that the School Board "has not established a policy that requires pupils to wear school uniforms," is essentially alleged in the FAC at ¶20, so taking judicial

notice is unnecessary.  It is significant that Plaintiffs claim to know that these so-called "adjudicative

facts" are in the School Board minutes, JNM at 5:15-23, yet copies are neither attached to their JNM,

nor have Plaintiffs provided any location(s) in the website minutes.  It would therefore be improper

to take judicial notice of what is in reality nothing more than Plaintiffs' *view* of the "facts," rather

than genuine adjudicative facts.

    With respect to the parent-student handbook, the portion about the dress codes of which the

Plaintiffs want the Court to take "judicial notice," see JNM Sec. II.C.3. at 5:24-28, 6:1-9, are already

alleged in the FAC at ¶¶32-35 (and in particular, ¶35 at p. 7, lines 13-21), so judicial notice would

be  superfluous and unnecessary.

    With respect to the photos of the uniform shirts and banner, see JNM Sec. II.C.4. and 5. at

6:10-24, those, too, are alleged in the FAC at 17:23-27, p. 18, and ¶¶101-105, so taking judicial

notice of the photos would be superfluous and unnecessary.

    In each of the above categories, Plaintiffs claim they are seeking to establish a number of

"adjudicative facts." JNM at 5:2-9, 5:15-23, 6:2-9. But simply calling something an "adjudicative

fact" does not make it so.  In persuasive authority involving a trial court's granting of a prosecution

request to take judicial notice of state law regarding crime lab methodology, after an expert witness

did not know what the law was, the appellate court reversed:

> In so doing [taking judicial notice], the trial court failed to analyze whether the law
> it was being asked to give judicial notice to was an "adjudicative fact." KRE 201(a)
> only allows a court to take "judicial notice of adjudicative facts."  Though the
> Kentucky Rules of Evidence do not define "adjudicative facts," Federal Rule of
> Evidence 201 is nearly identical to KRE 201 and its drafters provide the following
> definition: "When a court or an agency finds facts concerning the immediate parties
> — who did what, where, when, how, and with what motive or intent — the court or
> agency is performing an adjudicative function, and the facts are conveniently called
> adjudicative facts..." Lawson, *Kentucky Evidence* §1.00[2][b], at 6 (quoting

Fed.R.Evid. 201, Advisory Committee's Note to Subdivision (a)). Here, the trial
court explicitly said that it was taking judicial notice of what "is the law in
Kentucky." It did not take judicial notice of a fact at all.

Clay v. Commonwealth of Kentucky, 291 S.W.3d 210, 218 (Ky. 2009) (brackets in first sentence

added for clarity; other punctuation and italics in original).

Here, Plaintiffs want the Court to take judicial notice of a handful of policies — the written

uniform policy, school board minutes by the District's policy-makers, and the policies in the parent-

student handbook. See JNM at pp. 4-5. However, by analogy to the request in Clay, these Plaintiffs'

requests to take "judicial notice" of policies are not "adjudicative facts" at all, especially the ones

with Plaintiffs' slant to them. The manner in which Plaintiffs want the policies judicially noticed

does not provide the "who, what, where, when, and how," i.e., "adjudicative facts," concerning the

immediate parties.   Plaintiffs' requests are therefore invalid, and should be denied.

Section II.A. in the JNM at 3:10-28 and 4:1-8, involves the legal concept of *ultra vires*, and

Section II.B. cites state and federal statutes. JNM at 4:9-23.  In addition to peripheral facts, the

Advisory Committee Note makes clear that "legislative facts" are also excluded from coverage by

Fed.R.Evid. 201(a).  21 Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and

Procedure: Evidence* §5103 at 480 (1977).  Since the matters in Sections II.A. and II.B. in the JNM

are  "legislative facts" outside the scope of judicial notice, Plaintiffs' request should be rejected.

Section II.D. of the JNM claims that the Court should take judicial notice of a federal statute

(36 USC §220512, the "Ted Stevens Olympic and Amateur Sports Act"), and some websites "to

establish the adjudicative fact that the AYSO is a nationally recognized youth organization which

has regular meeting days Monday through Saturday." JNM at 8:7-9. Judicial notice is not necessary,

because Plaintiffs already alleged in their FAC at ¶107 that "AYSO is a nationally recognized youth

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

organization which regularly meets at least Monday through Friday." The allegations in the FAC at ¶107 are already taken as true for purposes of Defendants' Rule 12(b)(6) motion, and they mirror the JNM at 8:7-9. The relevance of the federal statute and websites is not explained by Plaintiffs, JNM at 8:1-6, so they should be disregarded. See Cuellar v Joyce, 596 F.3d 505, 512 (9th Cir. 2010) (denying party's request to take judicial notice since the material contained therein were not relevant to disposition of appeal); United States v. Byrnes, 644 F.2d 107, 112 (2nd Cir. 1981) (in a case involving improper importation of birds, trial court did not err in refusing to judicially notice "Migratory Bird Permit Regulations", 50 C.F.R. Part 21 (1979), because they were not relevant); Cf. Curran v. Amazon.com, Inc., 2008 WL 472433, *13 (S.D.W. Va. Feb. 19, 2008) (rejecting a party's request to consider its website's terms of service in resolving a Rule 12(b)(6) motion to dismiss).

There is another problem with Plaintiffs' requests. Under Fed.R.Evid 201(g), "[w]here a matter is judicially noticed in a civil case, the court is required to instruct the jury that it must consider the judicially noticed fact as conclusively established and cannot consider any evidence which would contradict it." 1 Charles E. Wagner, *Federal Rules of Evidence Case Commentary* at 152 (2001-2002 ed.). Such conclusiveness at this very early stage, when there has been no witness testimony or other admissible evidence, would be inappropriate and contrary to the important policies underlying Fed.R.Civ.P. 1. The JNM should be therefore be denied.

E.    The JNM lacks support because Plaintiffs' cited authority is inapposite.

Plaintiffs' JNM is prefaced by some unhelpful references to primary and secondary authority, JNM at 2:3-28, 3:1-8, which Plaintiffs fail to link to the remainder of the JNM. Compare Id., with 3:9-28 and pp. 4-10. The failure to connect the law to the facts is understandable, because if Plaintiffs were to properly analyze the law to the facts, the defects in the JNM would be even more

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

apparent. In addition to those deficiencies, Plaintiffs' case law citations are readily distinguishable, overstated, and/or inapposite, as will be shown below.

Plaintiffs cite <u>Wilshire Westwood Assocs. v. Atlantic Richfield Corp.</u>, 881 F.2d 801, 803 (9th Cir. 1989) for the proposition that judicial notice may be taken "of the dictionary definition of words." JNM at 2:19-20. In <u>Wilshire Westwood Associates</u>, the plaintiffs sued Atlantic Richfield and others for environmental response costs under CERCLA as the result of gasoline leaks from underground storage tanks. 881 F.2d at 801-802. The trial court dismissed plaintiffs' complaint because it concluded that the petroleum exclusion in section 101(14) of CERCLA applied to leaded gasoline. 882 F.2d at 801.

The issue on plaintiffs' appeal was whether the exclusion from the definition of "hazardous substances" in CERCLA for "petroleum, including crude oil and any fraction thereof not specifically listed as a hazardous substance" included refined gasoline and all of its components and additives. 881 F.2d at 803. In other words, the issue was one of statutory construction and interpretation. 881 F.2d at 803-804. The only "dictionary definition" referred to in <u>Wilshire Westwood Associates</u> is the word "fraction," which meant "one of several portions (as of a distillate or precipitate) separable by fractionation and consisting of either mixtures or pure chemical compounds." 881 F.2d at 803.

The dictionary definition of "fraction" is a fact suitable for taking judicial notice under Fed.R.Evid 201(b)(2). <u>See</u> <u>United States v. Mariscal</u>, 285 F.3d 1127, 1132 (9th Cir. 2002) (citing an example of a case that took judicial notice of the definition of dementia). Here, by contrast, the only "dictionary definition" in Plaintiffs' JNM is in support of the legal concept of *ultra vires*, JNM at 3:11-28, 4:1-8, *not* merely the definition of an "adjudicative fact." Simply labeling the legal claim of *ultra vires* an "adjudicative fact," as Plaintiffs have done (JNM at 4:7-8), does not effect such a

transformation.  Denial of Plaintiffs' request to take judicial notice in section II.A. of the JNM is therefore appropriate.

Plaintiffs next cite <u>Ins. Co. of N. America v. Hilton Hotels USA</u>, 908 F.Supp. 809, 813, n. 1 (D. Nev. 1995) in support of their argument that "[a] party's pleadings are subject to judicial notice." JNM at 2:20-22.  <u>Ins. Co. of N. America</u> was one of several lawsuits involving the well-publicized "Tailhook" scandal in Las Vegas, and the court took judicial notice of pleadings in that and the "underlying" case. 908 F.Supp. at 813.

Here, Plaintiffs want the Court "to take judicial notice of Plaintiffs' First Amended Complaint, ¶ 180 which makes reference to NRS 392.457," and "further," Plaintiffs want the Court to take judicial notice "that NRS 392.457 expressly states the policies adopted pursuant to NRS 392.457" which must "'[c]omply with the parental involvement policy required by the federal No Child Left Behind Act of 2001, as set forth in 20 U.S.C. §6318.'" JNM at 4:9-23, Sec. II.B. Although Plaintiffs repeatedly acknowledge that Fed.R.Evid. 201 applies only to "adjudicative facts," JNM at 2:4, 2:7-10, 2:11-13, 4:7, 5:3, 5:15, 6:1, 6:14, 6:20, 7:5, 7:15, 8:8-9, and 8:17, they *now* want the Court to cast that portion of the rule aside because compliance with it would be, well, inconvenient.

Plaintiffs' request is improper and should be denied. Plaintiffs want the Court to take judicial notice of state and federal statutes and "policy," *not* adjudicative facts. Fed.R.Evid. 201(a) applies, by its plain terms, to *facts*, not law. <u>Cf</u>. <u>Byrnes</u>, *supra*, 644 F.2d at 112 (existence of federal regulations was irrelevant to issues in case, so judicial notice of them was properly refused). Moreover, as explained above at pp. 7-10, *supra*, the present context of this case is Defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss. <u>See</u> Dkt. #7.  Plaintiffs' allegations in their FAC about

"parent involvement" are sufficiently alleged (FAC at pp. 36-39), and taken as true for purposes of

Defendants' pending Motion to Dismiss, so it would be improper for the Court to take judicial notice

of statutes or "policies," rather than adjudicative facts. More to the point, Plaintiffs' ¶180 in the

FAC, cited in the JNM at 4:19-23, states as follows:

> 180.  According to NRS 392.457, it is the Nevada State Board of Education's goal
> to include parents as full partners in the decisions affecting their children and
> families and to promote and support responsible parenting.

FAC at 36:12-14. The two paragraphs in the FAC preceding ¶180, taken as true for purposes of

Defendants' Rule 12(b)(6) Motion to Dismiss, state as follows:

> 178.  By way of state law and the WCSD rules, regulations and policies, the
> Plaintiffs' (sic) have a liberty interest in the care, custody, management and dress of
> their children.

> 179.  The Federal Government, the Nevada State Board of Education, and the WCSD
> recognize that meaningful parental involvement is a vital component of a quality
> education.

FAC at 36:6-11. Since the FAC allegations adequately address Plaintiffs' "parental involvement"

mantra, Plaintiffs' request in the JNM at II.B. should be denied.

Plaintiffs attribute some broad statements to their next series of cases, none of which are

helpful, presumably for the remainder of Plaintiffs' JNM at sections II.C., II.D., and II.E. See JNM

at 2:22-28, 3:1. Plaintiffs cite Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), and

a case cited in Lee, Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279 (9th Cir. 1986). JNM

at 2:22-24. These purportedly stand for the proposition that "matters of public record can be

judicially noticed." JNM at 2:22.

Simply citing a case involving the arrest of the wrong man by California police, who then

transported him for incarceration in another jurisdiction without checking on his identity (Lee), or

an employment case involving a man who lost his case for unemployment benefits so he sued his employer under the Age Discrimination in Employment Act (Mack), without more, have very little force.

In Woodson v. Bank of America, 2:10-cv-01359-KJD-GWF, **2-3 (D. Nev. May 31, 2011), the plaintiff wanted the court to take judicial notice of a complaint filed by the Nevada Attorney General in a separate case against the bank. The Court rejected the request, reasoning that the documents were not capable of accurate and ready determination as required under the Federal Rules of Evidence, and that although the court may judicially notice public records, the court may not take judicial notice of a fact "subject to reasonable dispute." Id., citing Klein v. Freedom Strategic Partners, LLC, 595 F.Supp.2d 1152, 1157 (D. Nev. 2009). Here, Plaintiffs have not even bothered to specify the authority supporting their various requests. As such, their amorphous and non-specific requests fail to satisfy the requirements of taking judicial notice, warranting denial of those requests.

Plaintiffs' next four cases are about, they claim, taking judicial notice of "information" from the Internet as long as other requirements are satisfied, and of "an official government website." JNM at 2:24-28, 3:1. In Citizens for Peace in Space v. City of Colorado Springs, 477 F.3d 1212, 1217 (10th Cir. 2007), a First Amendment case, demonstrators in Colorado Springs protested a Department of Defense conference of nineteen member nations of NATO, plus nine invitee nations (consisting of approximately 1,000 delegates, family and staff), in 2003. In footnote 2 of the opinion, the court noted that although the record was not entirely clear, it would take judicial notice of distance – that Checkpoint 1 was approximately 310 yards from the location of the conference – by consulting *http://www.gmappedometer.com*. 477 F.3d at 1218-1219 & n. 2. This is an example of the type of "adjudicative fact" that is appropriate for taking judicial notice. Plaintiffs' requests, by

stark contrast, are not appropriate.

In <u>Denius v. Dunlap</u>, 330 F.3d 919, 922 (7th Cir. 2003), the plaintiff was a retired Air Force Technical sergeant who taught at Illinois's Lincoln Challenge Program ("LCP"), which was an eighteen-month program utilizing military training methods to teach life skills and GED courses for teen-age drop-outs. Plaintiff alleged that LCP officials violated his constitutional rights by requiring him to authorize the release of a broad range of personal information as a condition of continued employment. <u>Id</u>. at 921. Prior to trial, plaintiff asked the trial court to take judicial notice that the National Personnel Records Center ("NPRC") and/or the Veteran's Administration maintained medical records on retired military personnel, based on information he said was taken from the official website of the National Archives and Records Administration. <u>Id</u>. at 923.

The trial court initially took judicial notice that military personnel health and medical records of veterans discharged from military service are stored at the NPRC or the Veteran's Administration. <u>Id</u>. The trial court then withdrew its ruling as unnecessary after plaintiff testified that on the day before trial, he had gone to the NPRC in person and obtained his records by providing his service dates and numbers. <u>Id</u>. On appeal, the court found that the withdrawal of the judicial notice was an abuse of discretion, because the information on the website was not duplicative, but corroborative, of plaintiff's testimony, and the fact that the NPRC maintains medical records of military personnel is appropriate for judicial notice because it was not subject to reasonable dispute. <u>Id</u>. at 926.

Here, <u>Denius</u> does not support Plaintiffs' requests. <u>Denius</u> would apply if, for example, Plaintiffs were asking this Court to take judicial notice of the fact that the uniform policy, or the School Board minutes, or the parent/student handbook, are featured on the District's website. But that is not what Plaintiffs are asking. In fact, in the JNM at II.C.2.(a.–d.), they are asking the Court

to take judicial notice of *their view* of the facts, and to notice "facts" that are already sufficiently alleged in the FAC for purposes of Defendants' Motion to Dismiss. See also discussions above at pp. 7-10.  However, in the present posture of this case, that would be an improper use of judicial notice. Cf. In re Mora, 199 F.3d 1024, 1026 & n. 3 (9th Cir. 1999) (in a case in which debtors mailed a mortgage check to the bank one day, filed bankruptcy the next, and a dispute arose about the bank's timely receipt of the check, the court refused to take judicial notice that the post office delivered the check in question overnight, because mere post office advertisements about its attempts to deliver locally designated mail overnight was a disputable proposition, not appropriately admitted as fact under FRE 201).

In Laborers' Pension Fund v. Blackmore Sewer Constr., Inc., 298 F.3d 600, 602 (7th Cir. 2002), plaintiffs were large, multi-employer pension, health, and welfare Funds who sued Blackmore, a long-time contributing employer to the Funds, after Blackmore suddenly ceased submitting reports and contributions to the Funds. During the litigation, the Funds had directed a citation to discover Blackmore's assets in its account at the Suburban Bank of Barrington. Id. at 607. The response to the citation was signed by an agent of Harris Bank. Id.  Blackmore's counsel said there was some question as to the discrepancy between the bank served, and the bank responding. Id. The trial court was not persuaded, and granted a turnover order. Id.

On Blackmore's appeal, the court took judicial notice "of matters of public record," and exercised that authority "to note that the Suburban Bank of Barrington is a branch office of Harris Bank," which Blackmore's counsel could easily have ascertained by looking at www.harrisbank.com/personal/loc-ill.html or www.fdic.gov/idasp//main.asp, particularly since it was Blackmore's *own* bank. Id. at 607-608 (italics in original).

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

Here, <u>Blackmore</u> might apply if, for example, Plaintiffs were seeking to establish some adjudicative facts that are not in dispute, such as that Roy Gomm is an elementary school in the District, or that the uniform policy, School Board minutes, and parent/student handbook are on the District's website. But once again, that is not what Plaintiffs are asking, so <u>Blackmore</u> is inapposite to Plaintiffs' request.

In <u>United States v. Chapel</u>, 41 F.3d 1338, 1341-1342 (9th Cir. 1994), a convicted bank robber appealed his conviction on the basis that, *inter alia*, the trial court usurped the jury's role as fact finder by taking judicial notice of the federally insured status of the First Federal Savings & Loan of San Bernardino, because he had been denied the right to have his guilt determined with respect to every fact necessary to constitute the crime charged.  Prior to trial, the government had asked the trial court to take judicial notice that the bank was federally insured on the date of the robbery. <u>Id</u>. at 1339. In support of its motion, the prosecution presented a Certified Duplicate of Insurance certifying that al of the bank's deposits were federally insured on the date of the robbery, as well as a certificate of proof of insured status/declaration executed by an assistant executive secretary of the FDIC. <u>Id</u>. at 1339-1340. No website is mentioned in the case.

On appeal, the court concluded that because the trial court has admonished the jury pursuant to Fed.R.Evid. 201(g), and based on 1968 Ninth Circuit precedent addressing the issue of taking judicial notice of the insured status of a bank, it was not error to take judicial notice that the FDIC, the insuring agency itself, was a source whose accuracy could not reasonably be questioned. <u>Id</u>. at 1342. Here, Plaintiffs have not provided any enlightenment about how this case applies, so it should be disregarded.

/  /  /

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

**CONCLUSION**

There are  multiple grounds upon which to deny the JNM.  It is prefaced with unhelpful references to case law and secondary authority, absent any cogent connection to the remainder of the JNM. The arguments which follow are riddled with numerous defects – the JNM constitutes an improper sur-reply, which should be disregarded or stricken; and most of the so-called "adjudicative facts" cannot be so classified; many of the "adjudicative facts" of which Plaintiffs want the Court to judicially notice are already alleged in the FAC and already taken as true under Fed.R.Civ.P. 12(b)(6), so Plaintiffs' requests are irrelevant. Sections II.A., II.B., and II.D. of the JNM involve requests to take judicial notice of "legislative facts," which are outside the scope of Fed.R.Evid. 201. Absent any sound basis for it, the JNM should be denied.

Dated this _22ND_ day of December, 2011.

MAUPIN, COX & LeGOY

By: _____
Michael E. Malloy, Esq.
Debra O. Waggoner, Esq.
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of MAUPIN, COX & LeGOY, Attorneys at Law, and in such capacity and on the date indicated below, I mailed a copy of the foregoing document to Plaintiffs in a sealed envelope with first class postage thereon fully prepaid, addressed as follows:

Mary Frudden
Jon E. Frudden
1902 Carter Dr.
Reno, NV 89509

Dated this 22ND day of December, 2011.

_____
Employee