**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JON E. FRUDDEN,<br><br>        Plaintiff,<br><br>vs.<br><br>KAYANN PILLING et al.,<br><br>        Defendants. | 3:11-cv-00474-RCJ-WGC<br><br>**ORDER** |

## I. FACTS AND PROCEDURAL HISTORY

Attorney Mary Frudden and her husband, Plaintiff Jon E. Frudden, are the parents of two minor children ("the Children") who attended Roy Gomm Elementary School ("RGES") in Reno, Nevada at all relevant times. The RGES Parent Faculty Association, Inc. adopted a school uniform policy in conjunction with RGES in 2011. The Children were later disciplined for school uniform violations. The Fruddens sued Defendants on behalf of the Children in this Court. The First Amended Complaint omitted one Defendant and listed sixteen causes of action. Defendants moved to dismiss. The Court dismissed the federal claims and some of the state law claims and declined to exercise jurisdiction over other state law claims. Plaintiffs appealed. The Court of Appeals ruled that the mandatory display of the school motto (though not the bare fact of the uniforms themselves) and the content-based exception to the policy permitting the wear of uniforms of nationally recognized youth organizations should be reviewed on remand under strict scrutiny. *Frudden v. Pilling*, 742 F.3d 1199, 1207 (9th Cir. 2014).

The Court ordered Plaintiffs to file the Second Amended Complaint to clarify the allegations. Attorney Frudden then simultaneously withdrew as a representative Plaintiff and appeared as Mr. Frudden's attorney. The Court ruled that the only claim remaining was the First Amendment claim against the compelled wearing of the school motto on the uniforms and the content-based exception for nationally recognized youth organizations. Plaintiff requested leave to further amend, but the Court denied the motion because the proposed new claims were variously precluded, unripe, or futile. Defendants moved for summary judgment, and the Court granted the motion. The Court of Appeals affirmed in part but reversed in part and remanded for trial, noting that although it believed the previous panel had erred and that this Court's rulings should be affirmed in full, it felt bound under the law of the case. The panel called *sua sponte* for *en banc* reconsideration of the first panel's ruling, but the motion failed. Plaintiff requested a panel rehearing as to the affirmances, but the panel denied the motion.

Plaintiff asked the Court of Appeals for attorney's fees related to the second appeal, and the Court of Appeals transferred the motion to this Court. The Court denied the motion, ruling that fee shifting is categorically precluded where an attorney represents a representative plaintiff who in turn represents the attorney's own children. Plaintiff has appealed that order and has asked the Court to clarify whether Attorney Frudden may ethically continue to represent him under Rule 17 (which permits a minor to appear via guardian ad litem or next friend) or *Johns v. Cnty. of San Diego*, 114 F.3d 874 (9th Cir. 1997) (holding that a non-attorney parent suing as next friend of his or her children in federal court must associate licensed counsel). Plaintiff has also filed a motion asking the Court to approve the Settlement Agreement ("SA"), i.e., the minors' compromise, and to enforce it.

///

///

## II. DISCUSSION

### A. Motion for Clarification

The Court perceives no reason why Attorney Frudden may not represent her husband, who in turn represents their common Children. Although, as previously noted, the Children's father's presence in the lawsuit is superfluous where the only claims belong to the Children and their mother is associated as an attorney, the Court perceives no prohibition of this formal arrangement under Rule 17. Nor does the Court perceive *Johns* to prevent Attorney Frudden from representing the Children. *Johns* simply requires a non-attorney parent appearing as next friend of his or her children to associate licensed counsel. *Id.* at 876–77. *Johns* does not require counsel to be "independent" in the sense of *Kay* and *Ford*. The purpose of *Johns* is to maintain the prohibition against non-attorney representation in federal court. *See id.* The purpose of the *Kay* line of cases, by contrast, is to encourage representation by independent, emotionally detached counsel. *Kay*, 499 U.S. at 437; *Ford*, 461 F.3d at 1091 (citing *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 131 (3rd Cir. 2001) (Alito, J., joining)).

### B. Motion to Approve Minors' Compromise

A district court may not permit the settlement of a minor's claim without "conduct[ing] its own inquiry to determine whether the settlement serves the best interests of the minor." *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978). "[A] court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (citation omitted).

The terms of the SA are not complex. For the sum of $15,000, the parties have agreed to resolve "any and all claims and damages by Plaintiff Jon Frudden on behalf of the [Children] . . .

that could have ben raised in [this case], with the only exception being the attorney's fees for the [Children] for proceedings before the District Court . . . ." (SA 3, ECF No. 132-6). The parties have agreed to stay any litigation over attorney's fees related to proceedings in *this* Court until the Court of Appeals resolves Appeal No. 18-15704, the appeal of this Court's denial of attorney's fees on appeal. (*Id.* 4). The Court is to retain jurisdiction for the purpose of enforcing the SA. (*Id.* 8).

The Court finds that the terms of the SA are fair, reasonable, and in the minors' best interests. The sum of $15,000 represents a fair, and in fact generous, estimate of the amount the minors might receive from any jury in a case where Defendants' predicate acts were not malicious or egregious, and, as the second appellate panel noted, were not in reality even wrongful. The Court therefore approves the SA, and the parties may proceed to execute it.

Several issues remain, however. Typically, when parties settle a case, they simply sign any settlement agreement privately, after which the parties jointly stipulate to dismiss, or the plaintiff(s) separately move(s) to voluntarily dismiss. A court usually never sees the settlement agreement, because the terms are not usually the court's concern. The terms of a settlement only becomes a court's concern where a party brings an action for breach of a settlement agreement, or where a court must (or in some cases may) approve the terms of a settlement for fairness in the first instance, such as where a third party's rights will be affected, *e.g.*, Nev. Rev. Stat. § 17.245 (providing for discharge of a settling tortfeasor from any contribution or indemnity claims by other tortfeasors), or, as in this case, where the real parties in interest have no legal capacity to enter into the agreement, *Salmeron*, 724 F.2d at 1363.

Here, where the settlement of the Children's claims must be approved by the Court in the first instance, the parties have privately signed the SA, but the Court has not, until today, approved it. It is legally impossible for any breach to have yet occurred under the SA, because

the SA is simply not effective until the moment the present order issues. The parties' competing claims of breach are therefore necessarily without merit. Even if the SA had become legally effective at the moment the last party signed it, which was November 20, 2018, (SA 9–10), this Court would yet have no jurisdiction to enforce any breach. A court only has ancillary jurisdiction to resolve claims of breach of the settlement of an action where the court dismisses the action and the dimsissal order either orders the parties to comply with the agreement or incorporates its terms. *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014). That is not the case here for any breaches occurring prior to the issuance of the present order.

Next, Defendants take issue with some of the requests in the present motion. Plaintiff requests that the $15,000 be divided in half and placed into separate, blocked financial investments as defined by Nevada Revised Statutes section 41.200, for the sole benefit of the respective Children, with Plaintiff as the trustee, until each of the Children turns 18, at which point the principal and any interest shall be released to the respective Children. Plaintiff requests Defendants issue a check payable to him as the trustee for the Children. Defendants argue that the check must be given to Attorney Frudden and placed into a client trust account. They also argue that because this is a community property state, it is inappropriate to issue the check to Plaintiff, because Attorney Frudden will then have access to and/or an ownership interest in her client's funds. The Court rejects both of these objections. There is no requirement to issue a settlement check to an attorney who claims no fee—and in this case could not claim any fee—rather than directly to the client. Even where an attorney does claim a fee, there is no requirement to issue settlement funds to the attorney rather than the client. The ethical rule cited simply requires that if an attorney does in fact hold funds that belong to a client, she must keep them segregated from her own funds and safeguard them in particular ways. The rule has no application where the attorney does not hold any client funds in the first instance, as here. Nor is

there any ethical problem with issuing the funds to Jon Frudden in trust for the Children. Regardless of the community property laws, Attorney Frudden will have no interest in the funds by virtue of her marriage to Jon Frudden, because Jon Frudden himself will have no interest in the funds. He is simply a trustee.

Next, Plaintiffs request that the Court enter a judgment as to the alleged constitutional violations. As Defendants note, there is no basis for this request. The claims have been settled via an agreement that explicitly disclaims any admission of fault and nowhere confesses judgment. Accordingly, there is (and will be) no "judgment" upon which to base an award of interest. 28 U.S.C. § 1961(a); Nev. Rev. Stat. § 17.130(2). The value of the lawsuit, which includes at least pre-judgment interest, is presumably something the parties consider when arriving at a settlement. Parties may agree as part of a settlement that prejudgment interest on an award (or some portion of it) will be calculated by the court, *see, e.g.*, *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007) ("[T]he parties settled Plaintiff's remaining state law claims with the exception of one issue: what rate of prejudgment interest to apply to the principle amount of the settlement. The parties agreed to submit this question to the district court."), but that is not the case here, where the amount of $15,000 is for "*full* resolution" of all claims, "with the *only* exception being attorney's fees," (SA 3 (emphases added)). If Plaintiff believed $15,000 was inadequate given the delay between the underlying events and the settlement, he should have demanded a greater principal amount or some provision for pre-judgment interest in light of the "full resolution" and "only exception" language.

Next, the Court does not believe it has the power to countermand state laws concerning the succession of interest in property upon death and will therefore not purport to declare that the settlements funds can never be subject to escheat under Nevada law (or the law of another state). And there is no ripe controversy as to whether the funds are currently subject to escheat. Under

Nevada law, funds are only subject to escheat "if any person dies or has died . . . leaving no heirs, representatives or devisees capable of inheriting or holding the estate, and in all cases where there is no owner of the estate capable of holding it." Nev. Rev. Stat. § 154.010. Plaintiff does not indicate any controversy under which the State of Nevada might think the funds are currently subject to escheat.

Finally, the Court will not issue sanctions against Attorney Frudden under 28 U.S.C. § 1927. It is true that the request for a judgment and interest thereupon are frivolous, but so are Defendants' objections to the form and manner of payment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Clarification (ECF No. 126) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Approve Minor's Compromise (ECF No. 131) is GRANTED IN PART and DENIED IN PART.

1. The Settlement Agreement (ECF No. 132-6) is APPROVED; its terms are hereby INCORPORATED into the present order; and the parties shall COMPLY therewith.

2. Washoe County School District and the Roy Gomm Parent Faculty Association shall jointly and severally ISSUE two checks in the amount of $7,500 each, payable respectively to "Jon E. Frudden, as trustee for [John Doe]" and "Jon E. Frudden, as trustee for [Jane Doe]." The checks shall be personally delivered to Plaintiff or mailed to him by U.S. mail, return receipt requested, within twenty (20) days of the date of this order.

3. Plaintiff shall deposit the checks into separate, blocked financial investments as defined by Nevada Revised Statutes section 41.200, for the benefits of the

respective Children, where the funds shall remain until the respective Children reach the age of majority, or until further order of the Court. Plaintiff shall deliver a copy of this order to the depository at the time of deposit.

4. The depository is authorized and directed to pay by check or draft directly to the respective Children, upon reaching the age of majority and proper demand, all monies, including interest, deposited under this order without further order of the Court.

5. There is no bond requirement.

6. All matters relating to attorney's fees are stayed in accordance with the Settlement Agreement, i.e., until the mandate issues in Appeal No. 18-15704.

7. The case shall remain open, and the Court shall retain jurisdiction in accordance with the Settlement Agreement for the purposes of oversight, enforcement, fees and costs, and other matters incidental to the action.

8. The Court does not intend by any language in this order to contradict any language in the Settlement Agreement. Any perceived differences are purely accidental, and the language of the Settlement Agreement shall govern in any future dispute.

IT IS SO ORDERED.

Dated this 24th day of January, 2019.

_____
ROBERT C. JONES
United States District Judge